**EXHIBIT A**

Click to Print    Printed on: Tuesday, January 03, 2006 15:21:53 EST

## Case History Search
Search Created:
Tuesday, January 03, 2006 15:21:53 EST

| | | | |
|---|---|---|---|
| **Court:** DE Court of Chancery | **Judge:** Parsons, Donald F | **File & Serve Live Date:** 12/2/2005 | |
| **Division:** | **Case Number:** 1819-N | **Document(s) Filed:** 10 | |
| **Case Type:** Breach of Fiduciary Duties | **Case Name:** Norman, Jeffrey M vs David W Elkin | **Date Range:** All | |

1-4 of 4 transactions    <<Prev Page 1 of 1 Next>>

| Transaction | ▲Date/Time | Case Number Case Name | Authorizer Organization | Document Type | Document Title | Size |
|---|---|---|---|---|---|---|
| 7568281 | 12/2/2005 6:51 PM EST | 1819-N Norman, Jeffrey M vs David W Elkin | David A Felice, Cozen O'Connor | Complaint with 3 or More Defendants | Complaint • Linked from (5) | 0.6MB |
| | | | | Exhibits | Exhibits A & B to the Complaint • Linked from (1) | 1.2MB |
| | | | | Supplemental Information Sheet | Supplemental Information Sheet | 0.1MB |
| | | | | Motion | Motion for Appointment of Special Process Servers | 0.1MB |
| | | | | Proposed Order | Proposed Order for Appointment of Special Process Servers | 0.1MB |
| | | | | Certificate of Service | Certificate of Service for Motion for Appointment of Special Process Servers | 0.1MB |
| 7635580 | 12/12/2005 5:00 PM EST | 1819-N Norman, Jeffrey M vs David W Elkin | Kenneth Lagowski, DE Court of Chancery | Summons | Motion, Order for Special Process Server; Issued Summons to SPS (4 copies); Issued 3114 Summons to SPS (1 copy) • Linked from (4) | 0.2MB |
| 7696365 | 12/21/2005 1:10 PM EST | 1819-N Norman, Jeffrey M vs David W Elkin | Thomas M Dunford, Cozen O'Connor | Summons | Summons and Affidavit of Service re David Elkin served via Registered Agent • Linked to (2) • Linked from (1) | 0.1MB |
| | | | | Summons | Summons and Affidavits of Service re David Elkin; Richard Shorin; The Elkin Group, Inc.; and US Mobilcomm, Inc. • Linked to (2) • Linked from (1) | 0.1MB |
| 7722472 | 12/27/2005 2:47 PM EST | 1819-N Norman, Jeffrey M vs David W Elkin | David A Felice, Cozen O'Connor | Statement Pursuant to Rule 4(d)(c) | Statement in Accordance with Court of Chancery Rule 4(d)(c) • Linked to (3) | 0.1MB |

1-4 of 4 transactions    <<Prev Page 1 of 1 Next>>

## LexisNexis· *File & Serve*

**EFiled: Dec 2 2005 6:51PM EST**
**Transaction ID 7568281**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

JEFFREY M. NORMAN,         :

           Plaintiff,        :

v.                   :     C.A. No.

DAVID W. ELKIN, RICHARD M. SHORIN  :
and THE ELKIN GROUP, INC.      :

          Defendants,    :

    and               :

US MOBILCOMM, INC.,       :

        Nominal Defendant.   :

## COMPLAINT

Plaintiff, Jeffrey M. Norman, by and through his undersigned counsel, brings this

complaint against defendants David W. Elkin, Richard M. Shorin, The Elkin Group, Inc. and US

MobilComm, Inc., and alleges as follows:

### Introduction

1.     This action seeks redress for the wrongful and inequitable conduct of the sole

director and majority stockholder of a closely-held corporation US Mobilcomm, Inc. ("USM" or

the "Company"). Through abuse and neglect of his position with the Company, David W. Elkin

("Elkin") undertook a course of conduct that completely eviscerated the Company of its working

capital and substantial assets.  Elkin so grievously misused and disregarded the corporate

structure of the Company as to render it an *alter ego* of his own self-interested pursuits. As a

result of this conduct, Elkin benefited his own interests to the detriment and expense of the only

other Company stockholder, Jeffrey M. Norman ("Norman"). This Complaint seeks to remedy

the following wrongs done to the Company and to Norman, directly: (i) breach of contract; (ii)

declaratory relief; (iii) usurpation of a corporate opportunity; (iv) breaches of Elkin's fiduciary duties of loyalty, care and good faith dealing to the Company and its minority stockholder; (v) breach of Elkin's fiduciary duty of disclosure; (vi) conversion and misappropriation of Company assets and goodwill; (vii) fraudulent representations; (viii) aiding and abetting breaches of fiduciary duties; and (ix) unjust enrichment.

Through his Complaint, Norman seeks compensatory, rescissory or restitution damages, the imposition of a constructive trust over those assets or proceeds from assets rightfully belonging to the Company, an equitable accounting of all Company assets, a declaration as to ownership interest and distribution rights, the forfeiture of some or all of Elkin's interest in the Company, the appointment of a custodian to windup the Company, attorney fees and both pre- and post-judgment interest.

### Parties

2.      Jeffrey M. Norman ("Norman") is an individual and stockholder of USM. Norman is a citizen of the State of Connecticut, residing at 202 Weed Street, New Canaan, Connecticut.

3.      Elkin is an individual, stockholder, President and sole director of USM. Elkin is a citizen of the Commonwealth of Pennsylvania, residing at 805 Bryn Mawr Avenue, Newtown Square, Pennsylvania. Elkin is being sued in both his individual and fiduciary capacities.

4.      Richard M. Shorin ("Shorin") is an individual residing at 255 Ridings Way, Ambler, Pennsylvania. Upon information and belief, Shorin was an officer of the Company serving as its chief financial officer and assistant secretary.

5.      The Elkin Group, Inc. (the "Elkin Group") is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 805 Bryn Mawr Avenue, Newtown Square, Pennsylvania. The Elkin Group is wholly-owned and

2

controlled by Elkin and engages in a number of endeavors, including the acquisition and sale of Federal Communications Commission ("FCC") licenses.

6.     Nominal defendant USM is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 805 Bryn Mawr Avenue, Newtown Square, Pennsylvania. USM is or was the owner of, *inter alia*, (i) a number of FCC 220 MHz licenses and systems, and (ii) various equipment and signal stations used to effectuate and commercialize these FCC licenses.

### Factual Allegations

A.     Agreement to Acquire an Interest in USM

7.     In May 1994, Norman contributed a total of $250,000 for a 25% interest in the Company.

8.     Norman contributed this amount given Elkin's agreement that he would contribute an additional $750,000 in cash to the Company.

9.     In December 1994, Norman received a 25% interest (125 shares) in the Company for the cash payment of $.01 per share, the receipt of which was acknowledged by the Company. Norman continues to own these 125 shares. At that time, Elkin received an additional 275 shares to bring his total interest in the Company to 75%.

10.    From 1993 through and including 1996, Norman worked on behalf of the Company to negotiate and enter into management agreements with other FCC 220 MHz license holders. Pursuant to the terms of the Company's model management agreement, USM generally acquired an ownership interest in the negotiated licenses and was paid a monthly management fee of not less than $1,500.00 for services provided to the licensee.

11.    Upon information and belief, as of late 1996, the Company possessed (by way of either complete or partial ownership) approximately 50 licenses in states including New York,

3

Pennsylvania, Maryland, Florida, Massachusetts, Illinois, California, Texas, Connecticut, Wisconsin and the District of Columbia.

B.    Proposed $6 Million Transaction with Centennial Communications

12.    As of March 1997, USM had assets that encompassed at least 217 channels of 220 MHz spectrum throughout the United States. USM owned at least 45 licenses outright and the remaining 172 licenses were under management agreements.

13.    In or around May 1997, the Company was presented with a proposed transaction with Centennial Communications Corporation ("Centennial"). The proposed transaction contemplated a sale of all assets of USM for the sum of $6 million in total consideration, including $5 million in cash and a $1 million promissory note.

14.    The proposed Centennial transaction did not encompass any later-acquired Phase II FCC licenses. Upon information and belief, had the Centennial transaction included the later-acquired Phase II licenses, the transaction price would have been significantly higher.

15.    Elkin, as President of the Company, signed a letter of intent pursuant to the terms of the proposed transaction. Shorin assisted Elkin in his efforts, if any, to ascertain the propriety of the proposed transaction. The transaction with Centennial was never consummated.

16.    Despite the fact that the Centennial transaction did not close, USM proceeded on its course to fully develop its market presence and make use of its incumbency position as a Phase I license holder in the areas covered by the 217 channels.

C.    Proposed 1998 Merger with Incom Communications Corporation

17.    Sometime around the first quarter of 1998, Elkin engaged in merger discussions with Incom Communications Corporation ("ICC").

18.    As part of the merger discussions, the companies engaged the services of an independent valuation expert to assess the value of each party to the proposed merger.

4

19.    As of January 1998, USM's licenses were valued at approximately $5.5 million. USM's subscribers and equipment were valued at an additional $1.1 million. As calculated by the independent valuation expert, USM's total asset and income value in January 1998 was in excess of $6.6 million.

20.    In a February 2, 1998 letter from Elkin to ICC, Elkin noted that as of January 1998, the Company had approximately $1.15 million in accrued management fees receivable. Elkin indicated that this value should be added to the total $6.6 million value calculated in January 1998. Accordingly, by Elkin's own calculations and estimate, USM had a value in excess of $7.6 million in 1998.

21.    Given this valuation, Elkin proposed a merger with ICC in which USM would receive a 25% interest in the surviving entity.

22.    The merger was never consummated and the Company's stockholders never fully recognized its $7.6 million value. Just as with the proposed Centennial transaction, the Company's valuation did not take into account any added value the Phase II licenses would bring to the Company.

D.    Elkin's Self-Dealing During the FCC Phase II License Auction

23.    As part of the FCC's continuing effort to expand and enhance the 220 MHz spectrum, it scheduled what was referred to as Phase II auctions. Whereas the Phase I licenses were distributed through a lottery system, the Phase II licenses were to be auctioned off by the FCC. The Phase II licenses covered a greater area than the Phase I licenses and offered other advantages over the Phase I licenses. Given this wide area coverage, certain Phase II licenses would encroach upon pre-existing Phase I licenses. In an effort to protect the interests of Phase I license holders, the FCC developed rules through which incumbent Phase I license holders were afforded protection during the Phase II auctions. *See* 47 C.F.R. § 90.763 (1997).

24.    In order to bid on Phase II licenses, companies were required to become qualified bidders with the FCC. Companies were required to substantiate the wherewithal to construct base stations for transmission and thereafter develop the 220 MHz licenses for which they were bidding. Moreover, the bidders had to post an upfront payment sufficient to cover the licenses the company anticipated bidding on during the auction. *See* 47 C.F.R. § 90.733 (1997).

25.    USM was identified in FCC Public Notice DA 98-1787, dated September 4, 1998, as one of the only 54 qualified bidders for Phase II Auction No. 18. USM was eligible to bid on all licenses offered during Auction No. 18 and posted an upfront payment of $200,000. Shorin knew of the upfront payment made on behalf of the Company for the Phase II auction.

26.    USM was recognized as an incumbent licensee for Auction No. 18.

27.    As an incumbent, USM was afforded a level of protection under the FCC rules during the Phase II auction process. *See* 47 C.F.R. § 90.763 (1997). Amongst other requirements, bidders who won a Phase II license that covered an incumbent Phase I licensee's areas were required to: (i) locate their paging stations at least 120 km from the Phase I licensee's paging station (generally in a highly populated area as the Phase I licenses first served more urban areas) and (ii) limit the field strength of its base stations so as to not interfere with the Phase I licensees.

28.    The FCC 220 MHz auction rules were designed to protect incumbent Phase I license holders and businesses. The FCC-mandated location and signal strength requirements for any Phase II license were limited by the area that encroached upon a Phase I incumbent. In practice, this worked to chill the open bidding for Phase II licenses during the auction process where there was a strong incumbent position. In addition, the incumbent requirements also diminished the overall value of the Phase II license when it was not owned in common with the Phase I license. As a result, when Phase I and Phase II licenses were bundled together, the value

6

of these licenses to any potential purchaser was exponentially higher than if the licenses were owned, acquired or transferred separately.

29.     The Elkin Group was not an incumbent licensee for the Phase II Auction No. 18 and was unable to meet the FCC requirements for licensing.

30.     Bidding in FCC Phase II Auction No. 18 commenced on September 18, 1998.

31.     USM was ready, willing and authorized by the FCC to participate in Auction No. 18. Elkin never presented any counter position or alternative arrangement to the Company or its stockholders for consideration.

32.     The winning bidders for Phase II Auction No. 18 were announced on October 23, 1998 through FCC Public Notice DA 98-2143. The FCC recognized USM as the winning bidder for five (5) licenses following Phase II Auction No. 18. The five (5) licenses were located in the following geographic areas: two (2) licenses for Boston, Massachusetts; one (1) license for Washington, D.C.; one (1) license for Miami, Florida; and one (1) license for Sacramento, California.

33.     The Elkin Group is not identified as the winning bidder for any license awarded through the FCC's Phase II Auction No. 18.

34.     On or about November 6, 1998, USM submitted its final application Form 601 for the Phase II Auction No. 18. The November 6 filing date was the final day permitted under the FCC's rules for filing a bidder's Form 601 following the completion of the auction.

35.     In USM's November 6, 1998 Form 601, Elkin represented to the FCC that an amended Form 175 registration statement was submitted to the FCC on September 28, 1998, which changed the name of the applicant for the Phase II Auction No. 18 from USM to the Elkin Group. Shorin was aware of and helped facilitate this purported change in registration.

7

36.    This purported change in registration occurred after Auction No. 18 had commenced, without notice or approval of the Company's stockholders and without any compensation whatsoever paid to the Company for the change.

37.    Upon information and belief, USM's $200,000 upfront payment to the FCC was: (i) used by the Company to pay for the Phase II licenses won at auction and later transferred to the Elkin Group, or (ii) applied on behalf of the Elkin Group to acquire the Phase II licenses won by USM but later issued to the Elkin Group.

38.    Upon information and belief, USM was never compensated nor reimbursed for the use or application of its upfront payment by the Elkin Group.

39.    Elkin, as assisted by Shorin, qualified the Elkin Group for the FCC's Phase II Auction No. 24. Elkin did not take steps to qualify USM as a bidder. Elkin, through the Elkin Group, bid on and was the successful bidder for at least one Phase II license in Auction No. 24.

E.    Elkin's Piecemeal Sale of USM Assets

40.    On March 4, 1999, the Company executed a Purchase and Sale Agreement with Repeater Network Spectrum Aq., Inc. ("Repeater") for the Company's sale of an unknown number of licenses to Repeater for the sum of $138,049.00. Despite the fact that the Phase II license for Miami (won by USM at the auction) was identified in the Repeater transaction, the sale figure only represented payment for Phase I licenses.

41.    At some point between 1999 and 2001, Elkin resolved, either overtly or *de facto*, to sell all or substantially all of the Company's assets.

42.    On January 30, 2001, the Company executed a Purchase and Sale Agreement with Roamer One, Inc. ("Roamer") for the Company's sale of six (6) Phase I licenses to Roamer for the sum of $349,000.00. Certain other Phase II licenses were identified as having been or due to

8

be transferred from the Elkin Group to Roamer.  USM received no compensation for the transfer of the Phase II licenses to Roamer.

43.     On March 13, 2001, the Company executed another Purchase and Sale Agreement with Roamer, this time for the Company's sale of one (1) license to Roamer for the sum of $60,000.00.  Certain other Phase II licenses were identified as having been or due to be transferred from the Elkin Group to Roamer.  USM received no compensation for the transfer of the Phase II licenses to Roamer.

44.     As initially contemplated, the transaction with Roamer was to include the transfer of nine (9) Phase I licenses.  There is one (1) Boston license (WPCY922) and one (1) Avon, Connecticut license (WPCW970) that have been represented as being sold (to Shepard McCready Partnership and KC Partners I, respectively).  Roamer initially proposed to pay the Company at least $110,000 in total for the two licenses.  Company check records depict a $30,000 payment in May, 2001 for the Boston license, which was in turn distributed to Elkin.

45.     Sometime during fiscal year 2001, a loan to a stockholder in the amount of $20,500, which was outstanding since at least 1997, was removed as a receivable from the Company's 2001 tax return.  Norman did not knowingly borrow $20,500 from the Company nor did he ever personally receive any goods or services that would amount to $20,500 when he was working on behalf of the Company.

46.     Upon information and belief, sometime after 2000, Elkin sold all or substantially all of the remaining Company assets for sums unknown.  Elkin's undertakings were without the aid of a diligent or effective process to ensure the maximization of stockholder value.

47.     Upon information and belief, Elkin abandoned other Phase I and Phase II licenses rather than first attempting to fully capitalize on their value to the Company.

WILM1\30914\1 156666.000

48.    The above recited facts demonstrate that Elkin, as the majority stockholder and sole director, dominated the decision-making process to favor his own interests (both in equity and purported debt).

F.    The Elkin Group's Transfer of USM's Phase I and II Licenses

49.    Pursuant to the March 4, 1999 sale agreement with Repeater, the Phase II Miami license won by USM during Auction No. 18 was sold by the Elkin Group to Repeater.

50.    The Elkin Group or Elkin personally received at least $65,000 from Repeater for the Phase II Miami license.    Neither the Company nor Norman received any form of compensation for this transfer of assets.

51.    The January and March 2001 sale agreements with Roamer transferred certain Phase II licenses from the Elkin Group to Roamer.    Upon information and belief, the Phase II Boston licenses won by USM during Auction No. 18 were sold by the Elkin Group to Roamer.

52.    The Elkin Group or Elkin personally received at least $130,000 from Roamer for the two (2) Phase II Boston licenses.    Neither the Company not Norman received any form of compensation for this transfer of assets.

53.    Upon information and belief, in June 1999 Elkin negotiated the sale of three (3) Phase I licenses in New York City (and their associated equipment) to Elite Limousine Plus, Inc. ("Elite") for the sum of $312,500.    Norman is not aware whether this transaction ever closed or what was made of the three (3) New York City licenses.    Publicly available FCC records indicate that these licenses were either cancelled or expired.

54.    Beginning as late as 2001, Elkin knowingly cancelled or abandoned certain of the Company's Phase I licenses in an effort to further capitalize on the Phase II licenses sold by the Elkin Group to both Repeater and Roamer.    In practice, once the Phase I licenses were cancelled or abandoned, the incumbency position was lost and the Phase II license holder was no longer

under any obligation to comply with the FCC rules protecting incumbent Phase I licensees. *See* 47 C.F.R. § 90.763(c) (1997).

G.    Elkin's Attempt at a Cover-Up

55.    By letter dated December 3, 2002, Elkin informed Norman's counsel that the Repeater and January 2001 Roamer sales (citing an incorrect total of $479,708.00 when in actuality the total sale price was $487,049) went to pay various fees and expenses, including $380,588 for the "Repayment of Shareholder Loans." (*See* Exhibit A).

56.    Elkin's representation as to the total amount he received for the repayment of stockholder loans was false. Through certain discovery obtained by Norman, it appears that Elkin obtained at least $601,500 in repayment of stockholder loans. Indeed, USM accounting records clearly disclose that Elkin received approximately $450,600 in distributions in 2001, when Norman received none.

57.    Company records indicate that as of November 11, 2002 (a mere 22 days prior to his fraudulent representations to Norman), Elkin was paid the $601,500 amount from the total $665,240 in proceeds from the sales cited in his December 2002 letter.

58.    Through the December 2002 letter, Elkin knowingly: (i) misrepresented by at least $220,000 the amount he repaid himself for purported stockholder loans; (ii) misrepresented the sale price of the Boston licenses by approximately $185,000; (iii) withheld information he was under a duty to disclose concerning the Phase II licenses awarded in Auction No. 18; and (iv) withheld information he was under a duty to disclose concerning the March 2001 Roamer agreement as he could not substantiate the disbursement of funds from this agreement or the correct total transaction value of the Repeater and January 2001 Roamer sales.

WILM1\30914\1 156666.000

59.   Elkin acknowledged, affirmed and further declared the substance of these fraudulent representations in sworn deposition and court testimony in an action brought under 8 *Del. C.* § 220, prosecuted by Norman in 2005.

60.   In the December 2002 letter, Elkin instructed Norman's counsel that no further information would be made available regarding the two transaction because the Company had "entered into strict confidentiality agreements that bound USM [the Company] and anyone receiving information about the transaction from USM." (*Id.*). This representation was untrue and made with the intent that Norman would not pursue his inquiry regarding the disposition of the Phase II licenses.

61.   In and around December 2002, Norman made several telephonic requests of Elkin to provide him information concerning the Company's sales of assets. Each time, Elkin falsely detailed the number of transactions or refused to provide additional documentation on the transactions then known to Norman.

62.   Elkin concealed or otherwise misrepresented the complete and accurate portrayal of the Company's financial condition and his own self-dealing in an attempt to dissuade Norman from seeking to enforce his rights as a 25% stockholder of the Company.

63.   Shorin was aware of and aided Elkin's failure to accurately and completely disclose the terms of the Repeater and two Roamer agreements.

64.   Elkin's purported basis for the $380,588 repayment of stockholder loans was a Shareholder Loan Agreement dated as of September 1, 1995 (the "Loan Agreement").

65.   The Loan Agreement was an agreement by and between the Company and Elkin. Elkin signed on behalf of himself and the Company. Elkin does not recall exactly when he created the Loan Agreement, but he does recall that it was created at least several months after the September 1995 effective date.

12

66. The Company's tax returns from 1997 through the present do not indicate that the Company was indebted to any stockholder, let alone in an amount equal to or greater than $380,588.

67. Elkin attempts to substantiate these stockholder loans through a recapitalization theory aimed at capturing expenses purportedly paid by Elkin on behalf of the Company and expenses the Company paid for its New York office.

68. In practice, Elkin and Shorin would increase Elkin's paid in capital amount to capture overhead expenses paid by Elkin and $1,000 per month for use of Elkin's home as the Company office. Elkin and Shorin would decrease Norman's paid in capital amount to capture the Company's payment of overhead expenses for the New York office. In the final calculation used to substantiate the $601,500 paid to Elkin, no provision was made for the Company's previous estimate of $14,000 in expenses paid by Norman on behalf of the Company. These inconsistent maneuvers tended to overstate any changes in stockholder capital to the detriment of Norman.

69. These steps were undertaken in violation of recognized Generally Accepted Accounting Procedures ("GAAP") practices and procedures.

70. Upon information and belief, Shorin compiled, calculated and filed the Company's tax returns from 2002 to present. Accordingly, Shorin was aware of, aided in, and was complicit in Elkin's breaches of his fiduciary duty and fraudulent representations.

H.    Elkin's Unilateral Distributions and Capital Drawdowns

71. The Company's financial records disclose revenue, in the aggregate, of approximately $890,000. The revenue was derived from management fees, the sale of Phase I licenses, equipment and other miscellaneous assets. The $195,000 Elkin personally received from the sale of the Company's Phase II licenses (*See* F, *supra*) was not channeled through the

13

Company's accounts and therefore is not included in the $890,000 gross revenue figure. In total, the Company realized at least $1.08 million in revenue through the sale of assets.

72.    Elkin caused a number of property distributions to be made by the Company to himself. These include: (i) an $82,000 distribution as noted in the Company's 2000 tax return (noted as $90,000 in the Company's check register); (ii) a $30,000 distribution in May, 2001 (noted as check #2988, dated May 2, 2001 in the Company's check register); (iii) a wire transfer for $190,000 on May 22, 2001; (iv) a $30,6000 distribution in July, 2001 (noted as check #3012, dated July 5, 2001 in the Company's check register); and (v) a wire transfer for $200,000 on August 22, 2001. (*See* Exhibit B (containing the background tax return and check register pages)). These amounts do not, on their face, implicate or encompass the purported repayment of stockholder loans discussed above. Norman did not receive any such distributions, proportional or otherwise.

73.    The Company's 2001 tax return depicts an undocumented drawdown of approximately $460,000 of the Company's paid-in capital. (*See* Exhibit B). This amount dovetails with the distributions made to Elkin in 2001 – noted immediately above – as identified in the Company's check register. Norman received no distribution or reimbursement of his initial capital contribution, proportionate or otherwise. Shorin was aware of and aided in the unilateral drawdown of the Company's paid-in capital.

74.    The Company's check register for 2001 also depicts the reclassification of a stockholder loan in the amount of $20,500 from stockholder loan receivable into distributions. Again, Norman at no time received a stockholder loan nor did he receive any cash distributions in 2001.

75.    Upon information and belief, USM has transferred, sold or otherwise disposed of many, if not the majority, of its rights and assets over the past several years. During this time,

14

USM has failed to provide Norman with a complete accounting of the proceeds of all such sales, transfers or other dispositions, and has not made any stockholder or other distributions to Norman as a result of such transfers, sales or other dispositions of its rights or assets. However, Norman was required to report certain purported earnings of the Company to the IRS arising from his ownership interest in the Company.

I.    *Alter Ego* Allegations

76.    From 1997 to present, USM was controlled and administered in such a manner as to effectively render it the *alter ego* of Elkin and the Elkin Group.

77.    From 1997 to present, USM's sole purpose was to provide a means for Elkin and the Elkin Group to acquire Phase II licenses and otherwise trade-off of the Company's goodwill, its incumbency position with the FCC and its physical assets.

78.    Elkin utilized USM to further his personal interests and those of the Elkin Group during the Phase II auction and the subsequent piecemeal sale of assets to Repeater and Roamer.

79.    From its inception, USM's books and records were maintained (if at all) at the residence of Elkin. Elkin's residence served as the principal place of business for both USM and the Elkin Group.

80.    Elkin has otherwise failed to maintain the corporate formalities required of a business entity organized under the laws of the State of Delaware in that he has failed or refused to: (i) maintain Company books and records; (ii) regularly convene stockholder meetings; (iii) hold annual elections for the Company's director(s); and (iv) regularly and candidly communicate with stockholders.

J.    Demand Futility Allegations

81.    Where applicable, the required proffer of a demand of the Company is excused as the Company only has one director and his interests are so intertwined with the allegations

15

contained in this Complaint as to render any such demand futile. Moreover, the challenged transactions that form the basis of this Complaint are not the product of a valid exercise of business judgment, but are instead, self-interested transactions between the Company and its sole director and majority stockholder.

## Causes of Action

### Count I
### Breach of Contract
### (Against Elkin)

Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

82.    Norman performed all of his obligations under the oral agreement between himself and Elkin, and is the owner of 25% of the common stock of USM.

83.    Elkin breached his agreement with Norman by, *inter alia*:

(i)    failing and refusing to provide Norman with complete access to USM's corporate, business, financial and accounting books and records;

(ii)    failing and refusing to fully account to Norman and/or distribute to Norman his 25% share of the proceeds of the transfer(s), sale(s) or other disposition(s) of any rights or assets of USM;

(iii)    failing and refusing to contribute $750,000 in capital as required by the agreement between Elkin and Norman when Norman first acquired his 25% interest in the Company; and

(iv)    obtaining FCC licenses under the name of USM and thereafter transferring those licenses to the Elkin Group, a corporation 100% owned by Elkin.

84.    By reason of defendants' breaches and failures to perform under the agreement, Norman has been damaged in an amount to be determined at trial.

**Count II**
**Declaratory Relief**
**(Against all Defendants)**

Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

85.     This Court has jurisdiction to render declaratory relief pursuant to 10 *Del. C.* § 6501, *et seq.*

86.     Based on the facts set forth above, Norman is entitled to relief as follows:

(i)     A declaration that the Company is entitled to all payments and consideration which have been derived or are to be derived from the sale, transfer, cancellation, abandonment or other exploitation of rights and assets properly belonging to the Company;

(ii)     A declaration that Norman is entitled to at least 25% of the proceeds, net of reasonable expenses, heretofore paid by third parties to any or all of the defendants in connection with the sale, transfer, cancellation, abandonment or other exploitation of rights and assets properly belonging to the Company;

(iii)     A declaration that Norman is entitled to at least 25% of all future proceeds, net of reasonable expenses, to be paid by third parties to any or all of the defendants in connection with the sale, transfer, cancellation, abandonment or other exploitation of rights and assets properly belonging to the Company; and

(iv)     A declaration that some, if not all, of Elkin's interest in the Company is forfeited as a result of the fraudulent conduct noted above and his failure to make the capital contribution he contractually agreed to provide the Company.

**Count III**
**Usurpation of Corporate Opportunities**
**(Against Elkin)**

Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

17

WILM1\30914\1 156666.000

87.    The opportunities to obtain FCC licenses including, but not limited to, Phase II licenses offered through FCC Auction Nos. 18 and 24, were and are corporate opportunities belonging to USM.

88.    Elkin's conduct in bidding on the FCC licenses during Auction No. 18 and winning such bids in the name of USM and thereafter causing those licenses to be issued in the name of the Elkin Group rather than USM is a violation of Elkin's fiduciary duties and constitute(s) an unlawful usurpation of corporate opportunities.

89.    Elkin's conduct in bidding on the FCC licenses during Auction No. 24 to the exclusion of USM constituted an unlawful, usurpation of corporate opportunities.

90.    By virtue of Elkin's usurpation of corporation opportunities belonging to USM, Norman has been damaged in an amount to be determined at trial and is entitled to an equitable accounting of those assets Elkin took in violation of his fiduciary duties.

91.    By virtue of Elkin's usurpation of corporation opportunities belonging to USM, Norman is entitled to the imposition of a constructive trust over the assets or the proceeds from those assets.

### Count IV
### Breach of the Fiduciary Duties of Loyalty, Care and Good Faith Dealing
### (Against Elkin)

Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

92.    By virtue of his status as a majority stockholder, President and director of USM, Elkin owned various fiduciary duties to Norman.

93.    By virtue of the conduct described herein, Elkin has failed to discharge his fiduciary duties of loyalty, care and good faith dealing to Norman, and has, in fact, breached his fiduciary duties.

WILM1\30914\1 156666.000

94.    By virtue of Elkin's breaches of his fiduciary duties to Norman, he has been damaged in an amount to be determined at trial.

## Count V
### Breach of the Fiduciary Duty of Disclosure
### (Against Elkin)

Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

95.    By virtue of his status as the President and director of USM, Elkin owed Norman the fiduciary duty to disclose all pertinent facts regarding the Company's operations and the sales of assets.

96.    By virtue of the conduct described herein, Elkin has failed to discharge his fiduciary duty of disclosure, and has, in fact, breached his fiduciary duty by never convening a stockholder meeting, providing annual reports to the Company's stockholders or providing notice as to the sale of all or substantially all of the Company's assets.

97.    By virtue of Elkin's breaches of his fiduciary duties to Norman, he has been damaged in an amount to be determined at trial.

## Count VI
### Conversion and Misappropriation
### (Against Elkin and the Elkin Group)

Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

98.    Elkin personally and the Elkin Group have profited from their misappropriation of USM's qualified bidder and incumbent status with the FCC.

99.    Elkin and the Elkin Group have exercised control and dominion over the Phase II licenses won by USM in the FCC's Phase II Auction No. 18 so as to deprive USM of all use and economic value.

19

WILM1\30914\1 156666.000

100.    Elkin personally and the Elkin Group have profited from the misappropriation and conversion of the USM's Phase II licenses in an amount to be determined at trial.

### Count VII
### Fraud
### (Against Elkin)

Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

101.    Through the December 2002 letter to Norman's counsel and other communications at or about this time, Elkin made false representations of fact to Norman concerning the financial condition of the Company, Elkin's self-dealing and the distribution of proceeds from known sales.

102.    Elkin knew these representations to be false when they were made or were asserted with reckless indifference to the truth.

103.    Elkin proffered these representation with the intent that Norman would not act to enforce his rights as a 25% stockholder of the Company, hold accountable the director and officers for their failure to discharge their fiduciary duties to the Company or otherwise seek and accounting of the Company's assets.

104.    Norman refrained from acting at the time in justifiable reliance upon Elkin's representations.

105.    Norman has suffered damages in an amount to be determined at trial.

### Count VIII
### Aiding and Abetting Elkin's Breach of Fiduciary Duties
### (Against Shorin)

Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

20

106. By virtue of his status as a majority stockholder, President and director of USM, Elkin owned various fiduciary duties to Norman.

107. By virtue of the conduct described herein, Elkin has failed to discharge his fiduciary duties of loyalty, care and good faith dealing to Norman, and has, in fact, breached his fiduciary duties.

108. Shorin knowingly participated in Elkin's breaches of his fiduciary duties given his active participation in the affairs of USM and the Elkin Group as the chief financial officer of both companies. Moreover, Shorin compiled, calculated and filed the Company's tax returns from 2002 to present.

### Count IX
### Unjust Enrichment
### (Against Elkin and the Elkin Group)

Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

109. Elkin and the Elkin Group have been unjustly enriched in that, *inter alia*, they have failed to account to Norman in connection with the acquisition and/or sale, transfer or other disposition of USM's rights and assets and has, instead, distributed the proceeds of any such transfer(s), sale(s) or other disposition(s) of USM's rights or assets to himself, the Elkin Group or others.

110. By virtue of defendants' unjust enrichment, Norman has been damaged in an amount to be determined at trial.

WHEREFORE, Norman demands judgment against the defendants as follows:

A. an award of nominal, compensatory, rescissory and/or restitution damages in an amount to be determined at trial,

WILM1\30914\1 156666.000

B.    the imposition of a constructive trust over those assets or proceeds from assets that rightfully belonged to the Company;

C.    declaring that Elkin has unlawfully usurped corporate opportunities of USM;

D.    declaring that Norman is entitled to at least 25% of all proceeds from the sale of Company assets, minus reasonable expenses;

E.    declaring that some, if not all, of Elkin's interest in the Company is forfeited;

F.    requiring Elkin to provide a full and complete accounting (equitable accounting) of all Company assets and other such property or rights adjudged to be Company assets;

G.    the appointment of a custodian to wind-up the affairs of USM and distribute any and all assets *pro rata*;

H.    an award of both pre- and post-judgment interest at the legal rate;

I.    an award of the costs and disbursements of this action, including reasonable counsel, accountants' and experts' fees, costs and expenses; and

J.    all such other and further relief as the Court deems just and proper under the circumstances.

Dated: December 2, 2005

David A. Felice

Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
*Attorneys for Plaintiff Jeffrey M. Norman*

22

EFiled: Dec 2 2005 6:51PM EST
Transaction ID 7568281

# Exhibit A

# US MOBILCOMM, INC.

805 Bryn Mawr Avenue
Newtown Square, PA 19073

December 3, 2002

Vincent A. Sama, Esq.
Winston & Strawn
200 Park Avenue
New York, NY 10166-4193

Dear Mr. Sama,

Per your request of October 2, 2002, over past 3 years US MobilComm, Inc. has sold the
220 Mhz licenses it owned in Florida, Boston and Chicago, together with related
equipment. Attached are copies of the purchase and sale agreements for the sales.

The net proceeds of such sales were distributed as follows:

| | |
|---|---|
| Sales Price of Boston Systems: | $349,000 |
| Sales Price of Florida Systems: | $130,708 |
| Total Net Proceeds | $479,708 |

Use of Proceeds:

| | |
|---|---|
| Repayment of Equipment Loans – | $31,996 |
| Payment of Legal Fees – | $31,124 |
| Payments to Original Licensees | $36,000 |
| Repayment of Shareholder Loans – | $380,588 |

Please be advised that in the cases of both of the above transactions USM entered into
strict confidentiality agreements that bound USM and anyone receiving information
about the transactions from USM.

If you have any further questions or comments please let me know.

Sincerely,

David W. Elkin
President

**PTF0052**

# Exhibit B

# Form 1120S

Department of the Treasury
Internal Revenue Service

## U.S. Income Tax Return for an S Corporation

► Do not file this form unless the corporation has timely filed
Form 2553 to elect to be an S corporation.
► See separate instructions.

OMB No. 1545-0130

**2000**

For calendar year 2000, or tax year beginning _____, 2000, and ending _____

| | | |
|---|---|---|
| A Effective date of election an S corporation **04/04/1994** | Name **US MOBILCOMM, INC.** | C Employer identification number **23-2767067** |
| B Business code no. (see pages 29-31) **513000** | Number, street, and room or suite no. (if a P.O. box, see page 11 of the instructions.) **805 BRYN MAWR AVE** | D Date incorporated **04/04/1994** |
| | City or town, state, and ZIP code **NEWTOWN SQUARE, PA        19073-4330** | E Total assets (see page 11) **296,746.** |

F Check applicable boxes: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Change in address  (4) ☐ Amended return

G Enter number of shareholders in the corporation at end of the tax year . . . . . . . . . . . . . . . . . . . . . ► **2**

Caution: *Include only trade or business income and expenses on lines 1a through 21. See page 11 of the instructions for more information.*

**Income**

| | | | | |
|---|---|---|---|---|
| 1a | Gross receipts or sales **74,574.** | b Less returns and allowances | c Bal ► | 1c **74,574.** |
| 2 | Cost of goods sold (Schedule A, line 8) . . . . . . . . . . . . . . . . | | 2 | **40,572.** |
| 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . | | 3 | **34,002.** |
| 4 | Net gain (loss) from Form 4797, Part II, line 18 (attach Form 4797) . . . . . | | 4 | |
| 5 | Other income (loss) (attach schedule) . . . . . . . . **SEE STATEMENT 1.** | | 5 | **22,955.** |
| 6 | Total income (loss). Combine lines 3 through 5 . . . . . . . . . . . ► | | 6 | **56,957.** |

**Deductions** (see page 12 of the instructions for limitations)

| | | | | |
|---|---|---|---|---|
| 7 | Compensation of officers . . . . . . . . . . . . . . . . . . . . . . | | 7 | |
| 8 | Salaries and wages (less employment credits) . . . . . . . . . . . . . | | 8 | |
| 9 | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . | | 9 | |
| 10 | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 10 | |
| 11 | Rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 11 | |
| 12 | Taxes and licenses . . . . . . . . . . . . . **SEE STATEMENT 1.** | | 12 | **550.** |
| 13 | Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 13 | |
| 14a | Depreciation (if required, attach Form 4562) . . . . . . | 14a **4,179.** | | |
| b | Depreciation claimed on Schedule A and elsewhere on return | 14b | | |
| c | Subtract line 14b from line 14a . . . . . . . . . . . . . . . . . . . | | 14c | **4,179.** |
| 15 | Depletion (Do not deduct oil and gas depletion.) . . . . . . . . . . . . | | 15 | |
| 16 | Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 16 | |
| 17 | Pension, profit-sharing, etc., plans . . . . . . . . . . . . . . . . . | | 17 | |
| 18 | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . | | 18 | |
| 19 | Other deductions (attach schedule) . . . . . . . . **SEE STATEMENT 1.** | | 19 | **27,171.** |
| 20 | Total deductions. Add the amounts shown in the far right column for lines 7 through 19 . . . . . . . . . ► | | 20 | **31,900.** |
| 21 | Ordinary income (loss) from trade or business activities. Subtract line 20 from line 6 . . . . | | 21 | **25,057.** |

**Tax and Payments**

| | | | | |
|---|---|---|---|---|
| 22 | Tax: a Excess net passive income tax (attach schedule) . . . . . . . . | 22a | | |
| | b Tax from Schedule D (Form 1120S) . . . . . . . . . . . . . . . | 22b | | |
| | c Add lines 22a and 22b (see page 15 of the instructions for additional taxes) . . . . . . . . | | 22c | |
| 23 | Payments: a 2000 estimated tax payments and amount applied from 1999 return | 23a | | |
| | b Tax deposited with Form 7004 . . . . . . . . . . . . . . . . . | 23b | | |
| | c Credit for Federal tax paid on fuels (attach Form 4136) . . . . . . . . | 23c | | |
| | d Add lines 23a through 23c . . . . . . . . . . . . . . . . . . . | | 23d | |
| 24 | Estimated tax penalty. Check if Form 2220 is attached . . . . . . . . . ► ☐ | | 24 | |
| 25 | Tax due. If the total of lines 22c and 24 is larger than line 23d, enter amount owed. See page 4 of the instructions for depository method of payment . . . . . . . . . . . . . ► | | 25 | |
| 26 | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid . . | | 26 | |
| 27 | Enter amount of line 26 you want: Credited to 2001 estimated tax ► _____ Refunded ► | | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

► _____ Signature of officer    Date _____    Title _____

**Paid Preparer's Use Only**

| | | | |
|---|---|---|---|
| Preparer's signature ► | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
| Firm's name (or yours if self-employed), address, and ZIP code ► | | EIN | |
| | | Phone no. | |

For Paperwork Reduction Act Notice, see the separate instructions.

JSA
0C1410 3.000

Form **1120S** (2000)

Form 1120S (2000) US MOBILCOMM, INC.                              23-2767067    Page **2**

| | Cost of Goods Sold (see page 16 of the instructions) | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) . . . . . . . . . . . . . . . . . . . SEE STATEMENT 2. | 5 | 40,572. |
| 6 | Total. Add lines 1 through 5 | 6 | 40,572. |
| 7 | Inventory at end of year | 7 | |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | 40,572. |

**9a** Check all methods used for valuing closing inventory:
  (i) ☐ Cost as described in Regulations section 1.471-3
  (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4
  (iii) ☐ Other (specify method used and attach explanation) ▶ _____

**b** Check if there was a writedown of "subnormal" goods as described in Regulations section 1.471-2(c) . . . . . . . . . . . . . . ▶ ☐
**c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) . . . . . . . ▶ ☐
**d** If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9d |
**e** Do the rules of section 263A (for property produced or acquired for resale) apply to the corporation? . . . . . . . . ☐ Yes ☒ No
**f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? . . . ☐ Yes ☐ No
   If "Yes," attach explanation.

| | Other Information | | | Yes | No |
|---|---|---|---|---|---|

**1** Check method of accounting:  (a) ☒ Cash   (b) ☐ Accrual   (c) ☐ Other (specify) ▶ _____
**2** Refer to the list on pages 29 through 31 of the instructions and state the corporation's principal:
   (a) Business activity ▶ TWO WAY RADIO _____ (b) Product or service ▶ SERVICE _____
**3** Did the corporation at the end of the tax year own, directly or indirectly, 50% or more of the voting stock of a domestic
   corporation? (For rules of attribution, see section 267(c).) If "Yes," attach a schedule showing: (a) name, address, and
   employer identification number and (b) percentage owned . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X
**4** Was the corporation a member of a controlled group subject to the provisions of section 1561? . . . . . . . . . . . . | | X
**5** Check this box if the corporation has filed or is required to file Form 8264, Application for Registration of a Tax
   Shelter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
**6** Check this box if the corporation issued publicly offered debt instruments with original issue discount . . . . ▶ ☐
   If so, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount
   Instruments.
**7** If the corporation: (a) filed its election to be an S corporation after 1986, (b) was a C corporation before it elected to
   be an S corporation or the corporation acquired an asset with a basis determined by reference to its basis (or the
   basis of any other property) in the hands of a C corporation, and (c) has net unrealized built-in gain (defined in section
   1374(d)(1)) in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced
   by net recognized built-in gain from prior years (see page 17 of the instructions) . . . . ▶ $ _____
**8** Check this box if the corporation had accumulated earnings and profits at the close of the tax year (see
   page 18 of the instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
**Note:** If the corporation had assets or operated a business in a foreign country or U.S. possession, it may be required to attach
**Schedule N (Form 1120)**, Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.

| | Shareholders' Shares of Income, Credits, Deductions, etc. | | | |
|---|---|---|---|---|
| | (a) Pro rata share items | | | (b) Total amount |
| 1 | Ordinary income (loss) from trade or business activities (page 1, line 21) . . . . . . . . . . | 1 | | 25,057. |
| 2 | Net income (loss) from rental real estate activities (attach Form 8825) . . . . . . . . . . | 2 | | |
| 3a | Gross income from other rental activities | 3a | | |
| b | Expenses from other rental activities (attach schedule) | 3b | | |
| c | Net income (loss) from other rental activities. Subtract line 3b from line 3a | | 3c | |
| 4 | Portfolio income (loss): | | | |
| a | Interest income . . . . . . . . . . . . . . . . . . . . . . . . . STMT. 2. | 4a | | 758. |
| b | Ordinary dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4b | | |
| c | Royalty income . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4c | | |
| d | Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) . . . . . . . . . . | 4d | | |
| e | Net long-term capital gain (loss) (attach Schedule D (Form 1120S)): | | | |
| | (1) 28% rate gain (loss) ▶ _____ (2) Total for year ▶ | 4e(2) | | 66,844. |
| f | Other portfolio income (loss) (attach schedule) . . . . . . . . . . . . . . . . | 4f | | |
| 5 | Net section 1231 gain (loss) (other than due to casualty or theft) (attach Form 4797) . . . . | 5 | | |
| 6 | Other income (loss) (attach schedule) . . . . . . . . . . . . . . . . . | 6 | | |

*Income (Loss)* (side label)

JSA
0C1420 3.000

Form 1120S (2000)  **US MOBILCOMM, INC.**                                                    23-2767067        Page **3**

## Shareholders' Shares of Income, Credits, Deductions, etc. *(continued)*

| | | (a) Pro rata share items | | (b) Total amount |
|---|---|---|---|---:|
| **Deductions** | 7 | Charitable contributions *(attach schedule)* | 7 | |
| | 8 | Section 179 expense deduction *(attach Form 4562)* | 8 | |
| | 9 | Deductions related to portfolio income (loss) (itemize) | 9 | |
| | 10 | Other deductions *(attach schedule)* | 10 | |
| **Invest. Interest** | 11a | Interest expense on investment debts | 11a | |
| | b | (1) Investment income included on lines 4a, 4b, 4c, and 4f above | 11b(1) | 758. |
| | | (2) Investment expenses included on line 9 above | 11b(2) | |
| **Credits** | 12a | Credit for alcohol used as a fuel *(attach Form 6478)* | 12a | |
| | b | Low-income housing credit: | | |
| | | (1) From partnerships to which section 42(j)(5) applies for property placed in service before 1990 | 12b(1) | |
| | | (2) Other than on line 12b(1) for property placed in service before 1990 | 12b(2) | |
| | | (3) From partnerships to which section 42(j)(5) applies for property placed in service after 1989 | 12b(3) | |
| | | (4) Other than on line 12b(3) for property placed in service after 1989 | 12b(4) | |
| | c | Qualified rehabilitation expenditures related to rental real estate activities *(attach Form 3468)* | 12c | |
| | d | Credits (other than credits shown on lines 12b and 12c) related to rental real estate activities | 12d | |
| | e | Credits related to other rental activities | 12e | |
| | 13 | Other credits | 13 | |
| **Adjustments and Tax Preference Items** | 14a | Depreciation adjustment on property placed in service after 1986 | 14a | -14,516. |
| | b | Adjusted gain or loss | 14b | |
| | c | Depletion (other than oil and gas) | 14c | |
| | d | (1) Gross income from oil, gas, or geothermal properties | 14d(1) | |
| | | (2) Deductions allocable to oil, gas, or geothermal properties | 14d(2) | |
| | e | Other adjustments and tax preference items *(attach schedule)* | 14e | |
| **Foreign Taxes** | 15a | Name of foreign country or U.S. possession ▶ _____ | | |
| | b | Gross income sourced at shareholder level | 15b | |
| | c | Foreign gross income sourced at corporate level: | | |
| | | (1) Passive | 15c(1) | |
| | | (2) Listed categories *(attach schedule)* | 15c(2) | |
| | | (3) General limitation | 15c(3) | |
| | d | Deductions allocated and apportioned at shareholder level: | | |
| | | (1) Interest expense | 15d(1) | |
| | | (2) Other | 15d(2) | |
| | e | Deductions allocated and apportioned at corporate level to foreign source income: | | |
| | | (1) Passive | 15e(1) | |
| | | (2) Listed categories *(attach schedule)* | 15e(2) | |
| | | (3) General limitation | 15e(3) | |
| | f | Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued | 15f | |
| | g | Reduction in taxes available for credit and gross income from all sources *(attach schedule)* | 15g | |
| **Other** | 16 | Section 59(e)(2) expenditures: a Type ▶ _____ b Amount ▶ | 16b | |
| | 17 | Tax-exempt interest income | 17 | |
| | 18 | Other tax-exempt income | 18 | |
| | 19 | Nondeductible expenses | 19 | |
| | 20 | Total property distributions (including cash) other than dividends reported on line 22 below | 20 | 82,000. |
| | 21 | Other items and amounts required to be reported separately to shareholders *(attach schedule)* | 21 | |
| | 22 | Total dividend distributions paid from accumulated earnings and profits | 22 | |
| | 23 | Income (loss). (Required only if Schedule M-1 must be completed.) Combine lines 1 through 6 in column (b). From the result, subtract the sum of lines 7 through 11a, 15f, and 16b | 23 | 92,659. |

Form **1120S** (2000)

MC000527

JSA
0C1430 3.000

MC000528

Form 1120S (2000)  **US MOBILCOMM, INC.**                     23-2767067    Page 4

## Balance Sheets per Books

| Assets | (a) | Beginning of tax year (b) | (c) | End of tax year (d) |
|---|---|---|---|---|
| 1 Cash | | 22,527. | | 37,682. |
| 2 a Trade notes and accounts receivable | | | | |
|   b allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. Government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach schedule)  STMT 3 | | 54,450. | | 43,477. |
| 7 Loans to shareholders | | 20,500. | | 20,500. |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (attach schedule) | | | | |
| 10 a Buildings and other depreciable assets | 133,791. | | 133,791. | |
|    b Less accumulated depreciation | 125,932. | 7,859. | 133,361. | 430. |
| 11 a Depletable assets | | | | |
|    b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | | | |
| 13 a Intangible assets (amortizable only) | 28,500. | | 28,500. | |
|    b Less accumulated amortization | 11,632. | 16,868. | 13,401. | 15,099. |
| 14 Other assets (attach schedule)  STMT 3 | | 243,604. | | 179,558. |
| 15 Total assets | | 365,808. | | 296,746. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | | | |
| 17 Mortgages, notes, bonds payable in less than 1 year  STMT 3 | | 122,783. | | 78,815. |
| 18 Other current liabilities (attach schedule)  STMT 3 | | 1,100. | | 898. |
| 19 Loans from shareholders | | | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach schedule) | | | | |
| 22 Capital stock | | 5. | | 5. |
| 23 Additional paid-in capital | | 1,090,591. | | 973,038. |
| 24 Retained earnings | | -848,671. | | -756,010. |
| 25 Adjustments to shareholders' equity (attach schedule) | | | | |
| 26 Less cost of treasury stock | | ( ) | | ( ) |
| 27 Total liabilities and shareholders' equity | | 365,808. | | 296,746. |

## Reconciliation of Income (Loss) per Books With Income (Loss) per Return (You are not required to complete this schedule if the total assets on line 15, column (d), of Schedule L are less than $25,000.)

| | | | | | |
|---|---|---|---|---|---|
| 1 Net income (loss) per books | 92,659. | 5 | Income recorded on books this year not included on Schedule K, lines 1 through 6 (itemize): | | |
| 2 Income included on Schedule K, lines 1 through 6, not recorded on books this year (itemize): ____ | | a | Tax-exempt interest ____ | | |
| ____ | | 6 | Deductions included on Schedule K, lines 1 through 11a, 15f, and 16b, not charged against book income this year (itemize): | | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 11a, 15f, and 16b (itemize): | | a | Depreciation ____ | | |
| a Depreciation ____ | | | ____ | | |
| b Travel and entertainment ____ | | 7 | Add lines 5 and 6 | | |
| ____ | | 8 | Income (loss) (Schedule K, line 23). | | |
| 4 Add lines 1 through 3 | 92,659. | | Line 4 less line 7 | | 92,659. |

## Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see page 27 of the instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year | -787,055. | | |
| 2 Ordinary income from page 1, line 21 | 25,057. | | |
| 3 Other additions  SEE STATEMENT 4. | 67,602. | | |
| 4 Loss from page 1, line 21 | ( ) | | |
| 5 Other reductions | ( ) | ( ) | |
| 6 Combine lines 1 through 5 | -694,396. | | |
| 7 Distributions other than dividend distributions | | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6 | -694,396. | | |

0C1440 3.000    JSA          02/20/2001                    23-2767067              Form 1120S (2000)

**SCHEDULE D**
**(Form 1120S)**

Department of the Treasury
Internal Revenue Service

# Capital Gains and Losses and Built-In Gains

▶ Attach to Form 1120S.

▶ See separate Instructions.

OMB No. 1545-0130

**2000**

Name

US MOBILCOMM, INC.

Employer Identification number

23-2767067

## Short-Term Capital Gains and Losses - Assets Held One Year or Less

| (a) Description of property (Example, 100 shares of "Z" Co.) | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Sales price | (e) Cost or other basis (see instructions) | (f) Gain or (loss) ((d) minus (e)) | |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 2 | Short-term capital gain from installment sales from Form 6252, line 26 or 37 . . . . | 2 | |
| 3 | Short-term capital gain or (loss) from like-kind exchanges from Form 8824 . . . . | 3 | |
| 4 | Combine lines 1 through 3 in column (f) . . . . . . . . . . . . . . . | 4 | |
| 5 | Tax on short-term capital gain included on line 33 below . . . . . . . . . . | 5 | ( ) |
| 6 | Net short-term capital gain or (loss). Combine lines 4 and 5. Enter here and on Form 1120S, Schedule K, line 4d or 6 . . . . . . . . . . . . . . . . | 6 | |

## Long-Term Capital Gains and Losses - Assets Held More Than One Year

| (a) Description of property (Example, 100 shares of "Z" Co.) | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Sales price | (e) Cost or other basis (see instructions) | (f) Gain or (loss) ((d) minus (e)) | (g) 28% rate gain or (loss) *(see instr. below) |
|---|---|---|---|---|---|---|
| 7 SEE STATEMENT 5 | | | | | 66,844. | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 8 | Long-term capital gain from installment sales from Form 6252, line 26 or 37 . . . | 8 | |
| 9 | Long-term capital gain or (loss) from like-kind exchanges from Form 8824 . . . . | 9 | |
| 10 | Capital gain distributions . . . . . . . . . . . . . . . . . . . . | 10 | |
| 11 | Combine lines 7 through 10 in column (f) . . . . . . . . . . . . . . . | 11 | 66,844. |
| 12 | Tax on long-term capital gain included on lines 25 and 33 below . . . . . . . | 12 | ( ) ( ) |
| 13 | Combine lines 7 through 12 in column (g). Enter here and on Form 1120S, Schedule K, line 4e(1) or 6 . . . . . . . . . . . . . . . . . . . | 13 | |
| 14 | Net long-term capital gain or (loss). Combine lines 11 and 12 in column (f). Enter here and on Form 1120S, Schedule K, line 4e(2) or 6 . . . . . . . . . | 14 | 66,844. |

* 28% rate gain or (loss) includes all "collectibles gains and losses" (as defined in the instructions).

## Capital Gains Tax (See instructions before completing this part.)

| | | | |
|---|---|---|---|
| 15 | Enter section 1231 gain from Form 4797, line 9 . . . . . . . . . . . . . | 15 | |
| 16 | Net long-term capital gain or (loss). Combine lines 11 and 15 . . . . . . . . | 16 | |
| | Note: If the corporation is liable for the excess net passive income tax (Form 1120S, page 1, line 22a) or the built-in gains tax (Part IV below), see the line 17 instructions before completing line 17. | | |
| 17 | Net capital gain. Enter excess of net long-term capital gain (line 16) over net short-term capital loss (line 4) | 17 | |
| 18 | Statutory minimum . . . . . . . . . . . . . . . . . . . . . . . | 18 | $25,000 |
| 19 | Subtract line 18 from line 17 . . . . . . . . . . . . . . . . . . . | 19 | |
| 20 | Enter 34% of line 19 . . . . . . . . . . . . . . . . . . . . . . | 20 | |
| 21 | Taxable income (attach computation schedule) . . . . . . . . . . . . . | 21 | |
| 22 | Enter tax on line 21 amount (attach computation schedule) . . . . . . . . . | 22 | |
| 23 | Net capital gain from substituted basis property (attach computation schedule) . . | 23 | |
| 24 | Enter 35% of line 23 . . . . . . . . . . . . . . . . . . . . . . | 24 | |
| 25 | Tax. Enter the smallest of line 20, 22, or 24 here and on Form 1120S, page 1, line 22b · · · · · | 25 | |

## Built-In Gains Tax (See instructions before completing this part.)

| | | | |
|---|---|---|---|
| 26 | Excess of recognized built-in gains over recognized built-in losses (attach computation schedule) . . . . | 26 | |
| 27 | Taxable income (attach computation schedule) . . . . . . . . . . . . . | 27 | |
| 28 | Net recognized built-in gain. Enter smallest of line 26, line 27, or line 7 of Schedule B . . . . . . . . | 28 | |
| 29 | Section 1374(b)(2) deduction . . . . . . . . . . . . . . . . . . . | 29 | |
| 30 | Subtract line 29 from line 28. If zero or less, enter -0- here and on line 33 . . . . . . . . . | 30 | |
| 31 | Enter 35% of line 30 . . . . . . . . . . . . . . . . . . . . . . | 31 | |
| 32 | Business credit and minimum tax credit carryforwards under section 1374(b)(3) from C corporation years . . . . | 32 | |
| 33 | Tax. Subtract line 32 from line 31 (if zero or less, enter -0-). Enter here and on Form 1120S, page 1, line 22b . . . . | 33 | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1120S.

**Schedule D (Form 1120S) 2000**

JSA
0C1810 2.000

Form **4562**

Department of the Treasury
Internal Revenue Service (99)

**Depreciation and Amortization**
**(Including Information on Listed Property)**

▶ See separate instructions.     ▶ Attach this form to your return.

OMB No. 1545-0172

**2000**

Attachment
Sequence No. **67**

Name(s) shown on return

MOBILCOMM, INC.

Identifying number

23-2767067

...siness or activity to which this form relates

**GENERAL DEPRECIATION AND AMORTIZATION**

**Election To Expense Certain Tangible Property (Section 179)**
**Note:** *If you have any "listed property, "complete Part V before you complete Part I.*

| | | |
|---|---|---|
| 1 | Maximum dollar limitation. If an enterprise zone business, see page 2 of the instructions . . . . . . . . . . | **1** | |
| 2 | Total cost of section 179 property placed in service. See page 2 of the instructions . . . . . . . . . . . . . . . | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation . . . . . . . . . . . . . . . . . . . | **3** | |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- . . . . . . . . . . . . . . . | **4** | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see page 2 of the instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5** | |

| (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|
| **6** | | |
| | | |

| | | |
|---|---|---|
| 7 | Listed property. Enter amount from line 27 . . . . . . . . . . . . . . . . . . . | **7** | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 . . . . . . . . . . . . | **8** | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 . . . . . . . . . . . . . . . . . . . . . . | **9** | |
| 10 | Carryover of disallowed deduction from 1999. See page 3 of the instructions . . . . . . . . . . . . . . . | **10** | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions) . . . | **11** | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 . . . . . . . . . . . | **12** | |
| 13 | Carryover of disallowed deduction to 2001. Add lines 9 and 10, less line 12 . . . . . ▶ | **13** | | |

**Note:** *Do not use Part II or Part III below for listed property (automobiles, certain other vehicles, cellular telephones, certain computers, or property used for entertainment, recreation, or amusement. Instead, use Part V for listed property.*

**MACRS Depreciation for Assets Placed in Service Only During Your 2000 Tax Year (Do not include listed property.)**

**Section A - General Asset Account Election**

If you are making the election under section 168(i)(4) to group any assets placed in service during the tax year into one
or more general asset accounts, check this box. See page 3 of the instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**Section B - General Depreciation System (GDS) (See page 3 of the instructions.)**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| **15a** 3-year property | | | | | | |
| **b** 5-year property | | | | | | |
| **c** 7-year property | | | | | | |
| **d** 10-year property | | | | | | |
| **e** 15-year property | | | | | | |
| **f** 20-year property | | | | | | |
| **g** 25-year property | | | 25 yrs. | | S/L | |
| **h** Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| **i** Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

**Section C - Alternative Depreciation System (ADS) (See page 5 of the instructions.)**

| | | | | | | |
|---|---|---|---|---|---|---|
| **16a** Class life | | | | | S/L | |
| **b** 12-year | | | 12 yrs. | | S/L | |
| **c** 40-year | | | 40 yrs. | MM | S/L | |

**Other Depreciation (Do not include listed property.) (See page 5 of the instructions.)**

| | | |
|---|---|---|
| 17 | GDS and ADS deductions for assets placed in service in tax years beginning before 2000 . . . . . . . . . . | **17** | 4,179. |
| 18 | Property subject to section 168(f)(1) election . . . . . . . . . . . . . . . . . . . . . . . . . . . | **18** | |
| 19 | ACRS and other depreciation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **19** | |

**Summary (See page 6 of the instructions.)**

| | | |
|---|---|---|
| | Listed property. Enter amount from line 26 . . . . . . . . . . . . . . . . . . . . . . . . | **20** | |
| 21 | **Total.** Add deductions from line 12, lines 15 and 16 in column (g), and lines 17 through 20. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instructions . . . . ▶ | **21** | 4,179. |
| 22 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs . . . . . . . . . . | **22** | | |

JSA
For Paperwork Reduction Act Notice, see page 9 of the instructions.
0C2300 2.000

Form **4562** (2000)

MC000530

02/20/2001                    23-2767067                    10

Form 4562 (2000)                                                                                                                      Page 2

## Listed Property (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)

Note: *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 23a, 23b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

### Section A - Depreciation and Other Information (Caution: *See page 7 of the instructions for limits for passenger automobiles.*)

| 23a Do you have evidence to support the business/investment use claimed? | | Yes | | No | 23b If "Yes," is the evidence written? | | | Yes | | No |
|---|---|---|---|---|---|---|---|---|---|---|

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 24 Property used more than 50% in a qualified business use (See page 6 of the instructions.): | | | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| 25 Property used 50% or less in a qualified business use (See page 6 of the instructions.): | | | | | | | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |

| 26 Add amounts in column (h). Enter the total here and on line 20, page 1 . . . . . . . . . . . . . . . . | 26 | |
|---|---|---|
| 27 Add amounts in column (i). Enter the total here and on line 7, page 1 . . . . . . . . . . . . . . . . | | 27 |

### Section B - Information on Use of Vehicles

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.

If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 28 Total business/investment miles driven during the year (do not include commuting miles - see page 1 of the instructions) . . . . . . . . . . | | | | | | | | | | | | |
| 29 Total commuting miles driven during the year . . . . | | | | | | | | | | | | |
| 30 Total other personal (noncommuting) miles driven . . . . . . . . . . . . . . | | | | | | | | | | | | |
| 31 Total miles driven during the year. Add lines 28 through 30 . . . . . . . . . | | | | | | | | | | | | |
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 32 Was the vehicle available for personal use during off-duty hours? . . . . . . | | | | | | | | | | | | |
| 33 Was the vehicle used primarily by a more than 5% owner or related person? . . . . . . | | | | | | | | | | | | |
| 34 Is another vehicle available for personal use? . . . . . . . . . . . . | | | | | | | | | | | | |

### Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons. See page 8 of the instructions.

| | Yes | No |
|---|---|---|
| 35 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 36 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See page 8 of the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . . . . . . . . . . | | |
| 37 Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . . . . . | | |
| 38 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . . . . . | | |
| 39 Do you meet the requirements concerning qualified automobile demonstration use? See page 8 of the instructions . . . . . . . . . . | | |

Note: *If your answer to 35, 36, 37, 38, or 39 is "Yes," do not complete Section B for the covered vehicles.*

## Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 40 Amortization of costs that begins during your 2000 tax year (See page 8 of the instructions.): | | | | | |
| | | | | | |
| | | | | | |

| 41 Amortization of costs that began before 2000 . . . . . . . . . . . . . . . . . . . . . . . | 41 | 1,767. |
|---|---|---|
| 42 Total. Add amounts in column (f). See page 9 of the instructions for where to report . . . . . . . . . . . | 42 | 1,767. |

JSA
0C2301 1.000                                                                                                      Form 4562 (2000)

02/20/2001         MC000531          23-2767067                                          11

US MOBILCOMM, INC.

## 2000 Depreciation

Description of Property
GENERAL DEPRECIATION AND AMORTIZATION

| Asset description | Date placed in service | Unadjusted cost or basis | Bus. % | 179 exp. reduc. in basis | ITC reduction in basis | Basis for depreciation | Salvage value | Accumulated depreciation | Method | Con-vention | Life | ACRS class | MA CRS class | Current-yr 179 expense | Current-year depreciation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EQUIP- BALT/WASH-USN | 01/01/1995 | 41,335. | 100. | | | 41,335. | | 40,032. | 200DB | HY | | | 5 | | 1,303. |
| EQUIP- BOSTON-HR | 07/01/1995 | 42,879. | 100. | | | 42,879. | | 41,206. | 200DB | HY | | | 5 | | 1,673. |
| EQUIP- NY-MA | 07/01/1995 | 44,587. | 100. | | | 44,587. | | 43,858. | 200DB | HY | | | 5 | | 729. |
| COMPUTER EQUIPMENT | 07/01/1995 | 1,902. | 100. | | | 1,902. | | 1,792. | 200DB | HY | | | 5 | | 110. |
| COMPUTER EQUIPMENT | 07/01/1996 | 1,572. | 100. | | | 1,572. | | 1,301. | 200DB | HY | | | 5 | | 181. |
| COMPUTER EQUIPMENT | 09/01/1998 | 953. | 100. | | | 953. | | 430. | 200DB | HY | | | 5 | | 183. |
| EQUIP- BALT/WASH ANT | 11/23/1999 | 564. | 100. | 564. | | | | | 200DB | HY | | | 5 | | |
| Less: Retired Assets . . . . . . . . . . . . . . . | | | | | | | | | | | | | | | |
| TOTALS . . . . . . . . . . . . . . . | | 133,792. | | 564. | | 133,228. | | 128,619. | | | | | | | 4,179. |

*Assets Retired

JSA
0X4027 1.000

02/20/2001

MC000532

3-2767067

12

US MOBILCOMM, INC.

**Description of property**

GENERAL DEPRECIATION AND AMORTIZATION

| Asset description | Date placed in service | Cost or basis | Accumulated amortization | Code | Life | Current-year amortization |
|---|---|---|---|---|---|---|
| INCORPORATION EXP | 04/04/1994 | 1,000. | 1,000. | 248 | 5.000 | |
| INTANGIBLE ACQ COST | 04/04/1994 | 9,000. | 3,650. | 197 | 15.000 | 600. |
| FCC LICENSE | 12/01/1994 | 17,500. | 5,932. | 197 | 15.000 | 1,167. |
| INCORPORATION EXP | 01/01/1994 | 1,000. | 1,000. | 248 | 5.000 | |
| Less: Retired Assets | | | | | | |
| **TOTALS** | | **28,500.** | **11,582.** | | | **1,767.** |

* Assets Retired

JSA
0X9028 1.000    X275   02/20/2001         23-2767067

MC000533

13

US MOBILCOM., INC.

# 2000 Alternative Min...um Tax Depreciation

**Description of Property**
GENERAL DEPRECIATION AND AMORTIZATION

| Asset description | Date Placed in Service | AMT basis for depreciation | AMT accumulated depreciation | AMT method | AMT convention | AMT life | AMT depreciation deduction | Regular depreciation deduction | Post-86 depreciation adjustment | Leased pers. prop. preference | Real property preference |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EQUIP- BALT/WASH-USN | 01/01/1995 | 41,335. | 30,267. | 150DB | HY | 6.000 | 5,812. | 1,303. | -4,509. | | |
| EQUIP- BOSTON-KR | 07/01/1995 | 42,879. | 30,592. | 150DB | HY | 6.000 | 6,029. | 1,673. | -4,356. | | |
| EQUIP- NY-NA | 07/01/1995 | 44,587. | 31,807. | 150DB | HY | 6.000 | 6,269. | 729. | -5,540. | | |
| COMPUTER EQUIPMENT | 07/01/1995 | 1,902. | 1,694. | 150DB | HY | 6.000 | 208. | 110. | -98. | | |
| COMPUTER EQUIPMENT | 07/01/1996 | 1,572. | 1,139. | 150DB | HY | 6.000 | 221. | 181. | -40. | | |
| COMPUTER EQUIPMENT | 09/01/1998 | 953. | 328. | 150DB | HY | 6.000 | 156. | 183. | 27. | | |
| EQUIP- BALT/WASH ANT | 11/22/1999 | 561. | | | HY | | | | | | |
| Less: Retired Assets ........ * Assets Retired | | | | | | | | | | | |
| TOTALS ........ | | 161,292. | 103,225. | | | | 18,695. | 4,179. | -14,516. | | |

23-2767057

MC000534

14

0X0034.1.000   JSA

X275   02/20/2001

US MOBILCOMM, INC.                                          23-2767067

FORM 1120S, PAGE 1 DETAIL
==================================================================================

LINE 5 - OTHER INCOME
---------------------
```
    SALES TAX DISCOUNTS                                     121.
    CANCELLATION OF INDEBTNESS                           22,834.
                                                   ---------------
      TOTAL                                              22,955.
                                                   ===============
```

LINE 12 - TAXES
---------------
```
    TAXES AND LICENSES EXCLUDING INCOME TAXES
    -----------------------------------------
    FRANCHISE AND CAPITAL STOCK TAX                         550.
                                                   ---------------
      TOTAL                                                 550.
                                                   ===============
```

LINE 19 - OTHER DEDUCTIONS
--------------------------
```
    AMORTIZATION                                          1,767.
    INSURANCE                                             1,150.
    OFFICE SUPPLIES                                         747.
    POSTAGE AND FEDEX                                       239.
    ACCOUNTING AND PROFESSIONAL SERVICES                14,250.
    BANK CHARGES                                             24.
    CORPORATE REGISTRATION                                 185.
    DUES AND MEMBERSHIPS                                    550.
    TELEPHONE                                             2,692.
    ABANDONMENT EXPENSE                                   2,250.
    LEGAL EXPENSE                                         3,317.
                                                   ---------------
      TOTAL                                              27,171.
                                                   ===============
```

MC000535

STATEMENT  1

OSPSFR 2.000

02/20/2001                     23-2767067              15

US MOBILCOMM, INC.                                    23-2767067

FORM 1120S, PAGE 2 DETAIL
    ====================================================================

SCH A, LINE 5 - OTHER COSTS
-----------------------------
    SITE RENT COSTS                                      36,760.
    OTHER DIRECT SITE COSTS (INSURANCE, PHONE ETC)        3,812.
                                                     ----------------
        TOTAL                                            40,572.
                                                     ================

SCH K, LINE 4A - INTEREST INCOME
---------------------------------
    FIRST UNION                                             758.
                                                     ----------------
        TOTAL                                               758.
                                                     ================

MC000536

                                                STATEMENT   2

US MOBILCOMM, INC.                                      23-2767067

FORM 1120S, PAGE 4 DETAIL - SCH L
=========================================================================

|                                | BEGINNING | ENDING    |
|--------------------------------|-----------|-----------|
| **LINE 6 - OTHER CURRENT ASSETS** |           |           |
| EQUIPMENT PARTS                | 2,250.    | NONE      |
| LICENSE OPTION PAYMENTS        | 51,200.   | 42,000.   |
| SECURITY DEPOSITS              | 600.      | 600.      |
| DUE FROM RELATED ENTITY        | 400.      | NONE      |
| MISC RECEIVABLE                | NONE      | 877.      |
| TOTAL                          | 54,450.   | 43,477.   |
|                                |           |           |
| **LINE 14 - OTHER ASSETS**     |           |           |
| CONSTRUCTION IN PROGRESS       | 243,604.  | 179,558.  |
| TOTAL                          | 243,604.  | 179,558.  |
|                                |           |           |
| **LINE 17 - MORTGAGES, ETC. PAY < 1 YR** |  |           |
| NOTES PAYABLE- EQUIPMENT       | 122,783.  | 78,815.   |
| TOTAL                          | 122,783.  | 78,815.   |
|                                |           |           |
| **LINE 18 - OTHER CURRENT LIABILITIES** |    |           |
| SALES TAX PAYABLE              | 1,100.    | 898.      |
| TOTAL                          | 1,100.    | 898.      |

MC000537

STATEMENT  3

US MOBILCOMM, INC.                                          23-2767067

FORM 1120S, PAGE 4 DETAIL
=================================================================

SCH M-2, LINE 3 - OTHER ADDITIONS - AAA
----------------------------------------
    INTEREST INCOME                                         758.
    NET LONG-TERM CAPITAL GAIN                           66,844.
                                                 ---------------
    TOTAL                                               67,602.
                                                 ===============

MC000538

US MOBIL-COMM, INC.

SCHEDULE D (FORM 1120S) DETAIL

LINE 7 - LONG-TERM CAPITAL GAINS AND LOSSES

| PROPERTY | DATE ACQ | DATE SOLD | SALES PRICE | COST | GAIN/LOSS |
|----------|----------|-----------|-------------|------|-----------|
| FL 220 MHZ LICENSES | 07/01/1995 | 03/22/2000 | 130,708. | 63,864. | 66,844. |
| TOTAL | | | | | 66,844. |

02/20/2001

MC000539

19

STATEMENT 5

05PSLN 8.000

US MOBILCOMM, INC.                                    23-2767067

FEDERAL FOOTNOTE:
:================================================================

   RECONCILIATION OF ACCUMULATED ADJUSTMENTS ACCOUNT TO
   RETAINED EARNINGS:
      C CORPORATION EARNINGS AND PROFITS    - 61,616.
      ACCUMULATED ADJUSTMENTS ACCOUNT    -694,396

      BOOK RETAINED EARNINGS    -756,012
                            =========

MC000540

STATEMENT   6

QSPSPR2.000

02/20/2001                    23-2767067            20

**SCHEDULE K-1**
**(Form 1120S)**

artment of the Treasury
al Revenue Service

OMB. No. 1545-0130

**2000**

# Shareholder's Share of Income, Credits, Deductions, etc.

▶ See separate instructions.

For calendar year 2000 or tax year

beginning _____ , 2000, and ending _____ , 20 ___

Shareholder's identifying number ▶ ████████

Corporation's identifying number ▶ 23-2767067

Shareholder's name, address, and ZIP code

DAVID ELKIN
805 BRYN MAWR AVE
NEWTOWN SQUARE, PA 19073-4330

Corporation's name, address, and ZIP code

US MOBILCOMM, INC.
805 BRYN MAWR AVE
NEWTOWN SQUARE, PA 19073-4330

A  Shareholder's percentage of stock ownership for tax year (see instructions for Schedule K-1) . . . . . . . . . . . . . . . ▶  75.000000 %

B  Internal Revenue Service Center where corporation filed its return ▶  CINCINNATI, OH 45999

C  Tax shelter registration number (see instructions for Schedule K-1) . . . . . . . . . . . . . . . ▶

D  Check applicable boxes:  (1) ☐ Final K-1  (2) ☐ Amended K-1

| | (a) Pro rata share items | | (b) Amount | (c) Form 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| Income (Loss) | 1  Ordinary income (loss) from trade or business activities . . . . . . . . | 1 | 18,793. | See pages 4 and 5 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | 2  Net income (loss) from rental real estate activities . . . . . . . . . . . . | 2 | | |
| | 3  Net income (loss) from other rental activities . . . . . . . . . . . . . . | 3 | | |
| | 4  Portfolio income (loss): | | | |
| | a  Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4a | 569. | Sch. B, Part I, line 1 |
| | b  Ordinary dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4b | | Sch. B, Part II, line 5 |
| | c  Royalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4c | | Sch. E, Part I, line 4 |
| | d  Net short-term capital gain (loss) . . . . . . . . . . . . . . . . . . . | 4d | | Sch. D, line 5, col. (f) |
| | e  Net long-term capital gain (loss): | | | |
| | (1) 28% rate gain (loss) . . . . . . . . . . . . . . . . . . . . . . . | 4e(1) | | Sch. D, line 12, col. (g) |
| | (2) Total for year . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4e(2) | 50,133. | Sch. D, line 12, col. (f) |
| | f  Other portfolio income (loss) (attach schedule) . . . . . . . . . . . . | 4f | | (Enter on applicable line of your return.) |
| | 5  Net section 1231 gain (loss) (other than due to casualty or theft) . . . | 5 | | See Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | 6  Other income (loss) (attach schedule) . . . . . . . . . . . . . . . . . | 6 | | (Enter on applicable line of your return.) |
| Deductions | 7  Charitable contributions (attach schedule) . . . . . . . . . . . . . . . | 7 | | Sch. A, line 15 or 16 |
| | 8  Section 179 expense deduction . . . . . . . . . . . . . . . . . . . . . | 8 | | See page 6 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | 9  Deductions related to portfolio income (loss) (attach schedule) . . . . | 9 | | |
| | 10  Other deductions (attach schedule) . . . . . . . . . . . . . . . . . . | 10 | | |
| Investment Interest | 11a  Interest expense on investment debts . . . . . . . . . . . . . . . . . | 11a | | Form 4952, line 1 |
| | b  (1) Investment income included on lines 4a, 4b, 4c, and 4f above . . . | 11b(1) | 569. | See Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | (2) Investment expenses included on line 9 above . . . . . . . . . | 11b(2) | | |
| Credits | 12a  Credit for alcohol used as fuel . . . . . . . . . . . . . . . . . . . . | 12a | | Form 6478, line 10 |
| | b  Low-income housing credit: | | | |
| | (1) From section 42(j)(5) partnerships for property placed in service before 1990 . . . . . . . . . . . . . . . . . . . . . . . | 12b(1) | | |
| | (2) Other than on line 12b(1) for property placed in service before 1990 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12b(2) | | |
| | (3) From section 42(j)(5) partnerships for property placed in service after 1989 . . . . . . . . . . . . . . . . . . . . . | 12b(3) | | Form 8586, line 5 |
| | (4) Other than on line 12b(3) for property placed in service after 1989 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12b(4) | | |
| | c  Qualified rehabilitation expenditures related to rental real estate activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12c | | |
| | d  Credits (other than credits shown on lines 12b and 12c) related to rental real estate activities . . . . . . . . . . . . . . . . . . . | 12d | | See page 7 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | e  Credits related to other rental activities . . . . . . . . . . . . . . . | 12e | | |
| | 13  Other credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1120S.

Schedule K-1 (Form 1120S) 2000

JSA
0C1600 2.000

MC000541

02/20/2001          23-2767067          22

Schedule K-1 (Form 1120S) (2000)  **SHAREHOLDER#01   DAVID ELKIN**                              Page **2**

| (a) Pro rata share items | | (b) Amount | (c) Form 1040 filers enter the amount in column (b) on: |
|---|---|---|---|
| **Adjustments and Tax Preference Items** | | | |
| 14a Depreciation adjustment on property placed in service after 1986 | 14a | -10,887. | See page 7 of the Shareholder's Instructions for Schedule K-1 (Form 1120S) and Instructions for Form 6251 |
| b Adjusted gain or loss | 14b | | |
| c Depletion (other than oil and gas) | 14c | | |
| d (1) Gross income from oil, gas, or geothermal properties | 14d(1) | | |
| (2) Deductions allocable to oil, gas, or geothermal properties | 14d(2) | | |
| e Other adjustments and tax preference items (atth sch.) | 14e | | |
| **Foreign Taxes** 15a Name of foreign country or U.S. possession ▶ | | | |
| b Gross income sourced at shareholder level | 15b | | |
| c Foreign gross income sourced at corporate level: | | | |
| (1) Passive | 15c(1) | | |
| (2) Listed categories (attach schedule) | 15c(2) | | |
| (3) General limitation | 15c(3) | | |
| d Deductions allocated and apportioned at shareholder level: | | | |
| (1) Interest expense | 15d(1) | | Form 1116, Part I |
| (2) Other | 15d(2) | | |
| e Deductions allocated and apportioned at corporate level to foreign source income: | | | |
| (1) Passive | 15e(1) | | |
| (2) Listed categories (attach schedule) | 15e(2) | | |
| (3) General limitation | 15e(3) | | |
| f Total foreign taxes (check one): ▶ ☐ Paid ☐ Accrued | 15f | | Form 1116, Part II |
| g Reduction in taxes available for credit and gross income from all sources (attach schedule) | 15g | | See Instructions for Form 1116 |
| **Other** 16 Section 59(e)(2) expenditures: a Type ▶ | | | See Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| b Amount | 16b | | |
| 17 Tax-exempt interest income | 17 | | Form 1040, line 8b |
| 18 Other tax-exempt income | 18 | | |
| 19 Nondeductible expenses | 19 | | See pages 7 and 8 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| 20 Property distributions (including cash) other than dividend distributions reported to you on 1099-DIV | 20 | 82,000. | |
| 21 Amount of loan repayments for "Loans From Shareholders" | 21 | | |
| 22 Recapture of low-income housing credit: | | | |
| a From section 42(j)(5) partnerships | 22a | | Form 8611, line 8 |
| b Other than on line 22a | 22b | | |
| 23 Supplemental Information required to be reported separately to each shareholder (attach additional schedules if more space is needed): | | | |

_Schedule K-1 (Form 1120S) 2000_

**SCHEDULE K-1**
**(Form 1120S)**

Department of the Treasury
Internal Revenue Service

# Shareholder's Share of Income, Credits, Deductions, etc.

► See separate instructions.

For calendar year 2000 or tax year

beginning _____, 2000, and ending _____, 20 ___

OMB. No. 1545-0130

**2000**

Shareholder's identifying number ► [redacted]

Shareholder's name, address, and ZIP code

JEFFREY NORMAN
1824 STORRS ROAD
STORRS, CT 06268

Corporation's identifying number ► 23-2767067

Corporation's name, address, and ZIP code

US MOBILCOMM, INC.
805 BRYN MAWR AVE
NEWTOWN SQUARE, PA  19073-4330

A  Shareholder's percentage of stock ownership for tax year (see instructions for Schedule K-1) . . . . . . . . . . . . . . ►  **25.000000** %

B  Internal Revenue Service Center where corporation filed its return ►  CINCINNATI, OH 45999

C  Tax shelter registration number (see instructions for Schedule K-1) . . . . . . . . . . . . . . . . . . . . ►

D  Check applicable boxes:   (1) ☐ Final K-1   (2) ☐ Amended K-1

| | (a) Pro rata share items | | (b) Amount | (c) Form 1040 filers enter the amount in column (b) on: |
|---|---|---|---|---|
| **Income (Loss)** | 1  Ordinary income (loss) from trade or business activities . . . . . . . . | 1 | 6,264. | See pages 4 and 5 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | 2  Net income (loss) from rental real estate activities . . . . . . . . . | 2 | | |
| | 3  Net income (loss) from other rental activities . . . . . . . . . . . | 3 | | |
| | 4  Portfolio income (loss): | | | |
| | a  Interest . . . . . . . . . . . . . . . . . . . . . . . . . | 4a | 189. | Sch. B, Part I, line 1 |
| | b  Ordinary dividends . . . . . . . . . . . . . . . . . . . . | 4b | | Sch. B, Part II, line 5 |
| | c  Royalties . . . . . . . . . . . . . . . . . . . . . . . . | 4c | | Sch. E, Part I, line 4 |
| | d  Net short-term capital gain (loss) . . . . . . . . . . . . . . . | 4d | | Sch. D, line 5, col. (f) |
| | e  Net long-term capital gain (loss): | | | |
| | (1) 28% rate gain (loss) . . . . . . . . . . . . . . . | 4e(1) | | Sch. D, line 12, col. (g) |
| | (2) Total for year . . . . . . . . . . . . . . . . . | 4e(2) | 16,711. | Sch. D, line 12, col. (f) |
| | f  Other portfolio income (loss) (attach schedule) . . . . . . . . . . | 4f | | (Enter on applicable line of your return.) |
| | 5  Net section 1231 gain (loss) (other than due to casualty or theft) . . . | 5 | | See Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | 6  Other income (loss) (attach schedule) . . . . . . . . . . . . . | 6 | | (Enter on applicable line of your return.) |
| **Deductions** | 7  Charitable contributions (attach schedule) . . . . . . . . . . . . | 7 | | Sch. A, line 15 or 16 |
| | 8  Section 179 expense deduction . . . . . . . . . . . . . . . | 8 | | See page 6 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | 9  Deductions related to portfolio income (loss) (attach schedule) . . . | 9 | | |
| | 10  Other deductions (attach schedule) . . . . . . . . . . . . . | 10 | | |
| **Investment Interest** | 11a  Interest expense on investment debts . . . . . . . . . . . . . | 11a | | Form 4952, line 1 |
| | b  (1) Investment income included on lines 4a, 4b, 4c, and 4f above . . . | 11b(1) | 189. | See Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | (2) Investment expenses included on line 9 above . . . . . . . . | 11b(2) | | |
| **Credits** | 12a  Credit for alcohol used as fuel . . . . . . . . . . . . . . . | 12a | | Form 6478, line 10 |
| | b  Low-income housing credit: | | | |
| | (1) From section 42(j)(5) partnerships for property placed in service before 1990 | 12b(1) | | |
| | (2) Other than on line 12b(1) for property placed in service before 1990 | 12b(2) | | Form 8586, line 5 |
| | (3) From section 42(j)(5) partnerships for property placed in service after 1989 | 12b(3) | | |
| | (4) Other than on line 12b(3) for property placed in service after 1989 | 12b(4) | | |
| | c  Qualified rehabilitation expenditures related to rental real estate activities | 12c | | |
| | d  Credits (other than credits shown on lines 12b and 12c) related to rental real estate activities | 12d | | See page 7 of the Shareholder's Instructions for Schedule K-1 (Form 1120S). |
| | e  Credits related to other rental activities . . . . . . . . . . . | 12e | | |
| | 13  Other credits . . . . . . . . . . . . . . . . . . . . . | 13 | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1120S.

Schedule K-1 (Form 1120S) 2000

JSA
0C1600 2.000

MC000543

02/20/2001                    23-2767067                    24