# EXHIBIT C

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| JEFFREY M. NORMAN, : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | Civil Action |
| : | No. 849-N |
| U.S. MOBILCOMM, INC., : | |
| : | |
| Defendant. : | |

- - -

Chancery Courtroom No. 12C
New Castle County Courthouse
Wilmington, Delaware
Tuesday, August 23, 2005
9:38 a.m.

- - -

BEFORE:  HON. DONALD F. PARSONS, JR., Vice Chancellor.

- - -

TRIAL TRANSCRIPT

- - -

CHANCERY COURT REPORTERS
500 North King Street - Suite 11400
Wilmington, Delaware 19801-3759
(302) 255-0525

2

```
 1   APPEARANCES:

 2           SEAN J. BELLEW, ESQ.
             DAVID A. FELICE, ESQ.
 3           Cozen O'Connor
                For Plaintiff
 4
             ELIZABETH A. WILBURN, ESQ.
 5           BRIAN J. McTEAR, ESQ.
             Blank Rome LLP
 6              For Defendant

 7                          - - -

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

218

1  Your Honor, related to the deficiency letter.
2               THE COURT:  All right.  At this point,
3  the documents I have are PX 1 through -- PX 1 through
4  24 and DX 25 through 30.  Those will be admitted.  We
5  will mark as PX 31 -- or it has been marked as PX31.
6               MS. WILBURN:  Could I note a
7  clarification for the record?  PX 22 is blank.
8               THE COURT:  All right.  Thank you.  PX
9  31 consists of an August 19th, 2005 letter on Cozen
10 O'Connor letterhead to Mr. Caponi; a July 12th, 2005
11 letter on the same letterhead to Mr. Caponi; and a
12 June 30, 2005 letter, and a March 29, 2005 letter, all
13 from Cozen O'Connor to Mr. Caponi.
14              So those will be admitted, obviously,
15 not for the truth of the matter stated in them, but
16 rather, for just that they were said, that those
17 statements were made.
18              (Plaintiff's Exhibits 1 through 21 and
19 23 and 24 and 31 are received.)
20              (Defendant's Exhibits 25 through 30
21 are received.)
22              THE COURT:  All right.  You know,
23 normally we will go to posttrial briefing and that sort
24 of stuff.  I think we are getting to the point of wasting

CHANCERY COURT REPORTERS

1  time.

2               It's pretty clear to me there is a
3  credible basis here for inferring possible
4  mismanagement and wrongdoing on the part of Mr. Elkin.
5  It's incredibly sloppy record keeping.  He is engaged
6  in self-dealing transactions in connection with the
7  licenses, the decision to make the license go from USM
8  to the Elkin Group.  Obviously, he is on both sides of
9  that transaction.  He is a controlling shareholder,
10 and he doesn't even give notice to the other -- to the
11 minority shareholder.  He doesn't do anything to see
12 whether things are being done fairly.

13              Maybe I'm missing something in terms
14 of corporate law, but at this point it can't be any
15 clearer.  In terms of the payoff of loans, the fact
16 that he unilaterally decides to do up a loan to
17 himself and specify what things are going to be --
18 maybe that is reasonable.  Maybe it's not.  But
19 throughout, the numerous inconsistencies, in terms of
20 he says there are no distributions, no dividends, no
21 anything like that, and -- yet the tax returns suggest
22 otherwise.  He says there were shareholder loans, but
23 the tax returns indicate otherwise.  The other
24 testimony shows that there are virtually no records.

220

1  I want this gentleman on record, under a court
2  order -- can be a consent order or I will issue it
3  myself -- that when he is saying there are no
4  documents, he knows just how serious it is, because
5  this kind of sloppiness is intolerable.
6           By the same token, I don't think the
7  fact that it's gone from $6 million to zero -- that,
8  in and of itself doesn't mean anything. I don't see
9  -- I see incredible sloppiness. I see complete
10 inattention to the corporate forms and formalities.
11 But I am doubtful that at the end of the day there has
12 been some really serious damages caused to Mr. Norman.
13 I think that there may even be appropriate
14 explanations for what is going on.
15           The Centennial transaction, as far as
16 I can tell, there is no basis to think that that
17 underlying transaction, there was anything wrong with
18 it or wrong with the way that Mr. Elkin handled it.
19 There doesn't seem to be any real challenge to the
20 underlying economics of the sales that were done. But
21 all of these decisions are made by Mr. Elkin. He
22 provides no backup, no documentation. He has got one
23 other shareholder, and I think it's -- it's not
24 something that is very attractive to this Court.

221

1          So I'm very much inclined to be
2    granting the 220 relief in pretty broad form.  If
3    counsel can work it out, fine.  If they can't, brief
4    it, but brief it very quickly.  I want the briefs just
5    as promptly as can be possibly done, because I want to
6    move this case along.  Stand in recess.
7              (Recess at 4:30 p.m.)

CHANCERY COURT REPORTERS