IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY M. NORMAN,<br>Plaintiff,<br><br>v.<br><br>DAVID W. ELKIN, RICHARD M. SHORIN,<br>and THE ELKIN GROUP, INC.,<br>Defendants,<br><br>And<br><br>US MOBILCOMM, INC.,<br>Nominal Defendant. | §<br>§<br>§<br>§<br>§<br>§   C.A. NO. 06-005-JJF<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

BLANK ROME LLP
Steven L. Caponi
Delaware Bar No. 3484
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

Mark A. Evetts
Law Offices of Mark A. Evetts
8502 Jackson Creek Bend Lane
Humble, Texas 77396
Telephone: (281) 458-6914
Facsimile: (281) 458-0326

***Attorneys for Defendants David W. Elkin,
Richard M. Shorin, The Elkin Group, Inc.,
and Nominal Defendant US MobilComm,
Inc.***

Dated: April 10, 2007

122138.00601/40168210v.1

**TABLE OF CONTENTS**

**Page**

SUMMARY OF DEFENDANTS' REPLY ........................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.  A COURT SITTING IN EQUITY APPLIES THE LEGAL STATUTE OF
    LIMITATIONS TO EQUITABLE CLAIMS BY ANALOGY. ................................. 2

II. THE INTERNAL AFFAIRS DOCTRINE HAS NOTHING TO DO WITH THE
    STATUTE OF LIMITATIONS ................................................................................. 3

    A.  Norman confuses the significant distinction between matters of substance
        and procedure ..................................................................................................... 3

    B.  Because the internal affairs doctrine has no application with respect
        to statutes of limitations, Norman has conceded application of
        Pennsylvania's two-year statute of limitations for all but his contract claim ..... 5

III. NO TOLLING DOCTRINE PLED OR ARGUED BY NORMAN CAN
     OVERCOME THE APPLICATION OF THE STATUTE OF LIMITATIONS
     IN THIS CASE ......................................................................................................... 6

    A.  A federal court sitting in diversity borrows not only the forum's
        statute of limitations, it also borrows the forum's tolling doctrines ................. 6

    B.  Whether through actionable self-dealing by a fiduciary or fraudulent
        concealment, Norman's claims are only tolled until such time as he
        should have discovered his claims through the exercise of reasonable
        diligence ............................................................................................................. 6

    C.  Norman has failed to adequately plead actionable self-dealing by a
        fiduciary sufficient to invoke equitable tolling ................................................. 9

    D.  Norman has also failed to adequately plead fraudulent concealment ............. 9

IV. BY NO LATER THAN DECEMBER 2002, NORMAN
    POSSESSED ACTUAL KNOWLEDGE OF FACTS THAT
    GAVE RISE TO CLAIMS AGAINST DEFENDANTS ....................................... 12

V.  THE FCC DOCUMENTS REFERRED TO IN DEFENDANTS' SUMMARY
    JUDGMENT BRIEF ARE PRECISELY THE SORT OF PUBLIC DOCUMENTS
    THAT CONSTITUTE NOTICE UNDER DELAWARE LAW ............................ 13

VI. ALTHOUGH DEFENDANTS' CONCEDE THEIR STATUE OF FRAUDS ARGUMENT, NORMAN'S CONTRACT CLAIMS ARE THE MOST CLEARLY TIME-BARRED .................................................................................. 14

CONCLUSION ........................................................................................................... 15

## TABLE OF AUTHORITIES

Amfar Asphault Corp.,
    986 WL. 27582 (E.D.N.Y. Nov. 20, 1986) ........................................................................ 8

Beana v. Woori Bank,
    2006 WL. 2935752 (S.D.N.Y. Oct. 11, 2006) .................................................................. 4

Berger v. Intelident Solutions, Inc.,
    911 A.2d 1164 (Del. Ch. 2006) ....................................................................................... 3

Campbell v. Upjohn Co.,
    676 F.2d 1122 (6th Cir. 1982) ............................................................................... 8, 9, 10

Chrisco v. Shafran,
    525 F. Supp. 613 (D. Del. 1981) ................................................................................... 12

Conley v. First Jersey Sec., Inc.,
    543 F. Supp. 368 (D. Del. 1982) ..................................................................................... 9

Corcoran v. New York Power Authority,
    202 F.3d 530 (2d Cir. 1999) ........................................................................................ 6, 8

David B. Lilly Co. v. Fisher,
    799 F. Supp. 1562 (D. Del. 1991),
    aff'd, 18 F.3d 1112 (3d Cir. 1994) ................................................................................... 4

In re Dean Witter Partnership Litigation,
    1998 WL. 442456 (Del. Ch. Jul 17, 1998),
    aff'd, 725 A.2d 441 (Del. 1999) ........................................................................... 7, 10, 12

Dofflemyer v. W.F. Hall Printing Co.,
    558 F. Supp. 372 (D. Del. 1983) ..................................................................................... 5

Ecke v. United States,
    1994 WL. 782230 (D. Del. Mar. 1, 1994) .................................................................... 12

Flight Attendants Against UAL Offset (FAAUO) v. Commissioner of Internal Revenue,
    165 F.3d 572 (7th Cir. 1999) ........................................................................................ 10

Fruehauf Trailor Corp. v. Terex Corp.,
    250 B.R. 168 (D. Del. 2000) .................................................................................. 2, 8, 9

Halpern v. Barran,
    313 A.2d 139 (Del. Ch. 1973) .................................................................................. 9, 10

Hill v. Der,
 521 F. Supp. 1370 (D. Del. 1981) ..................................................................................8

In re Integrated Resources Real Estate Ltd. P'ships Sec. Litigation,
 815 F. Supp. 620 (S.D.N.Y. 1993) ................................................................................10

Kahn v. Seaboard Corp.,
 625 A.2d 269 (Del. Ch. 1993) .........................................................................................2

Orloff v. Shulman,
 2005 WL. 3272355 (Del. Ch. Nov. 23, 2005) .................................................................2

Plain v. Flicker,
 645 F. Supp. 898 (D.N.J. 1986) ......................................................................................6

Robertson v. Seidman & Seidman,
 609 F.2d 583 (2d Cir. 1979) ............................................................................................7

Ruggerio v. Poppiti,
 2005 WL. 517967 (Del. Ch. Feb. 23, 2005) ................................................................2, 7

Seidel v. Lee,
 954 F. Supp. 810 (D. Del. 1996) .....................................................................................7

State ex rel. Brady v. Pettinaro Enterprises,
 870 A.2d 513 (Del. Ch. 2005) .........................................................................................2

Taylor v. LSI Logic Corp.,
 1996 WL. 361505 (Del. Ch. Jun 21, 1996),
 rev'd on other grounds 689 A.2d 1196 (Del. 1997) .......................................................3

In re Tyson Foods, Inc.,
 2007 WL. 1018209 (Del. Ch. Feb. 6, 2007) ...................................................................7

In re. USACAFES, L.P. Litigation,
 1993 WL. 18769 (Del. Ch. Jan. 21, 1993) ......................................................................7

United States Cellular Investment Co. v. Bell Atlantic Mobile Systems, Inc.,
 677 A.2d 497 (Del. 1996) .........................................................................................13, 14

Yaw v. Talley,
 1994 WL. 89019 (Del. Ch. Mar. 2, 1994) .......................................................................1

Youell v. Maddox,
 692 F. Supp. 343 (D. Del. 1988) .....................................................................................5

## SUMMARY OF DEFENDANTS' REPLY

It would be nearly impossible to find a better case for dismissal on the basis that all claims are time-barred. Norman's complaint demonstrates on its face that his claims stem from allegedly wrongful conduct that spanned the period from 1994 to mid 2001, at the latest. *See, e.g., Yaw v. Talley*, 1994 WL 89019, at *6 (Del. Ch. Mar. 2, 1994) ("[W]here the complaint asserts a claim that on its face would otherwise be time-barred, the plaintiff bears the burden of pleading facts that would operate to toll the statute."). While Norman has vaguely alluded to potential claims that post-date mid 2001, after the conclusion of fact and expert discovery in this and a related Section 220 action, he has failed to allege any actionable conduct more recent than August 21, 2001.[1] *See* Amended Complaint at 14.

The undisputed record before this Court reflects that all of Norman's claims not only pre-date the complaint in this case by nearly four and a half years, they even pre-date the filing of the Section 220 action by well over three years, thus barring all such claims under either potentially applicable statutes of limitations.[2] Although Defendants have carried their burden of proving the claims fall outside the statute of limitations, they have taken the extra step of anticipating and conclusively refuting any potentially applicable tolling doctrines that may extend the limitations period. Norman's summary judgment response has failed to overcome that refutation, by any standard, much less by clear and convincing evidence.

---

[1] While it is extremely tempting to reply to a number of factual misrepresentations made by Norman in his response, most of those factual representations are integral to the statute of limitations issue before the Court, and so Defendants will resist that temptation. Instead, Defendants will devote this reply to addressing only the legal and factual arguments that are germane to the pending summary judgment.

[2] The Section 220 action was filed on November 16, 2004, a true and correct copy of which is attached as Exhibit A.

## ARGUMENT

I. **A COURT SITTING IN EQUITY APPLIES THE LEGAL STATUTE OF LIMITATIONS TO EQUITABLE CLAIMS BY ANALOGY.**

Norman's assertion to the contrary notwithstanding, "statutes of limitation *could* apply directly to causes in Chancery [Court] of every sort." *Kahn v. Seaboard Corp.*, 625 A.2d 269, 271 (Del. Ch. 1993) (emphasis in original). Indeed, "the proposition that equitable claims could be subjected to a statute of limitations appears to be hardly contestable." *Id.* at 272. For causes that are purely equitable in nature, "Delaware courts have consistently held that analogous statutory provisions create a presumptive time period for application of laches to bar a claim, thereby relieving courts of the need to conduct the traditional equitable test." *Orloff v. Shulman*, 2005 WL 3272355, at *10 (Del. Ch. Nov. 23, 2005) (quotations omitted); *accord State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 526-27 (Del. Ch. 2005). As well, "where, as here, the relief sought on an equitable claim is money damages, Delaware courts apply the . . . statute of limitations." *Fruehauf Trailor Corp. v. Terex Corp.*, 250 B.R. 168, 184 n.1 (D. Del. 2000); *accord Ruggerio v. Poppiti*, 2005 WL 517967, at *4 (Del. Ch. Feb. 23, 2005) ("Where the relief sought from an accounting is merely the recovery of money, the case is analogous to an action for monetary damages. . . . [and] the court applies the equivalent statute of limitations by analogy."). Thus, it is well-settled under Delaware law that the Court should apply appropriate statutes of limitations to Norman's legal claims, to any of his equitable claims for which he seeks the recovery of money, and to his purely equitable claims by analogy.

2

## II. THE INTERNAL AFFAIRS DOCTRINE HAS NOTHING TO DO WITH THE STATUTE OF LIMITATIONS.

In their opening brief, Defendant's established that: (i) Norman's claims and the allegedly improper conduct supporting those claims occurred in Pennsylvania; (ii) Delaware's borrowing statute requires this Court to apply Pennsylvania's two year statute of limitations; (iii) all of Norman's claims except those for breach of contract, are time barred by Pennsylvania's statute of limitations. Norman's only argument against application of Pennsylvania's statute of limitations is the assertion that to involve "internal affairs doctrine" precludes application of Delaware's borrowing statute. Significantly, Norman has not argued, as he cannot, that the claims did not arise in Pennsylvania, thereby rendering the borrowing statute – or Pennsylvania's shorter statute of limitations – inapplicable. Norman's reliance on the internal affairs doctrine is severely misplaced.

### A. Norman confuses the significant distinction between matters of substance and procedure.

Norman's argument in favor of the internal affairs doctrine ignores the fundamental distinction between matters of procedure versus substance. Causes of action, and their elements, are matters of substantive law. The "internal affairs doctrine, as applied by Delaware courts, . . . governs the *substantive issues* for decision." *Berger v. Intelident Solutions, Inc.*, 911 A.2d 1164, 1169 (Del. Ch. 2006) (emphasis added); *accord Taylor v. LSI Logic Corp.*, 1996 WL 361505, at *3 (Del. Ch. Jun 21, 1996) ("According to the internal affairs doctrine, this Court must apply the law of the place of incorporation . . . in determining the *matters of substantive law* concerning the internal affairs of a corporation." (emphasis added)) *rev'd on other grounds* 689 A.2d 1196 (Del. 1997). In contrast, "statutes of limitation are deemed to be procedural for conflict of law

purposes and the Court . . . appl[ies] its own state's statute of limitations." *David B. Lilly Co. v. Fisher*, 799 F. Supp. 1562, 1568 (D. Del. 1991), *aff'd*, 18 F.3d 1112 (3d Cir. 1994).

While it may be counterintuitive to think of limitations periods as procedural, they are uniformly viewed as such unless the cause of action at issue – like a state consumer protection statute – contains a limitations period built into the statute, which is the only time limitations becomes a matter of substantive law. In *Beana v. Woori Bank*, 2006 WL 2935752 (S.D.N.Y. Oct. 11, 2006) the Courts directly addressed, and rejected, the very argument raised by Norman. In that case, a litigation trustee appointed by the United States Bankruptcy Court for the District of Delaware brought suit on behalf of a Belgium company against four South Korean Banks. *Id.* at *1. Just like Norman, the defendants argued "that the Korean statute of limitation ought to be applied under the 'internal affairs' doctrine." *Id.* at *6. The court summarily rejected that argument, holding that a "federal court sitting in diversity must apply the [procedural] laws of the forum in which it sits." *Id.* "Thus, a federal court sitting in New York will apply New York's statute of limitations." *Id.* The court went on to note that "[n]o New York court ***has accepted the 'internal affairs' doctrine as an exception to traditional statute of limitation principles***." *Id.* at *8 (emphasis added).

In sum, Norman's argument is tantamount to asking the Delaware Court of Chancery hearing a corporate governance case involving a Texas corporation to apply Texas' Rules of Civil Procedure, instead of the Court of Chancery Rules of Procedure. This proposition flies in the face of well settled law. Indeed, it appears that consistent with the *Beana* decision, no case from any jurisdiction in this country has used the

internal affairs doctrine to trump application of the forum's statutes of limitations. Norman certainly failed to point out any such case.

> **B. Because the internal affairs doctrine has no application with respect to statutes of limitations, Norman has conceded application of Pennsylvania's two-year statute of limitations for all but his contract claim.**

Norman has not argued that his claims did not arise in Pennsylvania, or that Pennsylvania's limitations period for all of his claims but breach of contract is anything other than two years. Nor has he argued that his claims arose in Delaware, a fallacious argument in any event. *See, e.g., Dofflemyer v. W.F. Hall Printing Co.*, 558 F. Supp. 372, 377 (D. Del. 1983) ("The parties have not suggested that there is any connection between the events challenged in the present action and the State of Delaware, other than the fact that the defendant corporations are incorporated here.").

Indeed, Defendants have never suggested application of any substantive law other than that of Delaware. Indeed, ironically, Defendants also seek application of Delaware's statute of limitations, since this case is pending in Delaware. The only twist here is that Delaware's statute of limitations happens to include a borrowing statute calling for application of the shorter of Delaware's statute of limitations or the statute of limitations of the state where the causes of action arose. *See Youell v. Maddox*, 692 F. Supp. 343, 354-55 (D. Del. 1988) ("In following the *Erie* doctrine, this Court must apply Delaware's law regarding statutes of limitations," including its borrowing statute.).

Thus, pursuant to Delaware's borrowing statute, all of Norman's claims should be governed by Pennsylvania's two-year limitations period except his breach of contract claim, which should be governed by Delaware's shorter three-year limitations period.

### III. NO TOLLING DOCTRINE PLED OR ARGUED BY NORMAN CAN OVERCOME THE APPLICATION OF THE STATUTE OF LIMITATIONS IN THIS CASE.

Once the statute of limitations has been demonstrated to bar his claims, Norman has the burden of proving that some tolling principle nonetheless saves some or all of his claims, a burden he has clearly failed to sustain.

#### A. A federal court sitting in diversity borrows not only the forum's statute of limitations, it also borrows the forum's tolling doctrines.

When a federal court "'borrows' a state statute of limitations, the court also 'borrows' the applicable state law tolling rules unless those rules are inconsistent with, or would frustrate the purposes of, the federal law." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999); *accord Plain v. Flicker*, 645 F. Supp. 898, 901 (D.N.J. 1986) ("State law governs the tolling of the statute, unless state law is inconsistent with the purposes behind [the federal statute at issue in the case]."). Delaware's tolling rules are entirely consistent with the federal common law of tolling, and so it is irrelevant which the Court decides to apply.

#### B. Whether through actionable self-dealing by a fiduciary or fraudulent concealment, Norman's claims are only tolled until such time as he should have discovered his claims through the exercise of reasonable diligence.

Although Norman arguably failed to plead either actionable self-dealing or fraudulent concealment, he now seeks to rely on these two tolling doctrines. His reliance, however, is misplaced. For even if these doctrines were applicable, they serve to toll the limitations period only until such time as Norman was placed on inquiry notice. The record reflects that Norman was actually *aware* of the facts alleged in his complaint well before the statute of limitations period expired.

Under Delaware law, "where actionable self-dealing is alleged in a derivative suit against a corporate fiduciary, the statute of limitations applies, but may be tolled until such time as a reasonably diligent and attentive stockholder knew or had reason to know the facts alleged to constitute the wrong." *In re. USACAFES, L.P. Litig.*, 1993 WL 18769, at *3 (Del. Ch. Jan. 21, 1993); *accord Ruggerio*, 2005 WL 517967, at *5; *accord In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (Del. Ch. Jul 17, 1998) (same), *aff'd*, 725 A.2d 441 (Del. 1999); *In re Tyson Foods, Inc.*, 2007 WL 1018209, at *12 (Del. Ch. Feb. 6, 2007) (same).[3]

Fraudulent concealment, in contrast, "requires an affirmative act of concealment by a defendant – an 'actual artifice' that prevents a plaintiff from gaining knowledge of the facts or some misrepresentation that is intended to put the plaintiff off the trail of inquiry." *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5. Significantly, like self-dealing by a fiduciary, fraudulent concealment also only tolls the limitations period "until the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury." *Id.* at *6. This reflects the well-settled principle that while beneficiaries may be entitled to rely on their fiduciaries, "beneficiaries should not put on blinders." *Seidel v. Lee*, 954 F. Supp. 810, 817 (D. Del. 1996).

Norman cites *Robertson v. Seidman & Seidman*, 609 F.2d 583, 587 (2d Cir. 1979) for the proposition that "fraudulent concealment tolls the statute of limitations un (sic) favor of the defrauded party until such time as he ***actually knew*** of the fraudulent conduct of the opposing party." Plaintiff's answering Brief in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Response") at 31 (emphasis in original). What

---

[3] Norman suggests that actionable self-dealing by a fiduciary precludes invocation of a statute of limitations defense altogether. Plaintiff's Response at 26. As these cases show, however, this is clearly not true.

Norman fails to disclose is that *Robertson* represented the minority view at the time, is no longer the law of the Second Circuit, and has never been the law in this circuit. *See, e.g., Plain*, 645 F. Supp. at 902-03 (discussing the split among the circuits regarding whether actual knowledge is required, and concluding it is "the better view that is expressed by the majority of circuits in holding plaintiffs to a due diligence standard for either type of fraudulent concealment"); *Amfar Asphault Corp.*, 1986 WL 27582, at *5 n.9 (E.D.N.Y. Nov. 20, 1986) ("Subsequent Second Circuit decisions applying the doctrine of equitable tolling have not followed *Robertson*."); *Corcoran*, 202 F.3d at 543 (declining to follow *Robertson sub silencio*); *Fruehauf Trailer Corp. v. Terex Corp.*, 250 B.R. 168, 186 (D. Del. 2000) ("If there has been fraudulent concealment, then the statute of limitations is tolled until the plaintiff knew or **should have known** of the alleged wrong." (emphasis added; internal quotations and citations omitted)); *Hill v. Der*, 521 F. Supp. 1370, 1387 (D. Del. 1981) ("Under the federal doctrine of fraudulent concealment, the statute of limitations is tolled when the party injured by the fraud remains in ignorance of it, without any fault or want of diligence on his part. Once the plaintiff has actual knowledge of the fraud, however, or in the exercise of reasonable diligence **should have discovered the fraud**, the statute of limitations begins to run." (emphasis added)).

Thus, contrary to Norman's claim otherwise, " a more complete assessment of federal precedent on the issue of tolling" makes clear that actual discovery of the fraud is not required.[4]

---

[4] Even if "actual discovery" were required, federal law holds that "[a]ny fact that should excite his suspicion is the same as actual knowledge of his entire claim." *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir. 1982). "Indeed, the means of knowledge are the same thing in effect as knowledge itself." *Id.*

### C. Norman has failed to adequately plead actionable self-dealing by a fiduciary sufficient to invoke equitable tolling.

In any event, Norman has failed to adequately plead equitable tolling. "A complaint alleging equitable tolling [on the basis of self-dealing] must set forth: (1) a fiduciary relationship; (2) actionable or fraudulent self-dealing; and a (3) lack of inquiry notice." *Fruehauf Trailer Corp.*, 250 B.R. at 193. There is no allegation that Shorin or The Elkin Group ("TEG") engaged in actionable or fraudulent self-dealing. Of course, TEG has never been a fiduciary to Norman, and Norman has made no effort to show whether Shorin was a fiduciary to Norman at any of the times when he is alleged to have aided and abetted Elkin's alleged breach of fiduciary duties. In fact, there has not even been a showing – or even a claim – that Elkin knew what he was doing was wrong or that he wrongfully profited from his alleged self-dealing. The most that can be said is that Norman occasionally, in only the most conclusory fashion, baldly asserted "self-dealing." *See, e.g.*, Amended Complaint at 5 (asserting only in a heading: "Elkin's Self-Dealing During the FCC Phase II License Auction")); *see also Halpern v. Barran*, 313 A.2d 139, 143 (Del. Ch. 1973) ("These allegations may be fairly characterized as mere generalizations, anchored to no specific acts . . . .").

### D. Norman has also failed to adequately plead fraudulent concealment.

Norman has also not properly invoked fraudulent concealment. *See Conley v. First Jersey Sec., Inc.*, 543 F. Supp. 368, 374 (D. Del. 1982) (holding that fraudulent concealment must be affirmatively pled). "Where a plaintiff relies upon fraudulent misrepresentation to suspend operation of the statute, he is required . . . to plead with particularity the circumstances constituting fraud." *Halpern*, 313 A.2d at 143; *accord Campbell v. Upjohn Co.*, 676 F.2d 1122, 1126 (6th Cir. 1982) ("Under F.R.Civ.P. 9(b), the party alleging fraudulent concealment must plead the circumstances giving rise to it

9

with particularity."). "[M]ere use of the word 'fraud' or its equivalent is not a sufficiently particular statement of the circumstances relied upon." *Halpern*, 313 A.2d at 143. The allegations must detail the "specific artifice or misrepresentation by which it is claimed that defendants succeeded in concealing from plaintiffs the wrongs of which they complain." *Id.*

"Furthermore, . . . the continued failure to disclose the facts allegedly misrepresented in the first place [does not] relieve[] the plaintiff of his duty to undertake reasonable inquiry or toll[] the statute of limitations." *In re Integrated Resources Real Estate Ltd. P'ships Sec. Litig.*, 815 F. Supp. 620, 640 (S.D.N.Y. 1993). Moreover, the failure to respond to requests for information is "not the kind of obstructive conduct that would warrant estopping defendant to plead the statute of limitations." *Flight Attendants Against UAL Offset (FAAUO) v. Comm'r of Internal Revenue*, 165 F.3d 572, 577 (7th Cir. 1999). "Mere ignorance of the facts by a plaintiff, where there has been no such concealment, is no obstacle to operation of the [statute of limitations]." *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5. Finally, Norman has failed to plead or prove that he used diligence to protect his rights. *Campbell*, 676 F.2d at 1127 ("[A]n injured party has a positive duty to use diligence in discovering his cause of action within the limitations period.").

At most, all Norman has clamed is that Elkin remained silent throughout the years. *See, e.g.*, Amended Complaint at 8 ("This purported change in registration occurred after Auction No. 18 had commenced, without notice or approval of the Company's stockholders . . . ."); *id.* ("At some point . . . , Elkin resolved, either overtly or de facto, to sell substantially all of the Company's assets."). This, coupled with

Norman's ignorance, is insufficient as a matter of law to plead fraudulent concealment, much less prove it.

Ironically, the only allegation that even arguably begins to approach the sort of particularity required to plead fraudulent concealment involves Elkin's December 2002 letter to Norman's counsel, yet Norman has repeatedly conceded that the very same letter first revealed to him Defendants' alleged wrongdoing. *See, e.g.*, Norman's Response at at 28 ("He worked diligently to uncover the fraud that first became apparent to him through Elkin's December 3, 2002 letter."); *id.* at 32 ( "Under the facts and timeline set forth in the Statement of Facts, Norman did not know or have reason to know of the fraud and self-dealing until, at the earliest, Elkin's December 3, 2002 letter."); *id.* at 21 ("Norman obtained all the information and documents that substantiate his claims against the Defendants on December 3, 2002 or thereafter.").

It is inconceivable for the very letter that admittedly put Norman on notice of his claims to also serve as the only evidence of fraudulent concealment. Since fraudulent concealment only tolls the limitations period until the plaintiff knew or should have known of his claims, even if Elkin's letter constituted fraudulent concealment, it simultaneously put Norman on notice, and thus the letter itself fails to provide any relief from the statute of limitations.

Although there is uncontroverted evidence that Elkin revealed to Norman prior to September 2002 the substance of what was later communicated in writing on December 3, 2002, *see* Defendants' Memorandum of Law in Support of Their Motion for Summary

11

Judgment at 24, Norman's concession that he possessed actual knowledge of his claims by December 3, 2002, at the latest, is fatal to the remainder of his arguments.[5]

### IV. BY NO LATER THAN DECEMBER 2002, NORMAN POSSESSED ACTUAL KNOWLEDGE OF FACTS THAT GAVE RISE TO CLAIMS AGAINST DEFENDANTS.

Norman's final remaining argument in an effort to avoid Pennsylvania's statute of limitations, is that his Section 220 action tolled the running of limitations. Even if this were true – which it is not – Norman still brought this lawsuit too late based on Pennsylvania's two-year statute of limitations.

Norman filed his Section 220 Action on November 16, 2004. *See* Exhibit A. That is approximately 23 ½ months after the December 3, 2002 letter from Elkin. Final judgment in the Section 220 action was entered October 3, 2005. *See* Stipulated Order and Final Judgment, a true and correct copy of which is attached as Exhibit B. This lawsuit was not filed until December 3, 2005, two months after conclusion of the 220 action. By tacking the 23 ½ months Norman waited before filing his 220 action, and the two months he waited thereafter, Norman waited 25 ½ months in the aggregate before filing this lawsuit after the latest possible date upon which he acquired actual knowledge of his claims. His delay now renders those claims time-barred, as a matter of law, without regard to whether: (1) the 220 action tolled the statute of limitations, (2) Norman used appropriate diligence to ascertain his claims, (3) he should have know about his claims sooner, (4) he was on inquiry notice sooner, (5) all Defendants were both

---

[5] Norman's complaint that the December 3, 2002 letter from Elkin revealed sales proceeds of $479,708, as opposed to $487,049, or that he repaid himself $385,588 in shareholder loans, as opposed to $601,500, Plaintiff's Response at 17, is patently inadequate to undermine the overall level of notice provided by the letter. *See, e.g., In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *7 ("Inquiry notice does not . . . require plaintiff's awareness of all of the aspects of the alleged wrongful conduct."); *Ecke v. United States*, 1994 WL 782230, at *8 (D. Del. Mar. 1, 1994) ("The period begins to run when the injury is sustained, not when the full extent of the injury is known."); *accord Chrisco v. Shafran*, 525 F. Supp. 613, 616 (D. Del. 1981) (same).

12

fiduciaries and engaged in actionable self-dealing, and/or (6) whether Defendants fraudulently concealed their allegedly wrongful conduct.

V.     **THE FCC DOCUMENTS REFERRED TO IN DEFENDANTS' SUMMARY JUDGMENT BRIEF ARE PRECISELY THE SORT OF PUBLIC DOCUMENTS THAT CONSTITUTE NOTICE UNDER DELAWARE LAW.**

Norman's suggestion that his simple failure to read FCC documents that were undisputedly available to him should preclude this Court from finding these documents put Norman on notice as "matter of law" misapprehends the principles of constructive and inquiry notice.

In the case of *United States Cellular Investment Co. v. Bell Atlantic Mobile Systems, Inc.*, 677 A.2d 497 (Del. 1996) is directly on point and dispositive of the issue before this Court. In that case, a limited partner brought suit against a general partner for breach of the partnership agreement and its fiduciary duties for applying for FCC wireless licenses in its own name instead of the name, or for the benefit of, the partnership. *Id.* at 498. The Court of Chancery granted summary judgment for the defendant on the basis that the claims were time-barred. *Id.* at 501. Plaintiff appealed to the Delaware Supreme Court, which affirmed summary judgment. On appeal, the defendant argued that its actions before the FCC put the plaintiff on notice of its alleged breach. *Id.* at 500. The plaintiff argued its claims should be equitably tolled. *Id.* at 501-02. The Chancery Court had ruled, and the Delaware Supreme Court agreed, that the plaintiff "had a duty of reasonable inquiry." *Id.* at 502. Moreover, the court held that FCC public notices put the plaintiff on notice of its claims. *Id.* at 504.

The record before this Court is full of evidence proving that documents sufficient to place Norman on inquiry if not on actual notice were both publicly available and in

some instances, *actually* viewed by Norman. *See* Plaintiff's Response at 14 (admitting that the Phase II licenses won at Auction No. 18 were issued to TEG on March 22, 1999, which was known publicly through the FCC website); *see also* FCC 10/26/99 Radio Station Authorization (showing five Phase II licenses issued in TEG's name), attached to the Affidavit of Steven L. Caponi and submitted with Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment. Subsequent transfers of Phase II licenses from TEG to Repeater and Roamer were also undisputedly publicly available. *See, e.g.,* FCC 1/05/2000 Public Notice (showing assignments of licenses from TEG to Repeater Network Spectrum Aq., Inc.), attached to the Affidavit of Steven L. Caponi. Documents available through the FCC website, which Norman testified he frequently followed to ascertain what was going on with USM and the 220 MHz industry generally, Norman Depo. at 97, line 16 – pg. 98, line 12, constitute precisely the sort of public notice that the law holds puts a party on inquiry notice.

The holding and principles affirmed in *U.S. Cellular* are dispositive and compel the dismissal of Norman's claims.

VI. **ALTHOUGH DEFENDANTS' CONCEDE THEIR STATUE OF FRAUDS ARGUMENT, NORMAN'S CONTRACT CLAIMS ARE THE MOST CLEARLY TIME-BARRED.**

Defendants concede their statute of frauds argument because they have admitted there was an oral contract with Norman for co-ownership of USM. That oral contract nonetheless fails under Delaware's three-year statute of limitations because Norman has repeatedly admitted he first knew of Elkin's breach by 1994 or 1995, at the latest. *See, e.g.,* Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment at 28; Plaintiff's Response at 9 ("As of December 1994, Elkin failed to contribute the $750,000 he had agreed to contribute in exchange for his 75% interest.").

14

122138.00601/40168210v.1

## CONCLUSION

For these reasons, Defendants ask the Court to grant their motion for summary judgment in its entirety. Finally, Defendants ask for any and all other relief to which they may be entitled.

Dated:   April 10, 2007

BLANK ROME LLP

_____
Steven L. Caponi
Delaware Bar No. 3484
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

Mark A. Evetts
Law Offices of Mark A. Evetts
8502 Jackson Creek Bend Lane
Humble, Texas 77396
Telephone: (281) 458-6914
Facsimile: (281) 458-0326

*Attorneys for Defendants David W. Elkin, Richard M. Shorin, The Elkin Group, Inc., and Nominal Defendant US MobilComm, Inc.*