IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JEFFREY M. NORMAN, :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO. 06-005-JJF
:
DAVID W. ELKIN, RICHARD M. :
SHORIN and :
THE ELKIN GROUP, INC. :
:
    Defendants, :
:
  and :
:
US MOBILCOMM, INC. :
:
    Nominal Defendant. :

Sean J. Bellew, Esquire and David A. Felice, Esquire of COZEN O'CONNOR, Wilmington, Delaware.

Attorneys for Plaintiff.

Mark A. Evetts, Esquire of LAW OFFICES OF MARK A. EVETTS, Humble, Texas.
Steven L. Caponi, Esquire of BLANK ROME LLP, Wilmington, Delaware.

Attorneys for Defendants.

**MEMORANDUM OPINION**

Wilmington, Delaware
September 26, 2007

Farnan, District Judge

Pending before the Court is Defendants' Motion For Summary Judgment (D.I. 42). For the reasons discussed, the Motion will be denied.

I.  BACKGROUND

Plaintiff Jeffrey M. Norman filed this action in the Delaware Court of Chancery on December 2, 2005 asserting causes of action against Defendants in both their individual and corporate capacities for breach of contract, declaratory relief, usurpation of corporate opportunities, breaches of fiduciary duty, breach of duty of disclosure, conversion and misappropriation, fraudulent representation; aiding and abetting breaches of fiduciary duties, and unjust enrichment. On January 3, 2006, Defendants removed the action to this Court on the basis of diversity jurisdiction.

Plaintiff is a 25 percent stockholder of nominal Defendant US Mobilcomm, Inc. ("USM"). Plaintiff is a resident of Connecticut. USM is incorporated in Delaware with its principal place of business in Pennsylvania. Defendant David W. Elkin is a 75 percent stockholder, President, and sole director of USM. Elkin is a resident of Pennsylvania. Defendant Richard M. Shorin was an officer, controller, and Assistant Secretary of USM. Shorin is also a resident of Pennsylvania. Defendant The Elkin Group, Inc. ("TEG") is a corporation wholly-owned and controlled by Defendant Elkin with its incorporation and principal place of business in Pennsylvania.

Plaintiff and Defendant Elkin are the only two shareholders of USM, a closely-held corporation formed to participate in the wireless communications industry by acquiring 220 MHz licenses, constructing wireless communications systems, and marketing the service. At the time of formation, Plaintiff and Defendant Elkin agreed to fund the corporation with $1 million in capital contributions; 25 percent to be contributed by Plaintiff and 75 percent by Defendant Elkin, with ownership interest to be divided in proportion to their contributions. In addition, each shareholder agreed to contribute their time to the company. According to each party, the other shareholder failed to meet his initial capital contribution amount.

According to Plaintiff, he worked on behalf of the company until 1996 to negotiate and enter into management agreements with other 220 MHz license holders. Defendant Elkin was responsible for raising additional capital and seeking potential partners or acquirers. According to Elkin, responsibility for the company has largely remained with him since 1996. Elkin attempted for several years without success to obtain outside financing for the company, or alternatively, a sale or merger.

In 1998, the Federal Communications Commission ("FCC") announced it would auction "Phase II" 220 MHz licenses. USM was a holder of "Phase I" licenses. The auctioning of Phase II licenses affected the interests of Phase I license holders by potentially undermining the value of Phase I licenses. In order to protect the interests of Phase I license holders, the FCC

2

developed procedures by which Phase I licence holders were given an opportunity, upon meeting certain criteria, to participate in the Phase II auctions as qualified bidders.

Defendant Elkin sought to have USM participate in the Phase II auctions. However, USM lacked the capital to pay the fee to participate as a bidder. The parties' submission characterize quite differently how USM participated in the auctions and to whom the acquired Phase II licenses belonged. According to Elkin, he determined that the best way to protect USM's interests in the auctions was to have a friendly entity acquire any Phase II licenses that encroached on USM's Phase I licenses. Elkin accomplished this by using $200,000 of his own money, funnelled through his company, The Elkin Group ("TEG"), to pay USM's fee to participate in the auction. The FCC recognized USM, rather than TEG, as a qualified bidder for its Auction No. 18 on its public documents. USM was named on FCC public documents as a winning bidder for certain Phase II licenses. (D.I. 51-4, Ex. N). Later, however, Elkin amended the FCC registration to substitute TEG for USM as the named bidder. (D.I. 51-4, Ex. M). In his opening brief in support of his motion for summary judgment, Elkin characterized the Phase II licenses as "*his* newly acquired Phase II licenses." (D.I. 43 at 13)(emphasis added). After acquiring the Phase II licenses, Elkin sold them in combination with USM's Phase I licenses. Elkin contends that USM realized a

windfall from the bundled sales as a result of the benefit that he, through TEG, conferred by acquiring Phase II licenses.

Plaintiff, however, characterizes the Phase II licenses as assets belonging to USM because the FCC named USM as the winning bidder of Auction No. 18. Plaintiff contends that, at the time the winning bids were announced, he was unaware that Elkin had substituted TEG for USM as the applicant for bidding. According to Plaintiff, when Elkin sold USM's licenses, he did not notify Plaintiff in his capacity as a shareholder, hold an annual meeting, or make any disclosure communicating the sale. Plaintiff contends that the bundled sale of Phase I and II licenses was a sale of USM's assets. According to Plaintiff, USM received no compensation for the sale of Phase II licenses, and Elkin, through TEG, personally benefitted from the proceeds of the sale.

According to Elkin, the proceeds of the sale of USM's licenses were used to repay loans he had made to USM or as a partial reduction in his capital contribution to USM. Elkin bases his characterization of the proceeds as repayment of loans on a Shareholder Loan Agreement which he executed on behalf of himself as shareholder and on behalf of the company as President. (D.I. 51-2, Ex. F). The agreement was made effective as of September 1, 1995, although it was executed sometime later. The agreement provided that any and all funds provided by Elkin to or

on behalf of USM in excess of $420,000 would be provided as a loan and repaid by USM prior to any distributions. From the sales of USM's licenses, Elkin received approximately $601,500. According to deposition testimony of Defendant taken in this proceeding, USM is now insolvent. (D.I. 51-6, Ex. CC).

## II. PARTIES' CONTENTIONS

By their Motion, Defendants contend that summary judgment should be granted on all of Plaintiff's causes of action because they are barred by the statute of limitations.[1] Specifically, Defendants contend that the Pennsylvania two-year statute of limitations governs to bar all of Plaintiff's claims. Defendants further contend that no tolling doctrine applies because Plaintiff was on notice of his claims.

In response, Plaintiff contends that Defendants cannot assert a statute of limitations defense because Defendants are corporate fiduciaries who personally benefitted from the alleged wrongdoing. Plaintiff further contends that, even if the statute of limitations is applicable, it was tolled by the pending § 220 action and under the doctrines of equitable tolling and fraudulent concealment.

---

[1] Defendants originally contended that Plaintiff's breach of contract claim was also barred by the statute of frauds. However, in their reply brief (D.I. 52), Defendants conceded the statute of frauds argument and acknowledged the existence of an oral contract. Thus, the Court will not discuss the statute of frauds issue.

5

### III. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catreet, 477 U.S. 317, 323 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of his case for which he bears the burden of proof, the moving party is entitled to judgment as a matter of law. Id. at 322. Moreover, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a

denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## IV. DISCUSSION

### A. Applicable Statute Of Limitations

The parties disagree as to which state's law controls the applicable statute of limitations. Because this Court's jurisdiction is based on diversity of citizenship, the Court must apply the choice of law rules of Delaware, the forum state. Klaxon co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941).

Plaintiff contends the Delaware internal affairs doctrine warrants application of the Delaware statute of limitations. The Delaware internal affairs doctrine provides that the law of the state of incorporation determines issues of internal corporate affairs such as relationships between the corporation and its officers, directors, and shareholders as well as elections, shareholder meetings, and mergers. Dunleavy v. Dugan, No. 88-57, 1990 U.S. Dist. LEXIS 4609 at *10-11 (D. Del. Apr. 20, 1990) (citing McDermott Inc. v. Lewis, 531 A.2d 206, 214-17 (Del. 1987). Under this doctrine, the law of the state of incorporation applies to the substantive issues raised. See Dunleavy, 1990 U.S. Dist. LEXIS at *11 ("As the corporation in this case is incorporated in Maryland, and this case involves internal corporate affairs, the court will apply Maryland law to

7

the substantive issues raised."). The issue of statute of limitations is a procedural issue, not a substantive issue for conflict of law purposes. David B. Lilly Co. v. Fisher, 799 F.Supp. 1562, 1568 (D. Del. 1992). Thus, the Court concludes that the doctrine is not applicable to determining the relevant statute of limitations.

Defendants contend that Delaware's borrowing statute applies to invoke application of Pennsylvania's statute of limitations because the conduct underlying the causes of action arose in Pennsylvania. Delaware's "borrowing statute" provides, in relevant part,

> [w]here a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of this State, the time limited by the law of this State shall apply.

10 Del. C. § 8121. The parties do not dispute that the causes of action arose outside of Delaware. Thus, it is necessary to determine which is shorter, the applicable Pennsylvania or Delaware statute of limitations. Delaware's three-year limitations period applies to all of Plaintiff's claims. 10 Del. C. § 8106. However, in Pennsylvania, a two-year limitations period applies to all but Plaintiff's breach of contract claim,

8

to which a four-year limitations period applies. See 42 Pa. C. S. 5524. Thus, in light of the borrowing statute, the Court concludes that Pennsylvania's two-year limitations period applies to all of Plaintiff's claims but the breach of contract claim. With respect to the breach of contract claim, the Court concludes that the Delaware three-year limitations period applies.

Construing the evidence in the light most favorable to Plaintiff, the Court concludes that, without the application of a tolling doctrine, Plaintiff's claims would be time-barred by the statute of limitations because the causes of action accrued more than two years prior to the filing of this action, or three years for the breach of contract claim. However, Plaintiff contends that several grounds for tolling are met by the circumstances in this case. Thus, because Plaintiff's claims did not necessarily begin to run on the date which the causes of action accrued, the Court must determine whether the statute may be tolled.

B.   Whether A Tolling Principle Applies

State law determines what circumstances permit the limitations period to be tolled. Vernau v. Vic's Mkt., Inc., 896 F.2d 43, 45 (3d. Cir. 1990). As a threshold matter, Plaintiff contends that Defendants cannot assert the statute of limitations defense because Elkin is a corporate fiduciary who personally benefitted from the alleged wrongdoing. Plaintiff relies on the exception set forth by the Delaware Supreme Court in Bovay v. Byllesby, 38 A.2d 808 (Del. 1944). Under the exception, as summarized later by the Court of Chancery, "in extraordinary

cases which involve, as a minimum, allegations of fraudulent self-dealing, the benefit of the statute will be denied to those corporate officers and directors who profited personally from their misconduct." Halpern v. Barran, 313 A.2d 139, 142 (Del. Ch. 1973). The state court cases following Bovay have restricted the exception, and the trend in the case law is to apply the Bovay exception as a basis on which to toll the statute of limitations where actionable self-dealing is alleged. Bokat v. Getty Oil Co., 262 A.2d 246 (Del. 1970); Kahn v. Seaboard Corp., 625 A.2d 269 (Del. Ch. 1993); Burtch v. Wendel, 259 F.Supp.2d 824, 2001 U.S. Dist. LEXIS 5925 at *12-14 (D. Del. 2001). Thus, the Court understands the rule, as it stands today, to allow the statute of limitations to be tolled in derivative actions alleging wrongful self-dealing by a corporate fiduciary until the shareholder knew or had reason to know of the facts constituting the alleged wrong.[2]

In his Complaint, Plaintiff makes several allegations that Defendant Elkin engaged in wrongful self-dealing. Specifically, Plaintiff alleges that Defendant Elkin took advantage of USM's status as an incumbent license holder and a winning bidder for Phase II licenses to substitute TEG for USM, sell the Phase II

---

[2] The Bovay exception has been applied to accountants who knowingly joined a fiduciary in an enterprise by which the fiduciary benefited at the expense of the corporation. Laventhol v. Tuckman, 372 A.2d 168, 171 (Del. 1976); Cantor v. Perelman, 414 F.3d 430, 441 (3d Cir. 2005). Thus, the Court concludes that the same tolling principle applies to claims asserted against Defendant Shorin.

licenses bundled with USM's Phase I licenses for a higher value, and distribute the proceeds to himself either individually or through TEG. Additionally, Plaintiff alleges that Elkin, as majority shareholder and President of USM, unilaterally recharacterized his capital contributions as loans via the Shareholder Loan Agreement. The Court concludes that, at a minimum, Plaintiff has alleged that Defendant personally profited from self-dealing at the expense of the company, sufficient to invoke the application of the Bovay tolling principle. Thus, the statute of limitations began to run at the time Plaintiff knew or had reason to know of the facts constituting the alleged wrong.

Plaintiff also contends that the statute of limitations is tolled because Defendant fraudulently concealed his wrongdoing. However, like tolling for wrongful self-dealing, fraudulent concealment tolls the statute until the time the injury is discovered, or should have been discovered through reasonable diligence.

The determination of when a reasonable person knew or should've known of the facts constituting the claim is a fact-intensive inquiry. Cantor v. Perelman, 414 F.3d 430, 441 (3d Cir. 2005). Plaintiff contends that the earliest he knew of Elkin's use of TEG to acquire Phase II licenses and Elkin's characterization of the proceeds of the sale of USM's licenses as repayment of loans was on December 3, 2002, when Plaintiff received a letter from Elkin. In the letter, Defendant Elkin

stated that USM sold licenses "it owned." (D.I. 51-6, Ex. V). However, the letter included Purchase and Sale Agreements which revealed that TEG was the winner of a Phase II license being transferred to a purchaser and that Elkin had received proceeds of the license sales as repayment for shareholder loans. (D.I. 51-5, Ex. O). Plaintiff contends that the full extent of Elkin's use of TEG, the sale of USM's assets, and alleged misrepresentations was still being discovered as late as November 2004, when Plaintiff brought a books and records petition under 85 U.S.C. § 220 in the Court of Chancery. In response, Defendant contends that Plaintiff was on inquiry notice before receiving the December 2003 letter because Plaintiff had access to public FCC documents and company tax documents and financial information. The Court concludes that, in the circumstances in this case, the date on which Plaintiff knew or should have known the facts constituting his claims is a material dispute of fact. Accordingly, the Court concludes that summary judgment is not appropriate at this juncture, and therefore, will deny Defendants' Motion.

**V.   CONCLUSION**

For the reasons discussed, Defendants' Motion For Summary Judgment (D.I. 42) will be denied. An appropriate Order will be entered.