IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY M. NORMAN, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 06-005-JJF |
| DAVID W. ELKIN, RICHARD M. SHORIN and THE ELKIN GROUP, INC. | : | Jury Trial Demanded |
| Defendants, | : | |
| and | : | |
| US MOBILCOMM, INC., | : | |
| Nominal Defendant. | : | |

**DEFENDANTS' SUBMISSION IN COMPLIANCE WITH
COURT ORDER DATED AUGUST 29, 2007**

**INTRODUCTION**

On August 22, 2007, the Court held a pre-trial conference in the above-captioned matter, during which the Court concluded that the parties' dispute related primarily to: (i) a disagreement over the amount and characterization of financial contributions made by each party to US Mobilcomm; and (ii) the appropriateness and characterization of distributions by US Mobilcomm for the benefit of the parties. Believing the parties had not sufficiently addressed these issues in their pre-trial submissions, the Court directed the parties to submit certain documents, including financial records evidencing the flow of funds into and out of US Mobilcomm, to the Court for review.

122138.00601/40171356v.1

On August 29, 2007, the Court issued an Order directing the parties to submit to the Court the following information:

1) Documents and information evidencing the parties' capital contributions;

2) Documents and information evidencing any and all financial contributions made by Mr. Elkin to US Mobilcomm beyond his initial capital contribution;

3) All US Mobilcomm governance documents; and

4) Copies of US Mobilcomm's tax returns and Schedule K-1's for Mr. Elkin and Mr. Norman.

This memorandum and accompanying binder of exhibits (the "Exhibit Binder"), filed contemporaneously with this submission, comprise Defendants' response to the Court's Order.

I. **Capital Contributions By The Parties**

As evidenced by Exhibit A, in 1994, the parties agreed that the equity ownership of US Mobilcomm would be held 75% by Mr. Elkin and 25% by Mr. Norman. It was further agreed that all required equity contributions would be made in a manner consistent with the parties' ownership interests and that the parties would contribute their services to assist with the success of US Mobilcomm. Following discussions with a potential third party equity investor, it was subsequently determined that the parties would make capital contributions totaling $1 million dollars to US Mobilcomm. The parties exchanged draft agreements but never formalized their arrangement with an integrated document. Exhibit B to this submission reflects the parties' actual financial contributions to and withdraws from US Mobilcomm. This information can be summarized as follows:

|                                          | **Jeffrey Norman** | **David Elkin** |
|------------------------------------------|--------------------|-----------------|
| Total Direct Contributions:              | $196,000           | $ 920,550       |
| Total Approved Expenses Incurred:        | 9,719              | 151,755         |
| Total Funding:                           | $205,719           | $1,072,305      |
| Total Distributions 1994-99:             | $ 66,319           | $ 0             |
| Total Distributions 2000 -2007:          | $ 0                | 615,026         |
| Total Funding Net Distributions 1997-2007: | $139,400         | $457,279        |

Supporting documents reflecting the existence and characterization of the parties' financial dealings with US Mobilcomm are contained in the Exhibit Binder. This financial information is interrelated and can be grouped into five primary categories. These categories are:

1. A schedule of contributions and distributions for each party - Exhibit B.

2. Supporting detail for Mr. Norman's contributions and distributions - Exhibit C.

3. Supporting detail for Mr. Elkin's contributions and distributions - Exhibit D.

4. A print-out of US Mobilcomm's Quickbooks account detail for its money market account, evidencing, from inception, all funds flowing into and out of US Mobilcomm's money market account - Exhibit E.

5. A print-out of US Mobilcomm's Quickbooks check registry, evidencing, from inception, all funds flowing into and out of US Mobilcomm's checking account - Exhibit F.

The balance of this submission is a brief explanation designed to assist the Court in understanding how the five (5) categories of Exhibits inter-relate with one another and support the figures reflected on Exhibit B.

122138.00601/40171356v.1

**Exhibit B** - This document reflects payments by the parties to US Mobilcomm, as well as payments from US Mobilcomm to or on behalf of the parties. The first page of Exhibit B reflects an overview of payments to and from the parties for the years 1994-2007. Page 2 of Exhibit B consists of three (3) boxes. The box in the upper left hand corner is the transaction detail for the October 1994 deduction from Plaintiff's capital account of $13,600 and the December 1994 deduction of $10,500, identified on page 1 as C3 and C4. The box in the upper right hand corner summarizes approved expense reimbursements made to Plaintiff that were not deducted from his capital account. The box in the bottom left hand corner summarizes, by year, approved expenses incurred by David Elkin for the benefit of US Mobilcomm. Pages three (3) through six (6) of Exhibit B represent the transaction detail, on a yearly basis, for the David Elkin expenses summarized on page 2 of Exhibit B. Prior to the sale of certain assets between 1999 and 2001, Mr. Elkin was not reimbursed for expenses he incurred on behalf of US Mobilcomm.

Shortly after the inception of US Mobilcomm, defendant Richard Shorin created Exhibit B to track the parties' capital accounts contributions and reductions. The version being submitted to the Court has been updated to reflect the current state of the capital accounts and modified to include references to supporting detail. Specifically, the Court will note that the letters "C" or "D", followed by a number, are associated with many entries on Exhibit B. The letter/number references correspond to the Exhibits contained in the Exhibit Binder. For example, the entry on Exhibit B for the November 5, 1995 capital contribution by David Elkin in the amount of $62,450, is followed by the notation "D4." This notation signifies that the supporting detail for the November 5 capital contribution can be found behind tab D4 in the Exhibit Binder.

122138.00601/40171356v.1

Prior iterations of Exhibit B, representing snapshots in time, were updated periodically by Mr. Shorin and provided to the parties beginning in 1994. Several prior versions of Exhibit B can be found at Exhibit H.[1] The Court should note that below the capital calculation table at the top of certain pages at Exhibit H are the entries "Credit – Expenses PD," followed by an entry for Mr. Elkin and Mr. Norman. This table was created to track out of pocket expenses incurred on behalf of US Mobilcomm that would be credited towards the parties' capital account once appropriate detail was received and the expenditure approved by Mr. Elkin. For example, the November 8, 1994 shareholder contribution sheet reflects that Mr. Elkin had actual/approved expenditures of $48,881 and that Mr. Norman had estimated expenditures of $50,000. Mr. Norman did not subsequently provide detail for his estimated expenses and, as a result, they were not approved or credited towards his capital account.[2] As reflected on page two of Exhibit B, however, Mr. Norman was reimbursed for properly documented expenses.

**Exhibits C and D** - As noted in the preceding paragraph, Defendants have provided in Exhibits "C" and "D" supporting detail for the entries reflected on Exhibit B. Each of the numbered tabs behind Exhibits C and D correspond to the designations reflected on Exhibit B. The first page behind each numbered tab indicates where that specific transaction entry may be found in the US Mobilcomm Quickbooks account registry for either the general account or money market account. The subsequent pages in each Exhibit provide additional supporting documentation from third party sources, such as bank or brokerage account statements, wire transfer requests, etc.

---

[1] Documents contained at Exhibit H bear bates numbers reflecting that these documents were received by Mr. Norman in the normal course and subsequently produced by him in discovery.

[2] Due to his failure to provide supporting detail, the value of Mr. Norman's estimated expenditures was periodically reduced over time and eventually eliminated from the US Mobilcomm financial records as a contingent capital contribution. An example of the reduction can be seen by reference to the February through June 1995 shareholder contribution sheets at Exhibit H.

5

**Exhibits E and F** - Both Exhibits E and F are print-outs from the Quickbooks accounting software program used by US Mobilcomm to track its finances. The transaction detail for US Mobilcomm's checking account is located behind Exhibit F, while the transaction detail for the money market account is located behind Exhibit E. Consistent with Defendants' efforts to assist the Court in navigating the detail being provided, Exhibits E and F contain "C" and "D" designations that correspond to the designations found on Exhibit B. For example, a June 2, 1994 capital contribution by Plaintiff in the amount of $196,000 is identified on Exhibit B by the notation "C2." On page one (1) of Exhibit F there is a corresponding "C2" designation showing these funds were deposited in US Mobilcomm's checking account on June 2, 1994.

Bank statements for both the checking and money market accounts are included as supporting detail behind the individual transactions included in Exhibits C and D. Unfortunately, US Mobilcomm does not have bank statements for the year 1994. These records were lost or discarded during the normal course of business. US Mobilcomm has recently attempted to obtain copies of the statements from its bank. The bank, however, stated that the statements are unavailable because such records are discarded after 7 years.

**Capital Reductions To Mr. Norman's Account** – The Court will note that there are reductions to the capital account of Mr. Norman identified in Exhibit B as entries "C-3" through "C-23." The reductions reflect an arrangement whereby Mr. Norman agreed that his capital account would be reduced to reflect cash withdrawals from US Mobilcomm and the payment of rent by US Mobilcomm for Mr. Norman's New York City office. Documents supporting this arrangement and the reductions to Mr. Norman's capital account are located at Exhibit G. Although the reductions for cash withdrawals are self-explanatory and supported by the detail found behind Exhibits C and G, the treatment of rent reductions requires a brief explanation.

122138.00601/40171356v.1

In 1994, Mr. Norman wanted an office in New York City and personally entered into a lease with the law firm of Baker and McKenzie. It was agreed that US Mobilcomm would, for a limited time contribute $1,500 towards the monthly rent of $2,500, with the amount over $1,500 being debited from Mr. Norman's capital account. Although not a signatory to the lease, each month US Mobilcomm issued a rent check to Baker and McKenzie in the amount of $2,500, resulting in an excess payment attributed to Mr. Norman of $1,000. Mr. Norman, however, had a sub-tenant named Craig Vickers, who paid US Mobilcomm $500 per month towards Mr. Norman's rent obligations. By way of example, page two (2) of Exhibit F reflects a payment to US Mobilcomm from Mr. Vickers in the amount of $500 on 9/23/1994.

As a result of Mr. Vickers' payments, the net monthly amount paid by US Mobilcomm for Mr. Norman's New York office was reduced from $1,000 to $500. Beginning in early 1995, the net excess payments were reduced to $250 due to an alteration in the rent/reimbursement structure.

**US Mobilcomm Management, Inc.** – At the beginning of their business venture, the parties formed two affiliated entities. One was called US Mobilcomm and the other US Mobilcomm Management Corp., Inc. ("USMM"). In general terms, US Mobilcomm was the operating entity that owned FCC licenses, and sold and maintained equipment. In contrast, USMM was intended to manage radio systems for customers in exchange for a management fee. In an effort to reduce corporate overhead, in 1996, the operations of both entities were consolidated into what is now US Mobilcomm. The ownership structure for USMM was identical to that of US Mobilcomm.

In addition to the two accounts noted above, between 1994 and 1996, USMM maintained a money market account into which the parties periodically deposited capital contributions. On a

regular basis, funds in the interest bearing USMM money market account were transferred into US Mobilcomm's non-interest bearing checking account. These transactions are identified on Exhibit F, the check registry, under the "Payee" heading as a "transfer to/from Money Market A Due Affiliate." An example of this designation can be found on page 6 of Exhibit F dated 3/13/1995. US Mobilcomm has been unable to locate bank statements for the USMM money market account and, for the reasons already explained, cannot obtain such records from its bank. Third party support for the capital deposits made into the USMM account can be found in the detail behind Exhibits "C" and "D", such as brokerage account statements and wire transfer confirmations.

## II.  Payments By Mr. Elkin In Excess Of Capital Contributions

Exhibit B reflects all contributions made by the parties into US Mobilcomm, whether capital, additional contributions or the payment of expenses on behalf of US Mobilcomm. As noted above, the parties' agreement required Mr. Elkin to make capital contributions into US Mobilcomm totaling three times the capital contributions of Mr. Norman. Exhibit B and the supporting detail in Exhibits C and D, show this threshold was met by the end of 1995. From this point through the present, all of Mr. Elkin's contributions and his payment of expenses on behalf of US Mobilcomm were in excess of his capital contribution requirements. Direct deposits into US Mobilcomm accounts are reflected on page 1 of Exhibit B and in Exhibit D. Payments made by Mr. Elkin on behalf of US Mobilcomm are reflected on pages two (2) through six (6) of Exhibit B.[3]

---

[3] Although Mr. Elkin assumed full responsibility for managing the affairs of US Mobilcomm, following Mr. Norman's departure from 1996 through the present he has not been compensated for his efforts. Associated compensation charges are not reflected on US Mobilcomm's financial records. Mr. Elkin has, however, asserted as an affirmative defense the right to set-off against any award achieved by Norman, an amount equal to reasonably compensate Mr. Elkin for his years of service to US Mobilcomm.

Mr. Elkin's contributions in excess of three times Mr. Norman's capital contributions have been treated as loans to US Mobilcomm. This treatment was intended to preserve the agreed upon ownership structure of 75% for Mr. Elkin and 25% for Mr. Norman. Although a contemporaneous document formalizing the shareholder loans was not created, Mr. Elkin did execute a shareholder loan agreement in 2001-2002. *See* Exhibit K. As reflected in Exhibit L at page 2, however, the decision to treat excess contributions as loans: (i) was in fact made in the spring of 1997; and (ii) was designed to avoid significantly diluting Mr. Norman's equity position in the face of a potential sale of the company for $6 million. Had the sale been consummated, Mr. Elkin's decision to treat certain contributions as loans, rather than additional equity, would have resulted in Mr. Norman realizing an additional profit of $400,000 to $500,000.

US Mobilcomm has not been able to locate a final version of Exhibit L, which was drafted by Mr. Elkin and contains the contemporaneous handwritten notes of Defendant Rick Shorin. From 2000 through 2002, Mr. Elkin was repaid a significant portion of the funds contributed in excess of his capital following the periodic sale of US Mobilcomm assets.

### III. US Mobilcomm Governance Documents

US Mobilcomm's certificate of incorporation is included behind Exhibit I. Also included in Exhibit I is a document titled "US Mobilcomm, Inc. By-Laws." It is Mr. Elkin's belief that these By-Laws were properly enacted and are enforceable. Mr. Norman believes the By-Laws included in Exhibit I were not enacted and are not enforceable.

### IV. Schedule K-1's For US Mobilcomm

Included as Exhibit J, are copies of US Mobilcomm's federal tax returns, including the Schedule K-1's for Mr. Elkin and Mr. Norman, for the years 1994 through 2006.

|  |  |
|---|---|
|  | **BLANK ROME LLP** |
| Dated: October 9, 2007 | By: _/s/ Steven L. Caponi_<br>Steven L. Caponi (DE I.D. 3484)<br>Christine S. Azar (DE I.D. 4170)<br>1201 N. Market Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 425-6400<br>Facsimile: (302) 425-6464<br>_Attorneys for Defendants_ |

122138.00601/40171356v.1