# EXHIBIT G

# US MOBILCOMM, INC.

AN AFFILIATE OF THE ELKIN GROUP, INC.

NEW YORK:
1330 AVENUE OF THE AMERICAS        TELEPHONE (212) 841-1091
FOURTH FLOOR                       FAX (212) 841-1024
NEW YORK, NY 10019

PHILADELPHIA:
805 BRYN MAWR AVENUE               TELEPHONE (215) 525-2372
NEWTON SQUARE                      FAX (215) 525-6761
PHILADELPHIA, PA 19073

## MEMORANDUM

To:  Jeffrey M. Norman
From:  David W. Elkin

October 4, 1994

### Re:  Payment of Expenses by US MobilComm, Inc. ("USM"); Enclosed Check

The following sets forth the expenses which USM will be responsible for with respect to your New York office, and certain other matters.

**1. RENT:**  For the time being USM will continue to contribute $1,500 per month towards the rent of the office at 805 Third Ave., New York, NY.  At such time as the amount of the rent of the office proportionately borne by you and Tom Fiorita shall equal less than $1,500 per month, the monthly contribution amount borne by USM shall be reduced accordingly.

It is understood at this time that USM will not be shown as the tenant on the lease for the premises and shall be responsible for no costs other than its allocable share of the rent as set forth above and other direct costs approved by me, as President of USM.

Finally, it is understood that USM has made no commitment to maintain an office in New York on other than a current and temporary basis, provided, however, that in the event that USM should decide to no longer maintain an office in New York it will provide you with 60 days prior written notice of its intention to no longer maintain such office.

**2. AUTHORITY TO INCUR OBLIGATIONS ON BEHALF OF USM:**  Any expenses incurred on behalf of USM, other than normal, recurring, direct expenses such as reasonable telephone, overnight mail, and allocable office supplies shall be subject to the prior approval of David W. Elkin, as President of USM.  Prior to forwarding invoices for expenses such as telephone, overnight mail and similar items for payment by USM, you shall be responsible for reviewing such items and allocating the portion of such amounts which apply to USM and the portion of such amounts which are personal.

**3. PAYMENTS OF OTHER COSTS BY USM:**  All payments made by USM towards your New York office, other than the rental contribution of $1,500 per month as set forth above,  including but not limited to moving expenses and security deposits, shall be treated as a reduction of your capital contribution to USM.  Any other expenses paid by USM, other than those authorized pursuant to paragraph 2 above, shall be treated as a reduction of your capital contribution to USM.

As of this date, USM agrees, pursuant to this paragraph, to pay additional rent payments, in the amount of $1,000 per month ("Excess Rental"), a one time security deposit in the amount of $2,500, and a one time tenant upgrade expense in the amount of $2,100.  In future months, USM shall pay Excess Rental only, subject to paragraph 1 above, provided that any such Excess Rental payments shall be treated as a reduction of capital, provided that rental contributions made by Craig Vickers or others will offset any such reduction.

There is no agreement for USM to pay expenses or reimburse expenditures other than as set forth in this memorandum.

**4. CURRENT CONTRIBUTED CAPITAL.** As of this date, you have contributed cash in the amount of $196,000 to USM. In addition to this amount, you and I have personally borne certain expenses on behalf of USM which will be treated as additions to our contributed capital. There has been no determination as of this date which expenses which you and I have personally borne will be treated as qualifying additional capital contributions to USM.

**5. ENCLOSED CHECKS:**
Enclosed you will find the following checks:

Security Deposit to Baker McKenzie------- $2,500
Tenant Upgrades to Global Media --------- $1,600
Bishop Contracting--------------------------$ 500
September Rent to Baker McKenzie-------$2,500
October Rent to Baker McKenzie-----------$2,500

Upon depositing the enclosed checks you shall be deemed to have consented to the contents of this memorandum, in its entirety.

Sincerely,

David W. Elkin
President

cc: Richard M. Shorin
    Controller

2

PLTF1310

# EXHIBIT H

15-Aug-94          JEFFDAVE

US MOBILCOMM INC
SHAREHOLDER CONTRIBUTIONS
MONEY MARKET INTEREST EARNED/ALLOCATED

| | SHAREHOLDER CONTRIBUTION | | TOTAL INTEREST EARNED | JEFF | DAVE |
|---|---|---|---|---|---|
| | JEFF | DAVE | | | |
| 02-Jun-94 | 196,000.00 | | | | |
| 30-Jun-94 | | | 140.40 | 140.40 | |
| 26-Jul-94 | | 52,500.00 | | | |
| 29-Jul-94 | | | 381.57 | 373.23 | 8.34 |
| | 196,000.00 | 52,500.00 | 521.97 | 513.63 | 8.34 |

PLTF2338

Nov. 8 '94 16:51     0000 US MOBILCOMM, INC.        TEL 610-525-6761        P. 1

```
08-Nov-94          US MOBILCOMM INC
JEFFDAVE           SHAREHOLDER EQUITY CONTRIBUTIONS
                   MONEY MARKET INTEREST EARNED/ALLOCATED
```

Jeff
FYI
Rich

| | SHAREHOLDER CONTRIBUTIONS AND (REDUCTIONS) | | TOTAL INTEREST | --INTEREST ALLOCATION-- | | |
|---|---|---|---|---|---|---|
| | JEFF | DAVE | EARNED-CS | JEFF | DAVE | |
| 31-May-94 | | 100.00 | | | | |
| 02-Jun-94 | 196,000.00 | | | | | |
| 30-Jun-94 | | | 140.40 | 140.40 | | |
| 26-Jul-94 | | 52,500.00 | | | | |
| 29-Jul-94 | | | 381.57 | 373.23 | 8.34 | |
| 31-Aug-94 | | | 410.00 | 323.38 | 86.62 | |
| 30-Sep-94 | | | 378.79 | 298.76 | 80.03 | |
| 14-Oct-94 | | 20,000.00 | | | | |
| 30-Oct-94 | (13,600.00) | | | 0.00 | 0.00 | |
| 30-Oct-94 | | | | 0.00 | 0.00 | |
| 04-Nov-94 | | 62,450.00 | | 0.00 | 0.00 | |
| 04-Nov-94 | | 55,000.00 | | 0.00 | 0.00 | |
| TOTALS | 182,400.00 | 190,050.00 | 1,310.76 | 1,135.77 | 174.99 | |

```
TO BE CONTRIBUTED          481,050.00  DAVE
CREDIT- EXPENSES PD  50,000.00          JEFF ESTIMATE, NEED DETAIL
CREDIT- EXPENSES PD          48,881.00  DAVE ACTUAL (DIRECT OUT OF POCKET EXPNESES ONLY)
                     ---------------------------
SUBTOTAL- DAVE/JEFF 232,400.00 699,981.00
TO BE CONTRIBUTED           60,000.00  GLEN CASSEL (TO BE REDUCED FOR OUT OF EXPENSES, INCL 40%
                     ---------------------------          OF GP'S SALARY BEGINNING SEPT 1994)
1  .L OWNERS EQUITY                     982,381.00
                                        ===========

                                        SOURCES AND USES OF FUNDS:


JEFF NORMAN -CAPITAL REDUCTIONS:        SOURCES:

SEPT RENT-NET               500.00      DAVE PAID IN          190,050.00
OCT RENT- NET              500.00       JEFF PAID IN          182,400.00
SECURITY DEPOSIT         2,500.00       DAVE EXP PAID DIRECTLY 50,000.00
BISHOP CONTRACTING         500.00       JEFF EXP PAID DIRECTLY 48,881.00
GLOBAL MEDIA             1,600.00       INTEREST INCOME-CS      1,310.76
NOV RENT                   500.00       CYRUS DAM SYSTEM       57,000.00
WIRE TRANSFER 11/3       7,500.00       ACCOUNTS PAYABLE INCR  57,628.44
                     -------------                          -------------
                       13,600.00                                        587,270.20
                     =============
                                        USES:

                                        OPERATING EXPENSES    173,079.58
                                        CYRUS DAM SYSTEM       42,902.11
                                        JEAN WARREN SYSTEM     41,700.00
                                        KEN POND SYSTEM        36,024.24
                                        JOE GILBERT SYSTEM     43,438.56
                                        OPTION PAYMENTS- B1'S  34,100.00
                                                              -------------
                                                                        371,244.49
                                                                        -------------
                                        ENDING CASH                     216,025.71
                                                                        ===========
```

**PLTF2336**

01-Nov-94                    JEFFDAVE

US MOBILCOMM INC
SHAREHOLDER EQUITY CONTRIBUTIONS
MONEY MARKET INTEREST EARNED/ALLOCATED

| | SHAREHOLDER CONTRIBUTIO | | TOTAL INTEREST EARNED-CS | | |
| | JEFF | DAVE | | JEFF | DAVE |
|---|---|---|---|---|---|
| 31-May-94 | | 100.00 | | | |
| 02-Jun-94 | 196,000.00 | | | | |
| 30-Jun-94 | | | 140.40 | 140.40 | |
| 26-Jul-94 | | 52,500.00 | | | |
| 29-Jul-94 | | | 381.57 | 373.23 | 8.34 |
| 31-Aug-94 | | | 410.00 | 323.38 | 86.62 |
| 30-Sep-94 | | | 378.79 | 298.76 | 80.03 |
| 31-Aug-94 | | (150.00) | | | |
| 14-Oct-94 | | 20,000.00 | | | |
| 30-Oct-94 | (6,600.00) | | | 0.00 | 0.00 |
| 30-Oct-94 | | | | 0.00 | 0.00 |
| 29-Nov-94 | | | | 0.00 | 0.00 |
| | 189,400.00 | 72,450.00 | 1,310.76 | 1,135.77 | 174.99 |

GRAND TOTAL JEFF + DAVE        261,850.00

NY OFFICE- AS AGREED:

| | |
|---|---|
| SEPT RENT-NET | 500.00 |
| OCT RENT- NET | 500.00 |
| SEC DEPOSIT | 2,500.00 |
| BISHOP CONTRACTING | 500.00 |
| GLOBAL MEDIA | 1,600.00 |
| NOV RENT | 1,000.00 |
| | 6,600.00 |

PH0NE BILL- PERSONAL PORTION
AUGUST BILL                    150.00

PLTF2337

14-Dec-94          US MOBILCOMM INC
JEFFDAVE           SHAREHOLDER EQUITY CONTRIBUTIONS
                   MONEY MARKET INTEREST EARNED/ALLOCATED

| | SHAREHOLDER CONTRIBUTION AND (REDUCTIONS) | | TOTAL INTEREST | --INTEREST ALLOCATION-- | |
| | JEFF | DAVE | EARNED-CS | JEFF | DAVE |
|---|---|---|---|---|---|
| 31-May-94 | | 100.00 | | | |
| 02-Jun-94 | 196,000.00 | | | | |
| 30-Jun-94 | | | 140.40 | 140.40 | |
| 26-Jul-94 | | 52,500.00 | | | |
| 29-Jul-94 | | | 381.57 | 373.23 | 8.34 |
| 31-Aug-94 | | | 410.00 | 323.38 | 86.62 |
| 30-Sep-94 | | | 378.79 | 298.76 | 80.03 |
| 14-Oct-94 | | 20,000.00 | | | |
| 30-Oct-94 | (13,600.00) | | | 0.00 | 0.00 |
| 30-Oct-94 | | | 374.33 | 267.76 | 106.57 |
| 04-Nov-94 | | 62,450.00 | | 0.00 | 0.00 |
| 04-Nov-94 | | 55,000.00 | | 0.00 | 0.00 |
| 29-Nov-94 | | | 408.02 | 199.82 | 208.20 |
| 12-Dec-94 | (10,500.00) | | | | |
| | | | | | |
| TOTALS | 171,900.00 | 190,050.00 | 2,093.11 | 1,603.35 | 489.76 |

TO BE CONTRIBUTED                    461,050.00    DAVE
CREDIT- EXPENSES P      50,000.00                  JEFF ESTIMATE, NEED DETAIL
CREDIT- EXPENSES PD                   48,881.00    DAVE ACTUAL (DIRECT OUT OF POCKET EXPNESES ONLY)

SUBTOTAL- DAVE/JEFF    221,900.00     699,981.00
TO BE CONTRIBUTED                     50,000.00    GLEN CASSEL (TO BE REDUCED FOR OUT OF EXPENSES, INCL 40%
                                                   OF GP'S SALARY BEGINNING SEPT 1994)
TOTAL OWNERS EQUITY                              971,881.00

                                                   SOURCES AND USES OF FUNDS:

JEFF NORMAN -CAPITAL REDUCTIONS:                   SOURCES:

| SEPT RENT-NET | 500.00 | DAVE PAID IN | 190,050.00 |
| OCT RENT- NET | 500.00 | JEFF PAID IN | 171,900.00 |
| SECURITY DEPOSIT | 2,500.00 | DAVE EXP PAID DIRECTLY | 48,881.00 |
| BISHOP CONTRACTING | 500.00 | JEFF EXP PAID DIRECTLY | 50,000.00 |
| GLOBAL MEDIA | 1,600.00 | INTEREST INCOME-CS | 2,093.11 |
| NOV RENT | 500.00 | CYRUS DAM SYSTEM | 57,000.00 |
| WIRE TRANSFER 11/3 | 7,500.00 | JOE GILBERT SYSTEM | 48,837.88 |
| | | ACCOUNTS PAYABLE INCR | 15,024.45 |
| SEPT-NOV | 13,600.00 | | |

                                                                              583,786.44
                                                   USES:

DEC RENT                500.00
WIRE TRANSFER 12/12   10,000.00                    OPERATING EXPENSES         182,588.83
                                                   CYRUS DAM SYSTEM            45,970.06
DEC                   10,500.00                    JEAN WARREN SYSTEM         41,700.00
                                                   KEN POND SYSTEM            36,439.39
                                                   JOE GILBERT SYSTEM         43,438.56
                                                   OPTION PAYMENTS- B1'S      47,600.00
                                                   GREG BREETZ SYSTEM          9,783.00

                                                                              407,519.84

                                                   ENDING CASH               176,266.60

PLTF2344

DRAFT

10-Jan-95      US MOBILCOMM INC
JEFFDAVE       SHAREHOLDER EQUITY CONTRIBUTIONS
               MONEY MARKET INTEREST EARNED/ALLOCATED

NOT Final yet

| | SHAREHOLDER CONTRIBUTION AND (REDUCTIONS) | | TOTAL INTEREST | –INTEREST ALLOCATION– | |
|---|---|---|---|---|---|
| | JEFF | DAVE | EARNED-CS | JEFF | DAVE |
| 31-May-94 | | 100.00 | | | |
| 02-Jun-94 | 196,000.00 | | | | |
| 30-Jun-94 | | | 140.40 | 140.40 | |
| 26-Jul-94 | | 52,500.00 | | | |
| 29-Jul-94 | | | 381.57 | 373.23 | 8.34 |
| 31-Aug-94 | | | 410.00 | 323.38 | 86.62 |
| 30-Sep-94 | | | 378.79 | 298.76 | 80.03 |
| 14-Oct-94 | | 20,000.00 | | | |
| 30-Oct-94 | (13,600.00) | | | 0.00 | 0.00 |
| 30-Oct-94 | | | 374.33 | 267.76 | 106.57 |
| 04-Nov-94 | | 62,450.00 | | 0.00 | 0.00 |
| 04-Nov-94 | | 55,000.00 | | 0.00 | 0.00 |
| 29-Nov-94 | | | 408.02 | 199.82 | 208.20 |
| 12-Dec-94 | (10,500.00) | | | | |
| 29-Dec-94 | 0.00 | 115,100.00 | 24.50 | 8.83 | 15.67 |
| TOTALS | 171,900.00 | 305,150.00 | 2,117.61 | 1,612.18 | 505.43 |

| | | | |
|---|---|---|---|
| TO BE CONTRIBUTED | | 345,950.00 | DAVE |
| CREDIT- EXPENSES P | 50,000.00 | | JEFF ESTIMATE (NEED DETAIL |
| CREDIT- EXPENSES PD | | 48,881.00 | DAVE ACTUAL (DIRECT OUT OF POCKET EXPNESES ONLY) |
| SUBTOTAL- DAVE/JEFF | 221,900.00 | 699,981.00 | |
| TO BE CONTRIBUTED | | 50,000.00 | GLEN CASSEL (TO BE REDUCED FOR OUT OF EXPENSES, INCL 40% OF GP'S SALARY BEGINNING SEPT 1994) |
| TOTAL OWNERS EQUITY | | 971,881.00 | |

SOURCES AND USES OF FUNDS:

JEFF NORMAN -CAPITAL REDUCTIONS:

SOURCES:

| | | | |
|---|---|---|---|
| SEPT RENT-NET | 500.00 | DAVE PAID IN | 305,150.00 |
| OCT RENT- NET | 500.00 | JEFF PAID IN | 171,900.00 |
| SECURITY DEPOSIT | 2,500.00 | DAVE EXP PAID DIRECTLY | 48,881.00 |
| BISHOP CONTRACTING | 500.00 | JEFF EXP PAID DIRECTLY | 50,000.00 |
| GLOBAL MEDIA | 1,600.00 | INTEREST INCOME-CS | 2,117.61 |
| NOV RENT | 500.00 | CYRUS DAM SYSTEM | 57,000.00 |
| WIRE TRANSFER 11/3 | 7,500.00 | JOE GILBERT SYSTEM | 48,837.88 |
| | | ACCOUNTS PAYABLE INCR | 0.00 |
| SEPT-NOV | 13,600.00 | | |
| | | | 683,886.49 |
| | | USES: | |
| DEC RENT | 500.00 | OPERATING EXPENSES | 182,588.83 |
| WIRE TRANSFER 12/12 | 10,000.00 | CYRUS DAM SYSTEM | 45,970.06 |
| | | JEAN WARREN SYSTEM | 41,700.00 |
| DEC | 10,500.00 | KEN POND SYSTEM | 36,439.39 |
| | | JOE GILBERT SYSTEM | 43,438.56 |
| | | GREG BREETZ SYSTEM | 42,963.42 |
| | | OPTION PAYMENTS- B1'S | 31,100.00 |
| | | JEAN WARREN LICENSE | 17,500.00 |
| | | | 441,700.26 |
| | | ENDING CASH | 242,186.23 |

16-Feb-95       US MOBILCOMM INC & US MOBILCOMM MANAGEMENT CORP
JEFFDAVE      SHAREHOLDER EQUITY CONTRIBUTIONS
MONEY MARKET INTEREST EARNED/ALLOCATED

| | SHAREHOLDER CONTRIBUTION AND (REDUCTIONS) | | TOTAL INTEREST EARNED-CS | --INTEREST ALLOCATION-- | |
|---|---|---|---|---|---|
| | JEFF | DAVE | | JEFF | DAVE |
| 31-May-94 | | 100.00 | | | |
| 02-Jun-94 | 196,000.00 | | | | |
| 30-Jun-94 | | | 140.40 | 140.40 | |
| 26-Jul-94 | | 52,500.00 | | | |
| 29-Jul-94 | | | 381.57 | 373.23 | 8.34 |
| 31-Aug-94 | | | 410.00 | 323.38 | 86.62 |
| 30-Sep-94 | | | 378.79 | 298.76 | 80.03 |
| 14-Oct-94 | | 20,000.00 | | | |
| 30-Oct-94 | (13,600.00) | | | 0.00 | 0.00 |
| 30-Oct-94 | | | 374.33 | 267.76 | 106.57 |
| 04-Nov-94 | | 62,450.00 | | 0.00 | 0.00 |
| 04-Nov-94 | | 55,000.00 | | 0.00 | 0.00 |
| 29-Nov-94 | | | 408.02 | 199.82 | 208.20 |
| 12-Dec-94 | (10,500.00) | | | | |
| 29-Dec-94 | 0.00 | 115,100.00 | 24.50 | 8.83 | 15.67 |
| 30-Dec-94 | (1,000.00) | | 381.74 | 137.04 | 244.70 |
| 30-Jan-95 | 0.00 | | 665.33 | 238.85 | 426.48 |
| TOTALS | 170,900.00 | 305,150.00 | 3,164.68 | 1,988.07 | 1,176.61 |

| | | | | | |
|---|---|---|---|---|---|
| CREDIT- EXPENSES P | 30,000.00 | | | JEFF ESTIMATE, NEED DETAIL | |
| CREDIT- EXPENSES PD | | 51,549.14 | | DAVID ACTUAL (DIRECT OUT OF POCKET EXPNESES ONL | |
| | | | | | |
| SUBTOTAL- DAVE/JEFF | 200,900.00 | 356,699.14 | | | |
| TO BE CONTRIBUTED | | | 50,000.00 | GLEN CASSEL (TO BE REDUCED FOR OUT OF POCKET E INCL 40% OF GP'S SALARY BEGINNING SEPT 1994) | |
| | | 345,950.00 | | DAVID | |
| TOTAL OWNERS EQUITY | | | 953,549.14 | | |

SOURCES AND USES OF FUNDS:

| JEFF NORMAN -CAPITAL REDUCTIONS: | | SOURCES: | |
|---|---|---|---|
| | | | |
| SEPT RENT-NET | 500.00 | DAVE PAID IN | 305,150.00 |
| OCT RENT- NET | 500.00 | JEFF PAID IN | 170,900.00 |
| SECURITY DEPOSIT | 2,500.00 | DAVE EXP PAID DIRECTLY | 51,549.14 |
| BISHOP CONTRACTING | 500.00 | JEFF EXP PAID DIRECTLY | 30,000.00 |
| GLOBAL MEDIA | 1,600.00 | INTEREST INCOME-CS | 3,164.68 |
| NOV RENT | 500.00 | CYRUS DAM SYSTEM | 57,000.00 |
| WIRE TRANSFER 11/3 | 7,500.00 | JOE GILBERT SYSTEM | 48,837.88 |
| | | ACCOUNTS PAYABLE INCR | 0.00 |
| SEPT-NOV | 13,600.00 | | |
| | | | 666,601.70 |
| | | USES: | |
| DEC RENT | 500.00 | OPERATING EXPENSES | 182,588.83 |
| WIRE TRANSFER 12/12 | 10,000.00 | CYRUS DAM SYSTEM | 45,970.06 |
| | | JEAN WARREN SYSTEM | 41,700.00 |
| DEC | 10,500.00 | KEN POND SYSTEM | 36,439.39 |
| | | JOE GILBERT SYSTEM | 43,438.56 |
| JAN RENT (VICKERS CHECK REC IN JA | 1,000.00 | GREG BREETZ SYSTEM | 42,963.42 |
| | | OPTION PAYMENTS/B1'S | 31,100.00 |
| FEB RENT | 0.00 | JEAN WARREN LICENSE | 17,500.00 |
| | | | 441,700.26 |
| | | ENDING CASH | 224,901.44 |

PLTF2343

17-Apr-95          US MOBILCOMM INC & US MOBILCOM
JEFFDAVE           SHAREHOLDER EQUITY CONTRIBUTI
                   MONEY MARKET INTEREST EARNED.

Jeff—
F Y I

| | SHAREHOLDER CONTRIBUTION AND (REDUCTIONS) | | TOTAL INTEREST | −INT |
|---|---|---|---|---|
| | JEFF | DAVE | EARNED-CS | J |
| 31-May-94 | | 100.00 | | |
| 02-Jun-94 | 196,000.00 | | | |
| 30-Jun-94 | | | 140.40 | |
| 26-Jul-94 | | 52,500.00 | | |
| 29-Jul-94 | | | 381.57 | |
| 31-Aug-94 | | | 410.00 | |
| 30-Sep-94 | | | 378.79 | |
| 14-Oct-94 | | 20,000.00 | | |
| 30-Oct-94 | (13,600.00) | | | |
| 31-Oct-94 | | | 374.33 | |
| 05-Nov-94 | | 62,450.00 | | |
| 05-Nov-94 | | 55,000.00 | | 0.00 | 0.00 |
| 30-Nov-94 | | | 408.02 | 199.82 | 208.20 |
| 12-Dec-94 | (10,500.00) | | | |
| 29-Dec-94 | 0.00 | 115,100.00 | 24.50 | 8.83 | 15.67 |
| 31-Dec-94 | (1,000.00) | | 381.74 | 137.04 | 244.70 |
| 31-Jan-95 | 0.00 | | 665.33 | 238.85 | 426.48 |
| 28-Feb-95 | (500.00) | | 502.96 | 180.22 | 322.74 |
| 31-Mar-95 | (5,500.00) | | 728.31 | 255.50 | 472.81 |
| 30-Apr-95 | 0.00 | | 381.74 | 133.92 | 247.82 |
| TOTALS | 164,900.00 | 305,150.00 | 4,395.95 | 2,423.80 | 1,972.15 |

| | | | | | |
|---|---|---|---|---|---|
| CREDIT- EXPENSES P | 30,000.00 | | | JEFF ESTIMATE, NEED DETAIL | |
| CREDIT- EXPENSES PD | | 51,549.14 | | DAVID ACTUAL (DIRECT OUT OF POCKET EXPNESES ONL | |
| SUBTOTAL- DAVE/JEFF | 194,900.00 | 356,699.14 | | | |
| | | 345,950.00 | | DAVID TO CONTRIBUTE | |
| TOTAL OWNERS EQUITY | | | 897,549.14 | | |

JEFF NORMAN -CAPITAL REDUCTIONS:

SOURCES AND USES OF FUNDS:

SOURCES:

| | | |
|---|---|---|
| SEPT RENT-NET | 500.00 | |
| OCT RENT- NET | 500.00 | |
| SECURITY DEPOSIT | 2,500.00 | |
| BISHOP CONTRACTING | 500.00 | |
| GLOBAL MEDIA | 1,600.00 | |
| NOV RENT | 500.00 | |
| WIRE TRANSFER 11/3 | 7,500.00 | |
| SEPT-NOV | 13,600.00 | |

| | |
|---|---|
| DAVE PAID IN | 305,150.00 |
| JEFF PAID IN | 164,900.00 |
| DAVE EXP PAID DIRECTLY | 51,549.14 |
| JEFF EXP PAID DIRECTLY | 30,000.00 |
| INTEREST INCOME-CS | 4,395.95 |
| CYRUS DAM SYSTEM | 57,000.00 |
| JOE GILBERT SYSTEM | 48,837.88 |
| ACCOUNTS PAYABLE INCR | 0.00 |

USES:
OPERATING EXPENSES

| | | |
|---|---|---|
| DEC RENT | 500.00 | |
| WIRE TRANSFER 12/12 | 10,000.00 | |
| DEC | 10,500.00 | |
| JAN RENT (VICKERS CHECK REC IN JA | 1,000.00 | |

| | |
|---|---|
| CYRUS DAM SYSTEM | 45,970.06 |
| JEAN WARREN SYSTEM | 41,700.00 |
| KEN POND SYSTEM | 36,439.39 |
| JOE GILBERT SYSTEM | 43,438.56 |
| GREG BREETZ SYSTEM | 42,963.42 |
| OPTION PAYMENTS- B1'S | 31,100.00 |
| JEAN WARREN LICENSE | 17,500.00 |

ENDING CASH

PLTF2342

15-May-95    US MOBILCOMM INC & US MOBILCOMM MANAGEMENT CORP
JEFFDAVE    SHAREHOLDER EQUITY CONTRIBUTIONS
MONEY MARKET INTEREST EARNED/ALLOCATED

| | SHAREHOLDER CONTRIBUTION AND (REDUCTIONS) | | TOTAL INTEREST | --INTEREST ALLOCATION-- | |
|---|---|---|---|---|---|
| | JEFF | DAVE | EARNED-CS | JEFF | DAVE |
| 31-May-94 | | 100.00 | | | |
| 02-Jun-94 | 196,000.00 | | | | |
| 30-Jun-94 | | | 140.40 | 140.40 | |
| 26-Jul-94 | | 52,500.00 | | | |
| 29-Jul-94 | | | 381.57 | 373.23 | 8.34 |
| 31-Aug-94 | | | 410.00 | 323.38 | 86.62 |
| 30-Sep-94 | | | 378.79 | 298.76 | 80.03 |
| 14-Oct-94 | | 20,000.00 | | | |
| 30-Oct-94 | (13,600.00) | | | 0.00 | 0.00 |
| 31-Oct-94 | | | 374.33 | 267.76 | 106.57 |
| 05-Nov-94 | | 62,450.00 | | 0.00 | 0.00 |
| 05-Nov-94 | | 55,000.00 | | 0.00 | 0.00 |
| 30-Nov-94 | | | 408.02 | 199.82 | 208.20 |
| 12-Dec-94 | (10,500.00) | | | | |
| 29-Dec-94 | 0.00 | 115,100.00 | 24.50 | 8.83 | 15.67 |
| 31-Dec-94 | (1,000.00) | | 357.24 | 128.25 | 228.99 |
| 31-Jan-95 | 0.00 | | 665.33 | 238.85 | 426.48 |
| 28-Feb-95 | (500.00) | | 800.15 | 286.71 | 513.44 |
| 31-Mar-95 | (5,500.00) | | 728.31 | 255.50 | 472.81 |
| 30-Apr-95 | (250.00) | | 440.18 | 154.27 | 285.91 |
| TOTALS | 164,650.00 | 305,150.00 | 4,668.64 | 2,521.49 | 2,147.15 |

CREDIT- EXPENSES P     30,000.00                      JEFF ESTIMATE, NEED DETAIL
CREDIT- EXPENSES PD              51,549.14            DAVID ACTUAL (DIRECT OUT OF POCKET EXPNESES ONL

SUBTOTAL- DAVE/JEFF     194,650.00     356,699.14

                                       345,950.00            DAVID TO CONTRIBUTE

TOTAL OWNERS EQUITY  Contribution              897,299.14

                                                      SOURCES AND USES OF FUNDS:

JEFF NORMAN -CAPITAL REDUCTIONS:                      SOURCES:

SEPT RENT-NET                      500.00             DAVE PAID IN                305,150.00
OCT RENT- NET                      500.00             JEFF PAID IN                164,650.00
SECURITY DEPOSIT                 2,500.00             DAVE EXP PAID DIRECTLY       51,549.14
BISHOP CONTRACTING                 500.00             JEFF EXP PAID DIRECTLY       30,000.00
GLOBAL MEDIA                     1,600.00             INTEREST INCOME-CS            4,668.64
NOV RENT                           500.00             CYRUS DAM SYSTEM             57,000.00
WIRE TRANSFER 11/3               7,500.00             JOE GILBERT SYSTEM           48,837.88
                                                      ACCOUNTS PAYABLE INCR            0.00
SEPT-NOV                        13,600.00

                                                      USES:
DEC RENT                           500.00             OPERATING EXPENSES
WIRE TRANSFER 12/12             10,000.00             CYRUS DAM SYSTEM             45,970.06
                                                      JEAN WARREN SYSTEM          41,700.00
DEC                             10,500.00             KEN POND SYSTEM             36,439.39
                                                      JOE GILBERT SYSTEM          43,438.56
JAN RENT (VICKERS CHECK REC IN JA   1,000.00          GREG BREETZ SYSTEM          42,963.42
                                                      OPTION PAYMENTS- B1'S        31,100.00
                                                      JEAN WARREN LICENSE          17,500.00

                                                      ENDING CASH

PLTF2341

09-Jun-95
JEFFDAVE

US MOBILCOMM INC & US MOBILCOMM MAI
SHAREHOLDER EQUITY CONTRIBUTIONS
MONEY MARKET INTEREST EARNED/ALLOC

*Jeff —*

*FYT*

*Rich*

| | SHAREHOLDER CONTRIBUTION AND (REDUCTIONS) | | TOTAL INTEREST | --INTEREST | |
|---|---|---|---|---|---|
| | JEFF | DAVE | EARNED-CS | JEFF | |
| 31-May-94 | | 100.00 | | | |
| 02-Jun-94 | 196,000.00 | | | | |
| 30-Jun-94 | | | 140.40 | 140. | |
| 26-Jul-94 | | 52,500.00 | | | |
| 29-Jul-94 | | | 381.57 | 373. | |
| 31-Aug-94 | | | 410.00 | 323. | |
| 30-Sep-94 | | | 378.79 | 298. | |
| 14-Oct-94 | | 20,000.00 | | | |
| 30-Oct-94 | (13,600.00) | | | 0. | |
| 31-Oct-94 | | | 374.33 | 267. | |
| 05-Nov-94 | | 62,450.00 | | 0. | |
| 05-Nov-94 | | 55,000.00 | | 0. | |
| 30-Nov-94 | | | 408.02 | 199.82 | 208.20 |
| 12-Dec-94 | (10,500.00) | | | | |
| 29-Dec-94 | 0.00 | 115,100.00 | 24.50 | 8.83 | 15.67 |
| 31-Dec-94 | (1,000.00) | | 357.24 | 128.25 | 228.99 |
| 31-Jan-95 | 0.00 | | 665.33 | 238.85 | 426.48 |
| 28-Feb-95 | (500.00) | | 800.15 | 286.71 | 513.44 |
| 31-Mar-95 | (5,500.00) | | 728.31 | 255.50 | 472.81 |
| 30-Apr-95 | (250.00) | | 440.18 | 154.12 | 286.06 |
| 31-May-95 | (250.00) | | 348.89 | 122.15 | 226.74 |
| TOTALS | 164,400.00 | 305,150.00 | 4,668.64 | 2,521.49 | 2,147.15 |

| | | | |
|---|---|---|---|
| CREDIT- EXPENSES P | 30,000.00 | | JEFF ESTIMATE, NEED DETAIL |
| CREDIT- EXPENSES PD | | 51,549.14 | DAVID ACTUAL (DIRECT OUT OF POCKET EXPNESES ONL |
| SUBTOTAL- DAVE/JEFF | 194,400.00 | 356,699.14 | |
| | | 345,950.00 | DAVID TO CONTRIBUTE |

TOTAL OWNERS EQUITY          897,049.14


JEFF NORMAN -CAPITAL REDUCTIONS:

| | |
|---|---|
| SEPT RENT-NET | 500.00 |
| OCT RENT- NET | 500.00 |
| SECURITY DEPOSIT | 2,500.00 |
| BISHOP CONTRACTING | 500.00 |
| GLOBAL MEDIA | 1,600.00 |
| NOV RENT | 500.00 |
| WIRE TRANSFER 11/3 | 7,500.00 |
| SEPT-NOV | 13,600.00 |
| DEC RENT | 500.00 |
| WIRE TRANSFER 12/12 | 10,000.00 |
| DEC | 10,500.00 |
| JAN RENT (VICKERS CHECK REC IN JA | 1,000.00 |

**PLTF2340**

# EXHIBIT I

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 04/04/1994
944055466 – 2391361

## CERTIFICATE OF INCORPORATION

### OF

### US MOBILCOMM MANAGEMENT CORP.

1.    The name of the corporation is US MobilComm Management Corp. (the "Corporation").

2.    The registered office of the Corporation in the State of Delaware is to be located at 1013 Centre Road, in the City of Wilmington, in the County of New Castle. The registered agent at this address is Corporation Service Company.

3.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

4.    The total number of shares of stock which the Corporation shall have the authority to issue is 1,000 shares of Common Stock, each of which shall have $0.01 par value.

5.    The name and mailing address of the incorporator is Susan L. Nannelli, Cohen, Shapiro, Polisher, Shiekman and Cohen, 12 South 12th Street, Philadelphia, Pennsylvania 19107.

6.    The Corporation shall have perpetual existence.

7.    A director of the Corporation shall not be personally liable to the Corporation or to its stockholders for monetary damages for breach of fiduciary duty as a director except (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under Section 174 of the General Corporation Law of the State of Delaware; or (iv) for any transaction from which the director derived an improper personal benefit. No amendment to or repeal of this Section 7 shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment.

8.    The directors of the Corporation shall have the power to make and to alter or amend the By-Laws.

IN WITNESS WHEREOF, the undersigned, being the incorporator hereinbefore named, has executed, signed and acknowledged this Certificate of Incorporation this 31st day of March, 1994.

Susan L. Nannelli, Incorporator

F:\FS1\039\3001\DOCS\INCORP2.CRT
3/31/94 16:02

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 09:00 AM 12/05/1996*
*960355945 - 2391361*

## AGREEMENT AND PLAN OF MERGER

This Agreement and Plan of Merger is dated and approved as of _July 1,_____, 1996, by and between US MobilComm, Inc., a corporation formed under the laws of the State of Delaware ("Merger Co.") and US MobilComm Management Corp., a corporation formed under the laws of the State of Delaware ("MobilComm Management").

1. Merger Co. shall be merged with and into MobilComm Management (the "Merger") pursuant to Section 251 of the Delaware General Corporation Law, as amended ("DGCL"), and the separate existence of Merger Co. shall cease. Upon the effective date of the Merger, MobilComm Management shall be the surviving corporation (the "Surviving Corporation"), which shall continue to exist and be governed by the laws of the State of Delaware under the name of US MobilComm, Inc.

2. The Certificate of Incorporation of the Surviving Corporation is to be amended and changed by reason of the Merger by striking out Article 1 thereof, relating to the name, and by substituting in lieu thereof the following Article 1:

1. The name of the corporation is US MobilComm, Inc.

3. The by-laws of the Surviving Corporation as in effect immediately prior to the Merger shall be the by-laws of said Surviving Corporation, and the by-laws shall continue in full force and effect until changed, altered or amended as therein provided and in the manner prescribed by the provisions of the DGCL.

4. The directors and officers of the Surviving Corporation in office immediately prior to the Merger shall be the directors and the officers of said Surviving Corporation, all of whom shall hold their directorships and offices until the election and qualification of their respective successors or until the election and qualification of their respective successors or until their tenure is otherwise terminated in accordance with the by-laws of the Surviving Corporation and the DGCL.

5. Each issued share of Merger Co. immediately prior to the Merger shall, at the time of the Merger, be converted into $.001. The issued shares of the Surviving Corporation shall not be converted or exchanged in any manner.

6. Merger Co. and the Surviving Corporation hereby stipulate that they will cause to be executed and filed and/or recorded any document or documents prescribed by the laws of the State of Delaware and that they will cause to be performed all necessary acts therein and elsewhere to effectuate the Merger.

7. Any officer of Merger Co. and any officer of the Surviving Corporation are hereby authorized to execute this Agreement and Plan of Merger of said corporations,

respectively, in conformity with the provisions of the DGCL; and the Board of Directors and the proper officers of each of Merger Co. and the Surviving Corporation are hereby authorized, empowered and directed to do any and all acts and things, and to make, execute, deliver, file and/or record any and all instruments, papers and documents which shall be or become necessary, proper, or convenient to carry out or put into effect any of the provisions of this Agreement and Plan of Merger or the Merger herein provided for.

       8.     Notwithstanding anything to the contrary contained herein, (i) this Agreement and Plan of Merger and the Merger provided for herein may be terminated and abandoned at any time prior to the effective date of the Merger by the consent of the Board of Directors of each of Merger Co. and the Surviving Corporation, and (ii) the Board of Directors of each of Merger Co. and the Surviving Corporation may amend this Agreement and Plan of Merger at any time prior to the effective date pursuant to Section 251(d) of the DGCL.

       IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have executed this Agreement and Plan of Merger effective as of the date first above written.

US MOBILCOMM, INC.

By:

Name: _David W. Elkin_  David W. Elkin

Title: _President_  President

US MOBILCOMM MANAGEMENT, INC.

By:

Name: _David W. Elkin_  David W. Elkin

Title: _President_  President

## CERTIFICATE OF THE ASSISTANT SECRETARY
### OF
### US MOBILCOMM, INC.

I, Richard M. Shorin, the Assistant Secretary of US MobilComm, Inc., a Delaware corporation (the "Corporation"), hereby certify that the Agreement and Plan of Merger to which this certificate is attached, prior to having been duly signed on behalf of the Corporation by an authorized officer, was duly approved and adopted by the consent of the majority stockholder of the Corporation dated as of ___July 1___, 1996 and filed with the minutes of the proceedings of the stockholders of the Corporation.

WITNESS my hand this _1_ day of __July__, 1996.

_____
Richard M. Shorin, Assistant Secretary

PHTRANS:141623_1.WP5

## CERTIFICATE OF THE ASSISTANT SECRETARY
## OF
## US MOBILCOMM MANAGEMENT CORP.

I, Richard M. Shorin, the Assistant Secretary of US MobilComm Management Corp., a Delaware corporation (the "Corporation"), hereby certify that the Agreement and Plan of Merger to which this certificate is attached, prior to having been duly signed on behalf of the Corporation by an authorized officer, was duly approved and adopted by the consent of the majority stockholder of the Corporation dated as of ___July 1___, 1996 and filed with the minutes of the proceedings of the stockholders of the Corporation.

WITNESS my hand this _1_ day of ___July___, 1996.

_____
Richard M. Shorin, Assistant Secretary

PHTRANS:141616_1.WP5

## US MOBILCOMM, INC.

### BY-LAWS

---

### ARTICLE I. Offices.

1.1    Registered Office. The registered office of the Corporation in the State of Delaware shall be located in the City of Wilmington, County of New Castle and the Agent in charge thereof shall be Corporation Service Company. The Corporation may also have offices at such other places within or without the State of Delaware as the Board of Directors may from time to time appoint or as the business of the Corporation may require.

1.2    Principal Office. The principal office of the Corporation need not be identical with the registered office, and may be changed from time to time as the Board of Directors may determine.

### ARTICLE II. Stockholders.

2.1    Annual Meeting. The annual meeting of the Stockholders shall be held on such date and at such time during the calendar year as the Board of Directors may determine. If the day fixed for the annual meeting shall be a legal holiday in the State of Delaware, such meeting shall be held on the next succeeding business day. If the annual meeting has not been held during a calendar year, any Stockholder may call such meeting by following the procedure set forth in Section 2.2 hereof.

At the annual meeting, the Stockholders shall elect Directors for the ensuing year and may transact such other business as may properly come before the meeting.

2.2    Special Meetings. Special meetings of the Stockholders may be called at any time by the President, or by the Board of Directors, or by the Stockholders entitled to cast at least one-fifth (115) of the votes which all Stockholders are entitled to cast at the particular meeting. Upon written request of any person or persons who have duly called a special meeting, the Secretary shall fix the date of the meeting to be held not more than sixty (60) days after receipt of the request and give due notice thereof to the Stockholders entitled to vote thereat. If the Secretary shall neglect or refuse to fix such date or give such notice, the person or persons calling the meeting may do so.

2.3    Place of Meeting. The Board of Directors may designate any place, either within or without the State of Delaware, as the place of meeting for any annual or special meeting of the Stockholders. If no designation is made by the Board of Directors, the place of meeting shall be at the registered office of the Corporation in the State of Delaware.



EXHIBIT

USM-0261

2.4 · Notice of Meeting. Written notice shall, unless otherwise provided by statute, be given to Stockholders entitled to vote at the meeting who are Stockholders as of the record date as provided in Section 2.6 hereof, not less than ten (10) nor more than sixty (60) days before the date of the meeting, either personally or by sending a copy thereof through the mail, or by telegram, charges prepaid, to the address of the Stockholder appearing on the books of the Corporation, or supplied by the Stockholder to the Corporation for the purpose of notice. Such notice shall state the place, date and hour of the meeting. When required by these By-Laws or by statute such notice shall also state the general nature of the business to be transacted.

2.5 Sufficiency of Notice. Any notice required hereunder shall be deemed to have been given to the person entitled thereto (a) if sent by mail, when deposited in the United States mail, post prepaid, or (b) when lodged with a telegraph office for transmission with charges prepaid, or (c) when delivered personally.

Whenever notice is required to be given, a waiver thereof in writing signed by the person or persons entitled to such notice, whether signed before or after the time stated, shall be deemed equivalent to the giving of such notice. Attendance of a person at any meeting, either in person or by proxy, shall constitute a waiver of notice of such meeting, except where a person attends a meeting for the express and stated purpose of objecting to the transaction of any business because the meeting was not lawfully called or convened.

2.6 Record Date. The Board of Directors may fix in advance a date as the record date for the determination of Stockholders entitled to notice of, or to vote at, any meeting of Stockholders or Stockholders entitled to receive payment of any dividend or distribution, or in order to make a determination of Stockholders for any other proper purpose, such date in any case to be not more than fifty (50) days and, in case of a meeting of Stockholders, not less than ten (10) days, prior to the date for which such determination of Stockholders is necessary or proper.

If no record date is fixed:

(a) The record date for the determination of Stockholders entitled to receive notice of, or to vote at, a meeting of Stockholders, shall be the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.

(b) The record date for determining Stockholders entitled to express consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent is expressed.

(c) The record date for determining Stockholders for any other purpose shall be the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

USM-0262

A determination of Stockholders of record entitled to notice of or to vote at a meeting of Stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

2.7    Voting List.  The Secretary of the Corporation or the officer or agent having charge of the transfer book for shares of the Corporation shall make and certify, at least ten (10) days before each meeting of Stockholders, a complete list of the Stockholders entitled to vote at the meeting or any adjournment thereof, arranged in alphabetical order, with the address of each Stockholder and the number of shares of each class registered in his name.  The list shall be kept on file for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held and shall be subject to inspection by any Stockholder for any purpose germane to the meeting at any time during usual business hours, and shall also be produced and kept open at the time and place of the meeting, and shall be subject to the inspection of any Stockholder during the whole time of the meeting.  The original stock ledger transfer book shall be prima facie evidence as to who are the Stockholders entitled to examine such list or stock ledger or transfer books, or to vote, in person or by proxy, at any meeting of the Stockholders.

2.8    Quorum.  Except as otherwise required by Law, the presence of Stockholders, in person or by proxy, entitled to cast at least a majority of the votes which all Common Stockholders (plus such other Stockholders who may from time to time be entitled to vote with the holders of Common Shares) are entitled to cast shall constitute a quorum. With respect to the consideration of any particular matter as to which the Stockholders of any class or series shall be entitled to cast a vote separate from the vote of the Common Stockholders, the presence of Stockholders, in person or by proxy, entitled to cast at least a majority of the votes which all such class or series of Stockholders are entitled to cast on such particular matter shall constitute a quorum of such class or series of Stockholders for the purpose of considering such matters. The Stockholders present at a duly organized meeting can continue to do business until adjournment, notwithstanding the withdrawal of enough Stockholders to leave less than a quorum.

If a meeting cannot be organized because a quorum has not attended, those present may adjourn the meeting to such time and place as they may determine.  When a meeting called for the election of Directors has been once adjourned because a quorum had not attended, those Stockholders entitled to vote in the election of Directors who attend the second of such adjourned meetings, although less than a quorum as fixed in these By-Laws or in the Certificate of Incorporation or by statute, shall nevertheless constitute a quorum for the purpose of electing Directors.

2.9    Acts of Stockholders.  Unless a greater or different vote shall be required as to a particular matter by the Certificate of Incorporation or by these By-Laws or by applicable statute, an act authorized by the vote of a majority of those Common Shares (plus such other shares which may from time to time be entitled to vote with the Common Shares) present in person or by proxy at a duly organized meeting shall be the act of the Stockholders.

USM-0263

2.10    Adjournment.  Adjournment or adjournments at any annual or special meeting may be taken as may be directed by a majority of votes cast by the Stockholders present in person or by proxy entitled to cast the votes which the Common Stockholders (plus such other Stockholders who shall at the time be entitled to vote with the holders of Common Shares on the matters to be considered at the meeting), may cast.  When a meeting is adjourned, it shall not be necessary to give any notice of the adjourned meeting other than by announcement at the meeting at which such adjournment is taken.  If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

2.11    Proxies.  At all meetings of Stockholders, a Stockholder entitled to vote on a particular matter may vote in person or may authorize another person or persons to act for him by proxy.  Every proxy shall be executed in writing by the Stockholder, or by his duly authorized attorney in fact.  Such proxies shall be filed with the Secretary of the Corporation before or at the time of the meeting.  A proxy, unless coupled with an interest, shall be revocable at will, notwithstanding any other agreement or any provision in the proxy to the contrary, but the revocation of the proxy shall not be effective until notice thereof has been given to the Secretary of the Corporation.  The Secretary may treat any proxy delivered to him as valid, unless before the vote is counted or the authority is exercised, written notice of any invalidity, together with such supporting information as shall enable a judgment to be rendered, is given to the Secretary.

2.12    Voting Rights.  Unless otherwise provided in the Certificate of Incorporation or in a duly filed statement establishing the rights of classes or series, only the holders of record of Common Stock shall be entitled to vote at a meeting of the Stockholders, and every Stockholder having the right to vote shall be entitled to one (1) vote for every share of Common Stock registered in his name on the books of the Corporation.

2.13    Nomination of Directors.  Nominations for election to the office of Director at an annual or special meeting of Stockholders shall be made by the Board of Directors, or by the Executive Committee, or by petition in writing delivered to the Secretary of the Corporation not fewer than thirty-five (35) days prior to such Stockholders' meeting, signed by the holders of at least one percent (1%) of the Stockholders' shares entitled to be voted in the election of Directors. Unless nominations shall have been made as aforesaid, they shall not be considered at such Stockholders' meeting unless the number of persons nominated as aforesaid shall be fewer than the number of persons to be elected to the office of Director at such meeting, or unless persons duly nominated shall have failed to be elected at such meeting and the persons elected as Directors shall be fewer than the number of persons to be elected to the office of Director at such meeting, in which events nominations may be made at the Stockholders' meeting by any person entitled to vote in the election of directors.

2.14    Election by Ballot.  The election of Directors shall be by written ballot.

2.15    Judges of Election.  In advance of any meeting of Stockholders, the Board of Directors may appoint Judges of Election, who need not be Stockholders, to act at such meeting

USM-0264

or any adjournment thereof. The number of Judges shall be one or three. The Judges of Election shall determine the number of shares outstanding and the voting power of each; the shares represented at the meeting; the existence of a quorum; the authenticity, validity and effect of proxies; hear and determine all challenges and questions arising in connection with the right to vote; receive, count and tabulate all votes or ballots, and determine the result; and do such other acts as may be necessary and proper to conduct the election or vote with fairness to all Stockholders. On request of the Chairman of the Meeting, or of any Stockholder or his proxy, the Judges shall make a report in writing of any challenge or question or matter determined by them, and execute a certificate of any fact found by them. If there be three Judges of Election, the decision, act or certificate of a majority shall be effective in all respects as the decision and/or certificate of all. Any report or certificate made by the Judges of Election shall be prima facie evidence of the facts stated therein.

2.16    Consent of Stockholders in Lieu of Meeting. Any action required to be taken at any annual or special meeting of Stockholders of the Corporation, or any action which may be taken at any annual or special meeting of Stockholders, may be taken without a meeting without prior notice and without a vote, if a consent in writing setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those Stockholders who have not consented in writing.

2.17    At each election for Directors, every Stockholder shall have one vote for each share of stock owned by such Stockholder, or, if the certificate of incorporation so provides, to cumulate the vote of said shares, and give one candidate as many votes as the number of directors multiplied by the aggregate number of such Stockholder's votes shall equal, or to distribute the votes on the same principle among as many candidates as the Stockholder may see fit. The candidates receiving the highest number of votes, up to the number of Directors to be elected, shall be elected.

## ARTICLE III.  Board of Directors

3.1    Number, Tenure and Qualifications. The business and affairs of the Corporation shall be managed by its Board of Directors, one (1) or more in number, as may be determined by the Board of Directors from time to time, who shall be natural persons of full age who need not be residents of the State of Delaware and who need not be Stockholders in the Corporation. Each Director shall hold office until the next succeeding annual meeting, and until his successor shall have been elected and shall qualify.

3.2    Powers and Authorization. In addition to the powers and authority by these By-Laws expressly conferred, the Board of Directors may exercise all of the powers of the Corporation and do all lawful acts not by statute or by the Certificate or by those By-Laws directed or required to be exercised or done only by the Shareholders. The Board shall have the power to delegate any of the powers exercised or exercisable by the Board to any standing

USM–0265

or special committee, or to any officer or agent, or to appoint any person to be the agent of the Corporation, with such powers, including the power to subdelegate, and upon such terms as the Board shall deem appropriate.

3.3    Meetings.  Meetings of the Board of Directors shall be held at such times and places, either within or without the State of Delaware, as may be fixed by Resolution of the Board, or by the President, or upon written demand of any two Directors.

3.4    Notice.  Notice of a meeting of Directors or of any Committee of the Board of Directors shall be delivered at least one day prior to such meeting by oral, telegraphic or written notice.  If mailed, such notice shall be deemed to be delivered on the second day following the day deposited in the United States mail, addressed to the Director at his business address, with postage thereon prepaid.  If notice be given by telegram, such notice shall be deemed to be delivered on the day the telegram is delivered prepaid to the telegraph company, addressed to the Director at his business office.  Notice of a meeting need only state the place, day and hour of the said meeting.

A Director may waive notice of any meeting in a writing signed either before or after the time stated.  The attendance of a Director at a meeting shall constitute a waiver of notice of such meeting, except where a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting was not lawfully called or convened.

3.5    Quorum.  A majority of the Directors then in office shall constitute a quorum for the transaction of business at any meeting of the Board of Directors, but if less than such quorum is present at a meeting, a majority of the Directors present may adjourn the meeting from time to time without further notice.

Directors shall be deemed present at a meeting of the Board of Directors if by means of conference telephone or similar communications equipment all persons participating in the meeting can hear each other.

The act of the majority of these Directors voting at a meeting at which a quorum is present shall be the act of the Board of Directors.

3.6    Unanimous Consent.  Any action which may be taken at the meeting of the Directors, or by action of the members of the Executive Committee or by the members of any other committee appointed by the Board, may be taken without a meeting, if a consent or consents in writing setting forth the action so taken shall be signed by all of the Directors or the members of the committee, as the case may be, and filed with the Secretary of the Corporation.

3.7    Compensation.  Directors as such need not receive any compensation for their services. By Resolution of the Board, a stated salary may be fixed for the Directors, or a fixed sum for and expenses of, attendance may be allowed for attendance at each regular or special meeting of the Board. Nothing herein contained shall be construed to preclude any Director

USM-0266

from serving the Corporation as a member of a committee or an officer or in any other capacity and receiving compensation therefor.

     3.8    Committees of the Board. The Board may, by Resolution adopted by a majority of the whole Board, delegate two or more of its number to constitute an Executive Committee, which, unless otherwise provided in such Resolution, shall have and exercise the authority of the Board of Directors in the management of the business and affairs of the Corporation. The Board may by Resolution adopted by a majority of the whole Board delegate two or more of its members to act as a committee to exercise all power and authority which the Board might exercise in matters as to which the committee is authorized to act.

     The presence in person or as hereafter provided of one-half (1/2) of the members of the Executive Committee or any other Committee shall constitute a quorum for the transaction of business at any meeting of such Committee, and the act of a majority of those members of such Committee voting at a meeting at which a quorum is present shall be the act of the Committee. Members of the Executive Committee or any other Committee shall be deemed as being present at a meeting of such Committee if by means of conference telephone or similar communications equipment all persons participating in the meeting can hear each other. In the absence or disqualification of any member of such Committee or Committees, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.

     3.9    Removal of Directors. Any individual Director may be removed from off-ice with cause by the vote of Stockholders entitled to cast at least a majority of the votes which all Stockholders would be entitled to cast at any annual election of Directors; provided, however, that if the certificate of incorporation provides for the cumulation of votes in the election of Directors, such removal shall not occur if the votes of a sufficient number of shares are cast against the Resolution for his removal which if cumulatively voted at an annual meeting of Directors would be sufficient to elect one or more Directors.

     The entire Board of Directors may be removed from office without assigning any cause by the vote of Stockholders entitled to cast at least a majority of the votes Stockholders would be entitled to cast at any annual election of Directors.

     3.10    Vacancies. Vacancies in the Board of Directors, including vacancies resulting from an increase in the number of Directors, shall be filled by a majority vote of the remaining members of the Board though less than a quorum. A Director elected to fill a vacancy shall be a Director until a successor is elected by the Shareholders, who may make such election at the next annual meeting of the Shareholders or any special meeting duly called for that purpose and held prior thereto.

## ARTICLE IV. Officers.

  **4.1** Executive Officers. The Executive Officers of the Corporation
by the Directors and shall be a President, Secretary, and Treasurer. The Boar
may also choose a Chairman of the Board, one or more Vice Presidents and su
officers and agents as it shall deem necessary, who shall hold their offices for s
shall have such authority and shall perform such duties as from time to time sh
prescribed by the Board.

  **4.2** Qualifications. Any number of offices may be held by the same person. The
President and Secretary shall be natural persons of full age. The Treasurer, if a natural
person, shall be of full age. It shall not be necessary for the officers to be Directors.

  **4.3** Salaries. The salaries of the President, any Chairman of the Board and Vice
President, the Secretary and the Treasurer of the Corporation shall be fixed by the Board of
Directors.

  **4.4** Term of Office; Removal. The officers of the Corporation shall hold office
for one year and until their successors are chosen and qualify.

  Notwithstanding the foregoing, every officer and agent may be removed at any
time by the Board of Directors, without assigning any cause therefor.

  **4.5** Chairman of the Board. The Chairman of the Board shall preside at
all meetings of the Stockholders and Directors at which he is present. He shall advise the
President and other officers of the Corporation on matters of general policy and shall perform
such other duties as may be assigned to him from time to time by the Board of Directors.

  **4.6** Duties of the President. The President shall be the Chief Executive Officer of the
Corporation; if there be no Chairman of the Board, or in his absence, the President shall preside
at all meetings of the Stockholders and of the Board of Directors; he shall have general and
active management of the business of the Corporation, and shall see that all orders and
resolutions of the Board are carried into effect, subject, however, to the right of the Directors
to delegate any specific powers, except such as may be by statute exclusively conferred on the
President, to any other officer or officers of the Corporation. He shall execute bonds,
mortgages and other contracts requiring a seal, under the seal of the Corporation. He shall be
ex-officio a member of all committees, and shall have the general powers and duties of
supervision and management usually vested in the office of President of a corporation. He shall
have the power to appoint and discharge, subject to the approval of the Directors, employees and
agents of the Corporation and fix their compensation, make and sign contracts and agreements
in the name and behalf of the Corporation and while the Directors and Executive Committee are
not in session, he shall have general management and control of the business and affairs of the
Corporation; he shall see that the books, reports, statements and certificates required by the
statute under which the Corporation is organized or any other laws applicable thereto are
properly kept, made, and filed according to law; he shall generally do and perform all acts
incident to the office of President of a corporation, or which are authorized or required by law.

USM-0268

4.7    Duties of the Vice Presidents. The Vice Presidents shall be executive officers of the Corporation who shall assist the Chairman of the Board and President and have such powers and duties as may be assigned from time to time by resolution of the Board of Directors, the President or Chairman of the Board. The Board of Directors may elect a senior Vice President to assist the Chairman of the Board and President in carrying out their duties, in supervising the activities and personnel of the Corporation, and generally to perform such functions as may be designated by the President and the Chairman of the Board.

4.8    Duties of Secretary. The Secretary shall attend all sessions of the Board and all meetings of the Stockholders and act as clerk thereof, and record all the votes of the Corporation and the minutes of all its transactions in a book to be kept for that purpose; and shall perform like duties for all committees of the Board of Directors when required. He shall give, or cause to be given, notice of all meetings of the Stockholders and the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors or President, and under whose supervision he shall be. He shall keep in safe custody the corporate seal of the Corporation, and when authorized by the Board or President affix the same to any instrument requiring it.

4.9    Duties of the Treasurer. The Treasurer shall have the custody of all funds, securities, evidences of an indebtedness and other valuable documents of the Corporation; he shall receive and give or cause to be given receipts and acquittances for money paid in on account of the Corporation and shall pay out of the funds on hand all just debts of the Corporation of whatever nature upon maturity of the same; he shall enter or cause to be entered in the books of the Corporation to be kept for that purpose full and accurate accounts of all monies received and paid out on account of the Corporation and, whenever required by the President or the Directors, he shall render to the President and Board of Directors, at the regular meetings of the Board, or whenever they may require it, a statement of his cash accounts and an account of all his transactions as Treasurer and of the financial condition of the Corporation; he shall keep or cause to be kept such other books as will show a true record of the expenses, losses, gains, assets and liabilities of the Corporation; he shall, unless otherwise determined by the Directors, have charge of the original stock books, transfer books and stock ledgers and act as transfer agent in respect to the stock securities of the Corporation; and he shall perform all the other duties incident to the office of Treasurer of a corporation. He shall give the Corporation a bond for the faithful discharge of his duties in such amount and with such surety as the Board shall prescribe.

4.10   Vacancies. If the office of any officer or agent, one or more, becomes vacant for any reason, the Board of Directors may choose a successor or successors, who shall hold office at the pleasure of the Board.

## ARTICLE V.   Indemnification.

5.1    Eligibility for Indemnification. The Corporation may indemnity any person who was, is, or is threatened to be made, a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative or investigative, by reason of

USM-0269

the fact that he is or was a Director, officer, employee, trustee, member of a proxy coi or other committee, or agent of the Corporation, or is or was serving at the reques Corporation in any such capacity in another corporation, partnership, joint venture, trust enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paiu ui settlement, actually and reasonably incurred by him or imposed on him in connection with such action, suit or proceeding, if he acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the best interests of the Corporation, and with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. Unless the Board of Directors shall otherwise determine, service as a Director, officer, employee, trustee, committee member, or agent, in a corporation, partnership, joint venture, trust or other enterprise, 50% or more of whose voting stock or equitable interest shall be owned by this Corporation, shall be deemed to be service at the request of this Corporation.

The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person seeking indemnification did not act in good faith and in a manner which he reasonably believed to be in, or not opposed to, the best interests of the Corporation, and with respect to any criminal action or proceeding, had reasonable cause to believe his conduct was unlawful.

5.2    To the extent that a Director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Section 5.1 of this Article, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorney's fees) actually and reasonably incurred by him in connection therewith.

5.3    Any indemnification under Section 5.1 of this Article (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the Director, officer, employee or agent is proper in the circumstances because he has met the applicable standard of conduct set forth in Section 5. 1 of this Article. Such determination shall be made (1) by the Board of Directors by a majority vote of a quorum consisting of Directors who were not parties to such action, suit or proceeding, or (2) if such a quorum is not obtainable, or, even if obtainable a quorum of disinterested Directors so directs, by independent legal counsel in a written opinion, or (3) by the stockholders.

5.4    If several claims, issues or matters are involved in an action, suit or proceeding as to which indemnification is sought, such person may be granted indemnification as provided herein to the extent of that portion of the expenses, judgments, fines and amounts paid in settlement, which are allocable to such claims, issues or matters in respect of which it is determined that such person has met the standards of conduct as provided herein.

5.5    Expenses incurred by an officer or Director in defending a civil or criminal action, suit or proceeding may be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such Director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized in this Section. Such expenses incurred by other

employees and agents may be so paid upon such terms and conditions, if any, as the Boar Directors deems appropriate.

5.6  Non-exclusivity of Indemnification. The indemnification and advancement of expenses provided by, or granted pursuant to, the other Sections of this Article shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office.

5.7  The indemnification and advancement of expenses provided by, or granted pursuant to, this Article shall, unless otherwise provided when authorized or ratified, continue as to a person who has ceased to be a Director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

5.8  Indemnification Insurance. The Board of Directors shall have the power to purchase and maintain insurance on behalf of any person who is or was a Director, officer, employee, trustee, committee member or agent of the Corporation, or is or was serving at the request of the Corporation as a Director, officer, employee, trustee, committee member or agent of another corporation, partnership, joint venture, trust or other enterprise, against any liability asserted against such person and incurred by such person in any such capacity or arising out of his status as such, whether or not the Corporation would have the power to indemnity him against such liability under the provisions of this Section. Such insurance may be in addition to any other insurance or benefits which the Board of Directors may from time to time determine to be appropriate.

## ARTICLE VI. Corporate Records and Statement.

6.1  Records. There shall be kept by the Corporation, either within or without the State of Delaware, a record of the proceedings of the Stockholders and of the Directors, and its By-Laws, including all amendments or alterations thereto to date. An original or duplicate share register shall be kept at either the registered office, or at the off-ice of its transfer agent or registrar, giving the names of the Stockholders, their respective addresses, and the number and classes of shares held by each. The Corporation shall also keep appropriate, complete and accurate books or records of account, which may be kept at its registered office, or its principal place of business.

6.2  Annual Statement. The President and Board of Directors shall present at each annual meeting of Stockholders such statement of the business and affairs of the Corporation for the preceding year as they shall deem appropriate. Upon written request of any Stockholder, the Corporation shall mail to such Stockholder its balance sheet as at the end of the preceding fiscal year, and its profit and loss statements for such fiscal year. Such statements shall be prepared and presented in whatever manner the Board of Directors shall deem advisable and need not be verified by a Certified Public Accountant.

USM-0271

## ARTICLE VII.  Share Certificates, Transfer of
## Stock, Etc.

7.1    Issuance.  The Board of Directors shall have the power, by Resolution duly adopted, to issue from time to time, in whole or in part, the kinds or classes of shares authorized in the Certificate of Incorporation.

Share certificates shall bear the signature of the Chairman, the Vice Chairman, the President or any Vice President, and the Secretary, any Assistant Secretary, the Treasurer or any Assistant Treasurer, and the corporate seal, which may be a facsimile, engraved or printed.  Where such certificate is signed by a transfer agent or a registrar, the signature of such officers upon such certificate may be a facsimile, engraved or printed.

7.2    Transfers of Shares.  Transfer of shares shall be made on the books of the Corporation upon surrender of the certificates therefor, endorsed by the person named in the certificate or by attorney, lawfully constituted in writing.  No transfer need be made inconsistent with the provisions of the Uniform Commercial Code or other applicable Federal, State or Local Law.

No transfer or assignment shall affect the right of the Corporation to pay any dividend due upon the stock, or to treat the registered holder as the holder in fact, until such transfer or assignment is registered on the books of this Corporation.

7.3    Absolute Owner.  The Corporation shall be entitled to treat the registered holder of any shares of the Corporation as the absolute owner thereof, and accordingly shall not be bound to recognize any equitable or other claim to, or interest in, such share, on the part of any other person, whether or not the Corporation shall have express or other notice thereof.

7.4    Lost, Destroyed or Mutilated Certificates.  In the event that a share certificate shall be lost, destroyed or mutilated, a new certificate may be issued therefor upon such terms and indemnity to the Corporation as the Board of Directors may prescribe.

## ARTICLE VIII.  Miscellaneous Provisions.

8.1    Signatures on Checks.  All checks or demands for money and notes of the Corporation shall be signed by such officer or officers as the Board of Directors may from time to time designate.

8.2    Securities of Other Corporations.  The President, or the Secretary, shall have full power to vote, appoint proxies, or otherwise perform any act as a Stockholder with respect to any shares or other securities of any Corporation owned by this Corporation, including the power to sell, convert, exchange, pledge or encumber such securities.

8.3    Fiscal Year.  The fiscal year shall be designated by the Board of Directors of the Corporation.

USM-0272

## ARTICLE IX. Amendments.

9.1    These By-Laws may be altered, amended or repealed by a majority of the members of the Board of Directors, or by a majority of those Common Shares (plus such other shares as may then be entitled to vote with the Common Shares) present in person or by proxy at any regular or special meeting duly organized.

USM-0273