```
                   IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF DELAWARE

JEFFREY M. NORMAN,                    :
                                      :
            Plaintiff,                :
                                      :
      v.                              :
                                      :
DAVID W. ELKIN, RICHARD M.            :
SHORIN and                            :   Civil Action NO. 06-005-JJF
THE ELKIN GROUP, INC.,                :
                                      :
            Defendants,               :
                                      :
      and                             :
                                      :
US MOBILCOMM, INC.,                   :
                                      :
            Nominal Defendant.        :
```

Sean J. Bellew, Esquire and David A. Felice, Esquire of BALLARD
SPAHR ANDREWS & INGERSOLL, LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Steven L. Caponi, Esquire and Christine S. Azar, Esquire of BLANK
ROME LLP, Wilmington, Delaware.

Attorneys for Defendants.

**MEMORANDUM OPINION**

July 30, 2010
Wilmington, Delaware.

Farhan, District Judge

Pending before the Court are the reserved claims and the post-trial motions of Plaintiff ("Plaintiff") Jeffery M. Norman and Defendants David W. Elkin, Richard M. Shorin, and The Elkin Group (collectively, "Defendants"). For the reasons discussed, the Court will grant judgment in favor of Defendants on all of Plaintiff's claims except the second and third grounds of Plaintiff's breach of contract claim. The jury's verdict in favor of Plaintiff on the second and third grounds of Plaintiff's breach of contract claim will stand, but the jury's verdict on Plaintiff's fraud and conversion claims will be vacated. An amended Judgment Order will be entered with regard to all claims. In addition, Plaintiff's Motion For Pre-Judgment Interest, Post-Judgment Interest And Attorneys' Fees On Judgment For Breach Of Contract, Fraud, And Unjust Enrichment Against Defendant David Elkin (D.I. 134), and Defendants' Motion To Strike Plaintiff's Reply To Defendants' Brief In Opposition To Plaintiff's Opening Post-Trial Memorandum On His Equitable Claims And Renewed Motion For Judgment As A Matter Of Law (D.I. 153) will both be denied.

**I. BACKGROUND**[1]

Plaintiff and Defendant Elkin formed U.S. Mobilcomm, Inc.

---

[1] The background relevant to this action has been set forth fully by the Court in previous decisions entered in this case. (See D.I. 98). Only those facts relevant to post-trial issues will be repeated herein.

1

("USM") to participate in the wireless communications industry by acquiring 220 MHz licenses, constructing wireless communications systems, and marketing the service. Plaintiff and Defendant Elkin and are the only two shareholders of USM, although they disagree over the precise nature of their agreement to fund USM. USM was the holder of "Phase I" 220 MHz licenses. In 1998, the Federal Communications Commission ("FCC") announced it would auction "Phase II" 220 MHz licenses. Phase I license holders, like USM, were given the opportunity to participate in Phase II auctions as qualified bidders upon meeting certain criteria. In public documents, the FCC recognized USM as a qualified bidder in Auction Number 18, and as the winning bidder for certain Phase II licenses. The FCC registration was later amended to list The Elkin Group as the bidder. At some point later, bundled sales of these Phase I and Phase II licenses were conducted.

Also relevant is a Shareholder Loan Agreement, made effective as of September 1, 1995, but which was apparently executed years after 1995. The Shareholder Loan Agreement stated that all funds provided by Defendant Elkin to or on behalf of USM in excess of $420,000 would be provided as a loan and would be repaid by USM prior to any distributions. In the instant action, Plaintiff generally alleges that Defendants mismanaged USM through the execution of the Shareholder Loan Agreement and the transfer of auction rights to The Elkin Group, and that

2

Defendants inappropriately distributed funds that came into USM following the sale of the 220 MHz licenses.

On November 16, 2004, prior to the instant action, Plaintiff brought an action against Defendants in the Court of Chancery of the State of Delaware pursuant 8 Del. C. § 220 (the "§ 220 Action"), concerning the inspection of books and records. Defendant initiated the instant action on December 5, 2005, in the Court of Chancery. On January 3, 2006, Defendant filed a Notice of Removal and removed the action to this Court. (D.I. 1.) A three day jury trial was held, during which Plaintiff asserted nine claims: fraud, breach of contract, conversion/misappropriation, breach of fiduciary duty (loyalty and disclosure), aiding and abetting breach of fiduciary duty, usurpation of corporate opportunity, unjust enrichment, and declaratory judgment. Only the breach of contract, fraud, and conversion claims were presented to the jury. The jury found for Plaintiff on each of these claims, and awarded Plaintiff $1 in nominal damages on the breach of contract claim, $105,756 in compensatory damages and $48,000 in punitive damages on the fraud claim, and $38,000 in compensatory damages on the conversion/misappropriation claim. (D.I. 118; D.I. 131 at 131-33.) The Court reserved judgment on the remaining claims. Additionally, the Court reserved judgment on whether all of Plaintiff's claims are barred by the applicable statute of

3

limitations.

This Memorandum Opinion constitutes the Court's decision on all pending post-trial matters.

## II. **DEFENDANTS' AFFIRMATIVE DEFENSE OF THE STATUTE OF LIMITATIONS[2]**

### A. **Whether The Doctrine Of Laches Applies**

As an initial matter, Plaintiff contends that the doctrine of laches should be applied instead of the statute of limitations. (D.I. 144 at 9.) Defendants oppose the application of laches, contending that it is substantively inapplicable. (D.I. 152 at 6.)

The Court concludes that the statute of limitations, and not the doctrine of laches, is applicable to this action. While the statute of limitations has been at issue throughout this litigation, Plaintiff raises his argument concerning laches for the first time post-trial. Further, under Delaware law, "an action . . . for damages or other relief which is legal in nature is [generally] subject to the statute of limitations rather than

---

[2] Defendants filed a Motion To Strike Plaintiff's Reply To Defendants' Brief In Opposition To Plaintiff's Opening Post-Trial Memorandum On His Equitable Claims And Renewed Motion For Judgment As A Matter Of Law, contending that Plaintiff's Reply Brief should be stricken because it impermissibly raises issues and arguments which should have been included in the Opening Brief. (D.I. 153.) Because the Court concludes that Plaintiff did not "reserve material for the reply brief which should be included in a full and fair opening brief," D. Del. R. 7.1.3(c)(2), but rather, responded to arguments raised in Defendants' Answer Brief, the Motion To Strike will be denied.

the equitable doctrine of laches." <u>Cantor v. Perelman</u>, 414 F.3d
430, 439 (3d Cir. 2005)(citing <u>Laventhol, Krekstrein, Horwath &</u>
<u>Horwath v. Tuckman</u>, 372 A.2d 168, 169-70 (Del. 1976)).
Accordingly, the Court will consider Defendants' assertion that
the claims are time-barred under the statute of limitations, not
the doctrine of laches.

## B. Whether The Jury Verdict Provides Guidance On The Statute Of Limitations

The jury found that Plaintiff did not knowingly waive his
rights under the parties' agreement. (D.I. 118.) In making this
finding, Plaintiff contends that the jury necessarily determined
whether Plaintiff was aware of the injury caused to him, and
therefore the jury verdict should guide the Court in its
application of the statute of limitations. (D.I. 144 at 6-8.)
In response, Defendants contend that the jury considered the
issue of waiver only in regard to the breach of contract claim
(not all claims), and in any event, a finding of waiver on a
contractual claim has no bearing on Defendants' statute of
limitations defense. (D.I. 152 at 4-5.)

In the Court's view, the jury's verdict is irrelevant to the
Court's examination of the statute of limitations and tolling.
The jury did not consider the evidence as it relates to the
statute of limitations. In addition, waiver and statute of
limitations issues are not synonymous: waiver involves the
knowing relinquishment of a legal right, whereas the relevant

inquiry for statute of limitations purposes is whether Plaintiff had inquiry notice. Accordingly, the Court will consider the applicability of the statute of limitations as a separate legal issue and without regard to the jury's verdict.

## C. Whether Plaintiff's Claims Are Barred By The Statute Of Limitations

In its September 26, 2007 Memorandum Opinion, the Court determined that Delaware's three-year limitations period applied to Plaintiff's breach of contract claim, and that Pennsylvania's two-year limitations period applies to all of Plaintiff's other claims. (D.I. 70 at 9.) Further, the Court concluded that "without application of a tolling doctrine, Plaintiff's claims would be time-barred by the statute of limitations." (Id.) However, the Court declined to grant summary judgment on statute of limitations grounds, finding that "in the circumstances in this case, the date on which Plaintiff knew or should have known the facts constituting his claims is a material dispute of fact." (Id. at 12.)

By his Post-Trial Memorandum On Matters Reserved By The Court, Plaintiff contends that the statute of limitations should be tolled on all of his claims for two reasons (D.I. 144 at 3). First, Plaintiff contends that Defendants fraudulently concealed the relevant information regarding the breach of contract and fraud claims. Second, Plaintiff contends that Defendants engaged

6

in wrongful self-dealing concerning the remaining claims. The

will consider each of Plaintiff's arguments in turn.

## 1. Legal Standard

Fraudulent concealment tolls the statute of limitations upon

an affirmative act of concealment. See Capricorn Pharma, Inc. v.

Matrixx Initiatives, Inc., No. 08-873-JJF, 2009 U.S. Dist. LEXIS

73227, at *9-10 (D. Del. Aug. 19, 2009)(citing Halpern v. Barran,

313 A.2d 139, 143 (Del. Ch. 1973))(internal quotation

omitted)("Under Delaware law, fraudulent concealment tolls a

statute of limitations where a defendant has done some

affirmative act or acts involving actual artifice which prevents

a plaintiff from discovering the facts giving rise to his or her

cause of action, or where a defendant has made some

misrepresentation which is intended to put the plaintiff off the

trail of inquiry..."); see also Fine v. Checcio, 870 A.2d 850,

860 (Pa. 2005)(the doctrine of fraudulent concealment "provides

that the defendant may not invoke the statute of limitations, if

through fraud or concealment, he caused the plaintiff to relax

his vigilance or deviate from his right of inquiry into the

facts."). However, the statute of limitations is only tolled,

until the plaintiff receives inquiry notice of his or her cause

of action (i.e., when the plaintiff knew or should have known of

the facts in the claim asserted based on discovery of the wrong

or the fraudulent concealment). See Capricorn Pharma, 2009 U.S.

Dist. LEXIS 73227, at *9-10 ("Where a defendant has fraudulently concealed the grounds for a plaintiff's cause of action, the statute of limitations is suspended only until plaintiff's rights are discovered or until they could have been discovered by the exercise of reasonable diligence."); see also Fine, 870 A.2d at 861 (Pa. 2005) ("a statute of limitations tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause").

In addition to instances of fraudulent concealment, the statute of limitations can also be tolled when a fiduciary wrongfully engages in self-dealing. See Bovay v. Byllesby, 38 A.2d 808 (Del. 1944); see also Schwartz v. Pierucci, 60 B.R. 397, 403 (E.D. Pa. 1986) ("[w]here a fiduciary commits an act of fraud against his principal, the statute of limitations will be tolled"). "A defendant's actionable self-dealing, however, only works to toll the statute until the plaintiff becomes aware of the wrong." Ruggerio v. Estate of Poppiti, No. 18961-NC, 2005 Del. Ch. LEXIS 32, at *16 (Feb. 23, 2005). "Inquiry notice does not require the plaintiff to have actual knowledge of the wrong, but merely an objective awareness of the facts giving rise to the wrong." Vichi v. Koninklijke Philips Elecs. N.V., No. 2578-VCP, 2009 Del. Ch. LEXIS 209, at *57 (Dec. 1, 2009). A significant level of evidence is needed to put a party on inquiry notice under Pennsylvania law because of the inherent trust existing in

fiduciary relationships. In re Mushroom Transp. Co., 382 F.3d 325, 343 (3d Cir. 2004).

Plaintiff maintains the burden of proving that the statute of limitations is tolled. See Ruggerio, 2005 Del. Ch. LEXIS at *16. Consideration of whether that burden is met "may involve a fact intensive inquiry to determine when a reasonable person in plaintiffs' position knew or should have known of the claim." Cantor v. Perelman, 414 F.3d 430, 441 (3d Cir. 2005).

## 2. Breach Of Contract Claim

Plaintiff contends that Defendant Elkin breached an agreement between the parties by: (1) failing to contribute capital to USM; (2) executing his Shareholder Loan Agreement; and (3) failing to distribute proceeds from the sale of USM assets on a pro rata basis. (D.I. 61 (Pre-Trial Order).)

Defendants contend that the first and third grounds asserted by Plaintiff are barred by the statute of limitations. Specifically, Defendants contend Plaintiff was fully aware, long before the instant action was filed, that Defendant Elkin had failed to make capital contributions and pro rata distributions to USM. (D.I. 138 at 4-8.) In response, Plaintiff contends that he did not know, or have reason to know, of these underlying facts until the § 220 Action, and thus, the statute of limitations should be tolled on both of these grounds for his breach of contract claim. (D.I. 144 at 9.)

9

In the Court's view, the trial record clearly establishes that Plaintiff believed Defendant Elkin had not contributed his share of USM's capital long before he initiated this action. At trial, Plaintiff testified that he understood his agreement with Defendant Elkin to require Defendant Elkin to deposit his contribution at the same time as Plaintiff's contribution (D.I. 129, Trial Tr. Day 1 at 157), and that within one year of Plaintiff's contribution in 1994, Plaintiff was aware that Defendant Elkin had not made his full contribution. (Id. at 157-58.) Plaintiff even memorialized his knowledge that Defendant Elkin had not deposited his capital contribution in a January 20, 1995 letter from Plaintiff's attorney requesting that the full contribution be made. (Id. at 162-64.) Accordingly, the Court concludes that Plaintiff had actual knowledge of the facts giving rise to his breach of contract claim based on Defendant's failure to make contributions by at least 1995, a decade before the instant action was instituted.

However, the Court concludes that Plaintiff's claim is not time-barred to the extent Plaintiff alleges that Defendant Elkin breached the agreement between the parties by failing to distribute proceeds from the sale of USM assets on a pro rata basis. Defendant contends that Plaintiff had inquiry notice of this claim by October 2002, because Plaintiff testified that Defendant Elkin informed him of the sale of USM assets, and his

attorney sent a letter requesting information from Defendant
Elkin as a result. (Tr. 113:5-9.) According to Defendant Elkin,
the December 3, 2002 letter to Plaintiff confirms the fact that
Plaintiff had been on inquiry notice of this claim since October
2002.

The letter sent from Plaintiff's counsel to Defendant Elkin
is not in evidence, and therefore, the Court cannot consider it.
Further, the Court finds, based on the evidence adduced at trial,
that Plaintiff did not learn of the Shareholder Loan Agreement
(and its purported recharacterization of Defendant Elkin's equity
contributions into shareholder loans) until October 2003. The
December 3, 2002 letter represented to Plaintiff that the
proceeds of sales of USM assets were used to pay legal fees and
original licencees, and to repay equipment and shareholder loans.
Thus, the Court concludes that at the time of this letter,
Plaintiff did not possess sufficient facts to be placed on
inquiry notice that Defendant Elkin had not distributed the
proceeds on a pro rata basis.[3] Accordingly, the Court concludes
that Plaintiff's breach of contract claim based on Defendant's
failure to distribute proceeds is not time-barred.

Therefore, the jury's verdict in favor of Plaintiff on the
breach of contract claim will stand to the extent it is based on

_____

[3]The Court notes that Defendant Elkin has not contested the
sufficiency of the evidence on the jury's finding of breach of
contract for failure to make pro rata distributions.

11

Defendant Elkin's failure to distribute proceeds from the sale of USM assets on a pro rata basis, and will be vacated to the extent it is based on Defendant Elkin's failure to contribute capital to USM.

### 3.   Fraud Claim

Two letters form the basis of Plaintiff's fraud claim. According to Plaintiff, a December 3, 2002 letter (DTX 120) from Defendant Elkin to Plaintiff's counsel misrepresented the total proceeds USM received from the sale of the 220 MHz licenses and the total amount distributed to Defendant Elkin. In addition, Plaintiff alleges that the December 2002 letter omitted the material fact that the shareholder loans were once paid in capital. (D.I. 144 at 14-15.) In addition, Plaintiff contends that the October 2003 letter from Defendant Elkin to Plaintiff's counsel, which contained the Shareholder Loan Agreement between USM and Defendant Elkin and an itemized schedule of Defendant Elkin's contributions and distribution, was an "affirmative fraudulent disclosure." (Id. at 17.)

Plaintiff contends that the statute of limitations should be tolled on his fraud claim because Defendants fraudulently concealed the claim, and because Plaintiff was not placed on inquiry notice of the claim until after the § 220 Action. (Id. at 15-17.) In response, Defendants maintain that the fraud claim is time-barred because there is no evidence of fraudulent

12

concealment, and because Plaintiff was on inquiry notice by October 2003, before the commencement of the § 220 Action.

Reviewing the evidence adduced at trial in light of the relevant legal principles, the Court concludes that the doctrine of fraudulent concealment is inapplicable to toll the statute of limitations through the pendency of § 220 Action. Fraudulent concealment requires an affirmative independent act of concealment upon which Plaintiff justifiably relied. Montanya v. McGonegal, 757 A.2d 947, 951 (Pa. Super. 2000). Although Plaintiff contends that Defendant Elkin engaged in "affirmative acts of diverting, misleading and preventing discovery of company information" (D.I. 144 at 16), Plaintiff has failed to present any record evidence supporting his claim. In the Court's view, the only concealment suggested by Plaintiff is the alleged inaccuracies and misinformation within the December 2002 and October 2003 letters, which form the basis of the fraud claim itself. Accordingly, the Court concludes that Plaintiff has failed to prove that Defendant Elkin engaged in an affirmative, independent act of concealment with regard to the fraud claim.

In addition, the Court concludes that the § 220 Action will not operate to toll the statute of limitations in a situation such as this, where Plaintiff had inquiry notice of his fraud claim before initiating the § 220 Action. Cf. Technicorp Int'l II, Inc. v. Johnston, No. 15084, 2000 Del. Ch. LEXIS 81, *30 (May

13

31, 2000) ("It is settled Delaware law that the institution of other litigation to ascertain the facts involved in the later suit will toll the statute [of limitations] while that litigation proceeds."). Specifically, the Court concludes that Plaintiff had inquiry notice of his fraud claim as it pertains to both letters by October 2003. The Shareholder Loan Agreement and Schedule in the October 2003 letter indicated that $692,426 in shareholder loans were repaid to Defendant Elkin between 1999 and 2002. (DTX 121.) This figure was substantially different than the shareholder loan repayment figure provided by Defendant Elkin in the December 2002 letter for the same relevant time period. (Compare DTX 120 and 121.) Although Plaintiff may not have obtained the full factual details of his fraud claim until the § 220 Action, the Court concludes that Plaintiff possessed sufficient facts as of October 2003 to be put on inquiry notice of his fraud claim. Accordingly, the Court concludes that Plaintiff's fraud claim is time-barred, that the jury's verdict in favor of Plaintiff will be vacated, and that judgment will be entered in favor of Defendants on this claim.

## 4. Conversion And Usurpation Of Corporate Opportunity Claims

Plaintiff's claims for conversion and usurpation of corporate opportunity are both based on Defendant Elkin's act of substituting The Elkin Group for USM as the applicant for participation in the FCC's Auction Number 18. (D.I. 138 at 21

14

(citing Pre-Trial Order at 5).)  Defendant contends that the
statute of limitations on both claims expired in October 2000,
two years after Auction Number 18 was conducted, and that no
tolling principles apply.  Specifically, Defendants contend that
Plaintiff had sufficient information in his possession to learn
of his conversion and usurpation claims by December 2002, at the
latest.

In response, Plaintiff contends that the statute of
limitations was tolled because he had no reason to know of the
facts underlying his conversion or usurpation claims until the §
220 Action.  (D.I. 144 at 21.)  Plaintiff also contends that
Defendant Elkin obstructed Plaintiff's attempt to obtain facts
regarding the sale of USM assets, and that given Defendant
Elkin's fiduciary role as majority shareholder, Plaintiff had no
reason to distrust Defendant Elkin.

After reviewing the evidence adduced at trial in light of
the relevant legal principles, the Court concludes that Plaintiff
had inquiry notice of his conversion and usurpation claims before
initiating the § 220 Action.  Plaintiff testified that in
November 1998, he tracked the results of Auction Number 18 on the
FCC website.  (D.I. 129, Trial Tr. Day 1 at 121:9 - 122:7.)
Public notices were available on the FCC website which listed the
same licenses won by USM in Auction Number 18 as being owned by
The Elkin group.  (DTX 106.)  Plaintiff testified "there would

15

have been no reason for me to dig" to find these notices, but acknowledged that "there probably was a way I could have tracked this information down." (Tr. 178:13-25.) In the Court's view, the existence of publicly available information concerning The Elkin Group's purported ownership demonstrates that Plaintiff was not incapable of learning the facts giving rise to his conversion and usurpation claims until the § 220 Action. See Seidel v. Lee, 954 F. Supp. 810, 817 (D. Del. 1996)(stating that shareholders are entitled to their fiduciaries, but that shareholders "should not put on blinders to such obvious signals as publicly filed documents").

More significantly, Plaintiff testified that purchase and sale agreements between USM and third parties were included in the December 2002 letter from Defendant Elkin to Plaintiff's counsel. (Tr. 117:20- 188:15.) The purchase agreements indicate that The Elkin Group owned the Phase II licenses won in Auction Number 18. (DTX 120 at PLTF 1672-73, 1693.) Plaintiff testified that

> when I did get these documents, and I was reading, I saw the reference to The Elkin Group, and it was odd because I had just seen that [USM] had won the licenses. I remember actually going back and checking the FCC website and seeing . . . that [USM] is the winner of the 220 auctions.
> So I remember going back to [Plaintiff's counsel' and we discussed that. But I went to sort of check it out and looked on the FCC website and it still had [USM] as the winner.

(Tr. 132:1-10.)

16

Thus, Plaintiff's own testimony indicated that he noticed an apparent discrepancy as to who owned the Phase II licenses, and that he thought enough of the issue to discuss it with his lawyer and look at the FCC website again.  However, Plaintiff fails to direct the Court to any evidence that he diligently pursued the issue and investigated why the purchase agreement listed The Elkin Group as the owner of the licenses.  Given these circumstances, the Court concludes that Plaintiff was placed on inquiry notice of his conversion and usurpation claims by December 2002, at the latest.  Accordingly, the Court concludes that Plaintiff's conversion and usurpation claims are time-barred, and therefore, the Court will grant judgment in favor of Defendant on these claims.

### 5.   Breach Of Fiduciary Duty Of Loyalty Claim

Plaintiff alleged that Defendant Elkin breached his fiduciary duty of loyalty on four grounds: (1) by engaging in self-dealing when he used USM's position during Auction Number 18 for the benefit of The Elkin Group, and ultimately, himself; (2) by engaging in a self-interested transaction, the execution of the Shareholder Loan Agreement; (3) by conducting the business of USM for himself as a purported creditor rather than for the benefit of USM's equity owners; and (4) by forcing USM into insolvency or the zone of insolvency after execution of the Shareholder Loan Agreement.  (D.I. 144 at 25-27.)  Defendants

contend that the first two grounds of Plaintiff's breach of the duty of loyalty claim rest on the same alleged acts of misconduct as Plaintiff's fraud and conversion claims, and that like those claims, Plaintiff's breach of the duty of loyalty claim is barred by the statute of limitations.[4] (D.I. 138 at 29.) Plaintiff contends that he had no reason to know that the FCC registration was amended to list The Elkin Group as owner of the Phase II licenses, or that Elkin distributed proceeds of The Elkin Group's sale of those licenses to himself, until the § 220 Action. (D.I. 144 at 25.) Further, Plaintiff contends that even though he was aware that Defendant Elkin had executed a Shareholder Agreement, Plaintiff could not have learned about the self-interest involved until the § 220 Action, when he discovered that Defendant Elkin recharacterized a portion of his capital contributions as shareholder loans. (Id. at 26.)

To the extent Plaintiff bases his breach of the duty of loyalty claim on Defendant Elkin's participation in Auction Number 18, the Court concludes the claim is time-barred. As discussed supra, Plaintiff knew USM had won Phase II licenses during Auction Number 18, but by December 2002, Plaintiff had inquiry notice that The Elkin Group was listed as owner of these

---

[4] Defendant does not contend that the third and fourth grounds of Plaintiff's breach of the duty of loyalty claim are time-barred, but rather, that they fail on the merits. (D.I. 138 at29.) Accordingly, the merits of this portion of Plaintiff's breach of the duty of loyalty claim will be discussed infra.

licenses.  The December 2002 letter also provided Plaintiff with notice of the sale of licenses and the distribution of sale proceeds.  Therefore, the Court concludes that Plaintiff had inquiry notice of the material facts constituting the first aspect of his breach of the duty of loyalty claim by December 2002.

To the extent Plaintiff bases his breach of the duty of loyalty claim on Defendant Elkin's execution of the Shareholder Loan Agreement, the Court also concludes that the claim is time-barred.  Plaintiff testified that he had actual knowledge of the existence of the Shareholder Loan Agreement in October 2003.  (Tr. 136:8-11.)  Plaintiff's contention that he had no reason to know of the allegedly self-interested nature of the Shareholder Loan Agreement is unavailing.  As the only other shareholder, Plaintiff was aware of how much capital Defendant Elkin contributed.  (See DTX 116.)  Plaintiff had notice that Defendant Elkin had repaid shareholder loans as a result of the December 2002 letter. (DTX 120.)  Additionally, Plaintiff was, or should have been, aware of the different shareholder loan repayment figures reported by Defendant Elkin in the October 2003 letter.  (Compare DTX 120 and 121.)  It is also noteworthy that Plaintiff fails to cite to any specific facts relevant to his breach of the duty of loyalty claim which he learned through the § 220 Action, yet was unaware of in October 2003.  Given these circumstances,

19

the Court concludes that by October 2003, Plaintiff was objectively aware of facts giving rise to his claim that Defendant Elkin engaged in a self-interested transaction through his execution of the Shareholder Loan Agreement. Accordingly, the Court concludes that Plaintiff's breach of the duty of loyalty claim is time-barred, and therefore, the Court will grant judgment in favor of defendant on this claim.

### 6.   Breach Of Fiduciary Duty Of Disclosure Claim

Plaintiff alleged that Defendant Elkin breached his fiduciary duty of disclosure on three grounds: (1) by failing to provide Plaintiff with notice and/or the right to vote on the sale of substantially all of USM's assets; (2) by failing to disclose the sale of license and/or distribution of profits; and (3) by failing to disclose or seek approval for execution of the Shareholder Loan Agreement. (D.I. 144 at 28.)  Defendant contends that this claim is time-barred because Plaintiff knew by December 2002, that nearly all of USM's assets had been sold, particularly the licenses, and that he had not been given an opportunity to vote on that sale. (D.I. 138 at 32-33.)  Further, Defendant contends that Plaintiff knew about the execution of the Shareholder Loan Agreement, which was done without his approval, in October 2003. (<u>Id</u>.)  In response, Plaintiff contends that he had no reason to know about the sale of all assets until the § 220 Action, when he discovered a tax return indicating a

20

different figure for the value of Phase I licenses sold than had been represented by Defendant Elkin in the December 2002 letter. (D.I. 144 at 28-29.) In addition, Plaintiff contends that although he knew about the execution of the Shareholder Loan Agreement, he had no reason to know of its self-interested nature until the § 220 Action. (Id. at 29.)

To the extent Plaintiff's claim for breach of the duty of disclosure is based on Defendant Elkin's failure to seek approval of the Shareholder Loan Agreement, the Court concludes the claim is time-barred. Plaintiff's own testimony demonstrates that he knew Defendant Elkin entered into the Shareholder Loan Agreement with USM and that his approval had not been sought:

Q: So you knew in October 2003 that [Mr. Elkin] had cut a shareholder loan agreement, and at least you had what Mr. Elkin represented to be the amount of those loans, correct?

A: That's correct.

Q: But you knew when you received this that you had not been asked to approve or authorize this document, correct?

A: That's correct.

(Tr. 136:8-14.) Moreover, as discussed supra, Plaintiff was in possession of sufficient facts such that he should reasonably have suspected that the Shareholder Loan Agreement was an interested transaction.

To the extent Plaintiff's claim for breach of the duty of disclosure is based on Defendant Elkin's failure to disclose the

sale of licenses and/or distribution of profits, the Court

likewise concludes that the claim is time-barred.  The December

2002 letter detailed the sale licenses, attached relevant

purchase agreements, and stated how Defendant Elkin purportedly

disposed of the proceeds.  (DTX 120.)  Plaintiff initially denied

having seen the purchase agreements attached to the December 2002

letter (Tr. 115:12-14), although he later admitted that "I guess

I would like to change my answer to say that maybe, if they were

attached to the letter that went to the attorney at that date,

then [having seen them] is a possibility."  (Tr. 117:25-118:2.)

In any event, the Court concludes that the December 2002 letter

and its attachments placed Plaintiff, at a minimum, on inquiry

notice that licenses and been sold and distributions made from

the proceeds.

Finally, to the extent Plaintiff's claim for breach of the

duty of disclosure is based on Defendant Elkin's failure to

provide Plaintiff with notice and/or the right to vote on the

sale of substantially all of USM's assets, the Court concludes

the claim is time-barred.  Plaintiff testified that besides the

licenses he obtained for USM, he was not aware of any other

assets owned by USM or any acts it had taken to increase its

market value.  (Tr. 91:15-25.)  Plaintiff further testified that

Defendant Elkin informed him that some of USM's assets had been

sold, and when he was unable to get information about the sales

from Defendant Elkin, he obtained an attorney. (Tr. 113:5-9.) In addition, as previously discussed, by December 2002 Plaintiff had inquiry notice that USM had sold licenses, and that The Elkin Group was listed as owning Phase II licenses won by USM in Auction Number 18. Thus, the Court concludes that Plaintiff was, or should have been, aware of the facts underlying his claim that Defendant breached the duty of disclosure prior to the § 220 Action. Accordingly, the Court concludes that Plaintiff's claim of breach of the duty to disclose is time-barred, and therefore, the Court will grant judgment in favor of Defendants on this claim.

### 7. Declaratory Judgment, Unjust Enrichment Claims

Because Plaintiff's declaratory judgment and unjust enrichment claims are based on the same facts as previously addressed in Plaintiff's other claims, the Court concludes that these claims are barred by the statute of limitations. Accordingly, for the reasons previously discussed, the Court will enter judgment in favor of Defendants on these claims.

## III. EVALUATION OF THE MERITS OF PLAINTIFF'S REMAINING CLAIMS

### A. Whether Defendant Is Entitled To Judgment As A Matter of Law On Plaintiff's Breach Of Contract Claim

The jury found in Plaintiff's favor on Plaintiff's claim that Defendant Elkin breached an agreement between the parties by executing the Shareholder Loan Agreement. (D.I. 118.)

23

Defendants do not contend that the breach of contract claim was barred by the statute of limitations in this regard. By its Motion For Judgment as a Matter of Law, Defendants contend that Plaintiff's claim fails as a matter of law because "there was no testimony at trial that the parties had ever reached an agreement that their capital contributions over the required amounts could not be treated as loans or that the parties agreed not to loan money to USM." (D.I. 135 at 18.) In response, Plaintiff contends that the parties' agreement required Defendant Elkin to maintain $750,000 of his funds in USM's capital account, and that the Shareholder Loan Agreement caused a breach because the amount of Defendant Elkin's funds in the capital account dropped to $420,000. (D.I. 146 at 16.) In reply, Defendants contend that this is a new theory of liability raised for the first time post-trial, and that Plaintiff is actually attempting to get a "second crack at his breach of contract claim for the failure to contribute [] required capital in a timely manner." (D.I. 150 at 13.)

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, a court may grant judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for a party on a given issue after that party has been fully heard. Fed. R. Civ. P. 50(a). In assessing the sufficiency of the evidence, a court must review

24

all of the evidence in the record, viewing it in the light most favorable to the non-moving party and giving the non-moving party the benefit of all fair and reasonable inferences that could be drawn from it. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1348 (3d Cir. 1991). A court must not weigh the evidence, evaluate the credibility of the witnesses, or substitute its own version of the facts for the jury's. Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). Although a court should grant judgment as a matter of law sparingly, it is appropriate where only a "scintilla of evidence" supports the verdict, or where "the record is critically deficient of the minimum quantum of evidence" needed to support the verdict. Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003)(citing Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)).

In order to prevail on a breach of contract claim, Plaintiff must prove that (1) a contract existed; (2) the defendant breached the contractual obligations; and (3) the breach resulted in damage to the plaintiff. See VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003). Viewing the evidence in the light most favorable to Plaintiff, as verdict winner, the Court concludes that there was a legally sufficient evidentiary basis for a reasonable jury to conclude that Defendant Elkin

breached an agreement with Plaintiff by allowing his capital contributions to USM to fall below $750,000. In his testimony, Defendant Elkin strongly objected to the existence of an agreement whereby he would contribute $750,000 in capital to USM and Plaintiff would contribute $250,000 in capital. (See D.I. 130, Trial Tr. Day 2 at 228:8-231:15.) However, Defendant Elkin's testimony is contrary to the statement of uncontested facts in Defendants' own Pre-Trial Order, which reads:

> The required capital of the corporation [USM] was determined to be $1 million, making Elkin's capital requirement $750,000 and [Plaintiff]'s $250,000.

(D.I. 61 p. 8 ¶ D.) The Shareholder Loan Agreement purported to convert any funds contributed by Defendant Elkin above $420,000 from capital to loans. (See DTX 121.) Thus, the Court concludes that sufficient evidence was presented on which the jury could have concluded that an agreement between Plaintiff and Defendant Elkin existed for Defendant Elkin to contribute $750,000 in capital, and that Defendant Elkin breached that agreement when he executed the Shareholder Loan Agreement to convert any funds in excess of $420,000 from capital to loans. Accordingly, the Court will deny Defendants' Motion For Judgment As A Matter of Law as it relates to the second ground of Plaintiff's breach of contract claim.

**B. Whether Plaintiff Is Entitled To Judgment In Its Favor On The Reserved Breach Of The Duty Of Loyalty Claim**

The Court has already concluded that the first two grounds

26

upon which Plaintiff asserted a breach of the fiduciary duty of loyalty are barred by the statute of limitations. With regard to the third and fourth grounds asserted by Plaintiff- that Defendant Elkin allegedly conducted business with USM for the benefit of himself as a creditor and that Defendant Elkin forced USM into insolvency following execution of the Shareholder Loan Agreement- both parties fail to address the merits of the claim. Instead, Plaintiff and Defendants both blame the other for not addressing these grounds for liability, and both contend that they should prevail as a result of the other's failure.

In a claim for breach of the fiduciary duty of loyalty, the Delaware Court of Chancery has stated that "[a] shareholder that owns a majority interest in a corporation, or exercises actual control over its business affairs, occupies the status of a fiduciary to the corporation and its minority shareholders. And where a shareholder owing such fiduciary duties stands on both sides of a challenged transaction, it will be required to demonstrate that the transaction was entirely fair to the corporation. In re MAXXAM, Inc., 659 A.2d 760, 771 (Del.Ch. 1995)(internal citations omitted). It is undisputed that as the majority shareholder, Defendant Elkin was a fiduciary. Further, the Court agrees that when Defendant Elkin executed the Shareholder Loan Agreement in his personal capacity and in his capacity as President of USM, he stood on both sides of a

27

challenged transaction.  However, by failing to discuss the third
and fourth grounds for his duty of loyalty claim, Plaintiff has
failed to identify how the challenged transaction impacts each of
these grounds.  Further, Plaintiff is not entitled to shift the
burden of proving entire fairness to Defendants.  Accordingly,
the Court concludes that Defendants are entitled to judgment in
their favor on the third and fourth grounds of Plaintiff's breach
of the fiduciary duty of loyalty claim.

Defendants are also entitled to judgment in their favor
because, in the Court's view, the challenged transaction
underlying both the third and fourth grounds of this claim is
actually Defendant Elkin's execution of the Shareholder Loan
Agreement.  To the extent Plaintiff raises a breach of the duty
of loyalty claim based on the execution of the Shareholder Loan
Agreement, the Court has already concluded that it is time-
barred.  Supra.

## C.    Whether Plaintiff Is Entitled To Judgment In Its Favor On The Reserved Aiding And Abetting Claim

Plaintiff alleged that Defendant Shorin aided and abetted
Defendant Elkin's breaches of fiduciary duty by "working the FCC
Phase II auctions, filing misleading federal tax returns and
making improper distributions."  (D.I. 137 at 7.)  Under Delaware
law, a party is liable for aiding and abetting a fiduciary's
breach of duty if the plaintiff proves: "(1) the existence of a

28

fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." Malpiede v. Townson, 780 A.2d 1075, 1096 (Del. 2001) (internal quotation omitted).

Although Defendant Elkin was in the position of a fiduciary, the Court concludes that Plaintiff has not proven the remaining elements by a preponderance of the evidence. Particularly, Plaintiff did not prove by a preponderance of the evidence that Defendant Shorin knowingly participated in the actions alleged to have been a breach of fiduciary duty. Plaintiff attempts to poke holes in Defendant Shorin's testimony and argue that Defendant Shorin was aware of the asserted breaches of fiduciary duties. (D.I. 151 at 11.) While Defendant Shorin's testimony may have been self serving, the Court is not persuaded that it demonstrates knowing participation. (See D.I. 130 Trial Tr. at 93-187.) Additionally, Plaintiff did not present any other evidence concerning Defendant Shorin's knowledge.

With regard to damages associated with aiding and abetting, Plaintiff contends that Defendant Shorin's actions "proximately caused Plaintiffs [sic] damages in that he was deprived of his share of distributions from the sale of the Phase I and II licenses." (D.I. 151 at 14.) However, Plaintiff has failed to present evidence from which the Court could determine with any specificity what portion of these alleged damages are associated

with the instant claim. Accordingly, the Court concludes that
Plaintiff has not met his burden of proving all required elements
of an aiding and abetting a breach of a fiduciary duty claim, and
therefore, the Court will enter judgment in favor of Defendant
Shorin on this claim.

## IV. PLAINTIFF'S MOTION FOR INTEREST AND ATTORNEYS' FEES

Following conclusion of the jury trial, the Court entered
Judgment in favor of Plaintiff and against Defendants.[5] (D.I.
123.) By the instant Motion, Plaintiff seeks pre-judgment
interest, post-judgment interest and an award of attorneys' fees
on the Court's Judgment on Plaintiff's breach of contract and
fraud claims.[6] (D.I. 134.) Plaintiff contends that pursuant to
an order an judgment, he is entitled to pre-judgment and post-
judgment interest as a matter of right. Plaintiff further
contends that he is entitled to attorneys fees under the common
benefit doctrine and the bad faith exception to the American
Rule.

In light of the Court's holdings regarding the fraud claim

---

[5]Contrary to Plaintiff's representation, this is not a Final
Judgment Order.

[6]Plaintiff also seeks pre-judgment interest, post-judgment
interest and an award of attorney's fees on the unjust enrichment
claim. The Court will not address Plaintiff's request to this
extent, however, because the issue of unjust enrichment was not
presented to the jury. Rather, Plaintiff's unjust enrichment
claim was reserved by the Court and the Judgment Order entered on
May 18, 2009 does not pertain to this claim.

in this Memorandum Opinion, Plaintiff's request for and pre-judgment interest on the compensatory damages award on the fraud claim will be denied. The Court further concludes that there is no basis for an award of attorneys' fees because Plaintiff has not demonstrated that the "litigation conferred a substantial benefit on a clearly defined group," Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n, 902 A.2d 1084, 1089 (Del. 2006), or the existence of bad faith in order to justify an award of attorneys' fees.

The Court concludes that Plaintiff is entitled to post-judgment interest on the total judgment sum (which now only applies to the judgment on the breach of contract claim). See LG Display Co., Ltd. v. AU Optronics Corp., - F. Supp. 2d -, 2010 WL 2720816, at *6 (D. Del. 2010)(citing 28 U.S.C. § 1961)(holding that pre-judgment interest is mandatory on any money judgment recovered in a civil case in district court). Federal courts sitting in diversity must apply federal law, rather than state law, in determining post-judgment interest. See N. Am. Speciality Ins. Co. v. Chichester Sch. Dist., C.A. No. 99-2394, 2002 U.S. Dist. LEXIS 11730, at *39-40 (E.D. Pa. Jan. 3, 2002)("In federal district court cases, where jurisdiction is based on diversity of citizenship, post-judgment interest is governed by [28 U.S.C. § 1961] rather than by state law."); see also 28 U.S.C. § 1961. Accordingly, the instant Motion will be

31

granted in part and denied in part.

## V. CONCLUSION

For the reasons discussed, judgment as a matter of law will be denied as to the second and third grounds of Plaintiff's breach of contract claim. Judgment as a matter of law will be granted in favor of Defendants as to all other claims. In addition, Plaintiff's Motion For Pre-Judgment Interest, Post-Judgment Interest And Attorneys' Fees On Judgment For Breach Of Contract, Fraud, And Unjust Enrichment Against Defendant David Elkin (D.I. 134) will be granted in part and denied in part, and Defendants' Motion To Strike Plaintiff's Reply To Defendants' Brief In Opposition To Plaintiff's Opening Post-Trial Memorandum On His Equitable Claims And Renewed Motion For Judgment As A Matter Of Law (D.I. 153) will be denied.

An appropriate Order will be entered.