# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY M. NORMAN, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 06-005-LPS |
| : | |
| DAVID W. ELKIN, RICHARD M. SHORIN, : | |
| and THE ELKIN GROUP, INC., : | |
| : | |
| Defendants, : | |
| : | |
| and : | |
| : | |
| US MOBILCOMM, INC., : | |
| : | |
| Nominal Defendant. : | |

Sean J. Bellew, Esq., of Ballard Spahr LLP, Wilmington, DE.

David A. Felice, Esq., of Bailey & Glasser, LLP, Wilmington, DE.

    Attorneys for Plaintiff.

Steven L. Caponi, Esq. and Adam V. Orlacchio, Esq., of BLANK ROME LLP, Wilmington, DE.

    Attorney for Defendant David W. Elkin.

## **MEMORANDUM OPINION**

February 10, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Pending before the Court is a motion filed by defendant David W. Elkin ("Defendant" or "Elkin") to disqualify Sean J. Bellew, Esquire and Ballard Spahr LLP ("Ballard") as counsel for plaintiff Jeffrey M. Norman ("Plaintiff" or "Norman"). (D.I. 192) Also before the Court is a related motion *in limine* filed by Norman. (*See* D.I. 196 Ex. C) The Court held an evidentiary hearing on June 17, 2013. (*See* D.I. 217 ("June Tr.")) For the reasons that follow, the Court will grant the motion to disqualify and deny the motion *in limine*.

## II. BACKGROUND[1]

### 1. The 2004 Court of Chancery Action

On November 16, 2004, Norman commenced an action in the Delaware Court of Chancery against Elkin, Richard M. Shorin, and The Elkin Group (collectively, "Defendants") pursuant to 8 Del. C. § 220, concerning the inspection of books and records. *See Norman v. Elkin*, 726 F. Supp. 2d 464, 467-68 (D. Del. 2010); *see also* Oct. 11, 2012 Hr'g Tr. at 30-31; D.I. 195 at 2 & Ex. C (portion of Delaware Court of Chancery post-trial discussion following bench trial); D.I. 206 at 1, 8, Ex. 7; June Tr. at 36) (the "2004 Action"). Norman was represented in the 2004 Action by attorneys at the law firm Cozen O'Connor, PC ("Cozen"), including Bellew. (*See* June Tr. at 58-59)

### 2. The 2005 Court of Chancery Action

On December 5, 2005, Norman filed a complaint in the Delaware Court of Chancery seeking damages against Defendants for breach of contract, breach of fiduciary duties, and other

---

[1] Additional background can be found in numerous prior opinions and orders. (*See, e.g.*, D.I. 70, 71, 72, 98, 99, 156, 157, 165, 166, 187)

related claims (the "2005 Action"). Norman was represented by attorneys at Cozen, including Bellew and David A. Felice. (*See* D.I. 1 Ex. A)

### 3. Delaware District Court – First Trial

On January 3, 2006, Defendants removed Norman's 2005 Action to the United States District Court for the District of Delaware. (D.I. 1) (the "Delaware Action") On May 18, 2009, following a jury trial, the Honorable Joseph J. Farnan, Jr., now retired, entered judgment in Norman's favor in the amount of $191,819. (*See* D.I. 118 (Verdict); D.I. 123 (Judgment); *see also* D.I. 195 Ex. D) On July 30, 2010, following post-trial briefing, Judge Farnan granted judgment as a matter of law in favor of Defendants on several of Norman's claims. (*See* D.I. 156, 157) Judge Farnan also reduced the total damage award to Norman to $1.00 plus post-judgment interest. (*See* D.I. 158 (Amended Judgment))

Norman's representation changed over the course of the Delaware Action. As a result of a dispute over Norman's failure to pay Cozen for its services, Cozen withdrew from its representation in July 2008. *See Cozen O'Connor v. Jeffrey M. Norman*, 2011 WL 219666, at *1 (D. Conn. Jan. 21, 2011) ("*Cozen I*"). Also, Bellew and Felice left Cozen to work at Ballard Spahr. *See Cozen O'Connor v. Jeffrey M. Norman*, 2011 WL 2198311, at *3, *5 (D. Conn. June 6, 2011) ("*Cozen II*").

### 4. The Connecticut Action

In the meantime, in 2008, Cozen commenced suit against Norman in the U.S. District Court for the District of Connecticut to recover its unpaid legal fees and costs it incurred during its representation of Norman (the "Connecticut Action"). Cozen and Norman never entered into a written fee agreement. *See Cozen II*, 2011 WL 2198311, at *1, *3. Norman testified that he

believed he and Cozen had an unwritten contingency fee agreement. *See id.* at *6. There was no evidence that Cozen consented to or otherwise entered into a contingency fee agreement between the firm and Norman. *See id.* at *2, *7-8.

Following a February 2011 bench trial, on June 6, 2011 the Honorable Mark R. Kravitz ruled in favor of Cozen, in part based on what he expressly found to be Norman's lack of credibility. Judge Kravitz explained:

> From December 2005 through April 2008, Cozen O'Connor represented Mr. Norman in the Delaware action by and through various attorneys, and expended significant legal fees and costs on Mr. Norman's behalf. At some point between August 2006 and February 2007, Cozen O'Connor began to have disputes with Mr. Norman over his failure to pay the monthly bills that he was by that time regularly receiving from Cozen O'Connor.

*Id.* at *3. Judge Kravitz found that "Cozen O'Connor and Mr. Norman never reached an agreement regarding a contingency fee, and that after the firm began representing Mr. Norman, Mr. Norman unequivocally promised to pay the firm for its hourly fees and costs." *Id.* at *2. The Court further concluded that "Mr. Norman is bound by that promise; that he breached that promise; and that he is liable to Cozen O'Connor for $203,766.50 in fees and $18,930.56 in costs, for a total of $222,697.06." *Id.*

Judge Kravitz wrote at length about Norman's lack of credibility:

> Mr. Norman's testimony at trial that he always understood that his agreement with Cozen O'Connor provided for a contingency fee was not credible. When Cozen O'Connor began sending Mr. Norman monthly bills and demanding payment on the bill, Mr. Norman never protested and never raised the contingency fee issue with anyone. It is not credible that a client who actually believed he had a contingency fee agreement with his attorney would not only fail to object when that attorney started sending him monthly bills, but would even send that attorney multiple emails conceding that he owed the attorney more than $150,000 in outstanding bills.

3

*Id.* at *7.

Most pertinent to the motion now pending before this Court is the fact that, as Judge Kravitz explained, the substance of Norman's testimony arguably amounted to an allegation that Norman and Bellew conspired to defraud Cozen. It was established in the Connecticut Action that Norman had decided to retain Cozen with the assistance of a colleague, Vincent A. Sama, an attorney who referred him to Cozen. *See id.* at *2. Judge Kravitz wrote that Norman's

> only argument throughout this case has been that Mr. Sama initially negotiated a contingency fee, that he always believed he had a contingency fee agreement, and that Mr. Bellew encouraged Mr. Norman to lie to Cozen O'Connor about his willingness to pay monthly bills and indicated that everything would be okay if only Mr. Norman would go ahead and lie to the firm.
>
> ***If the Court were to credit Mr. Norman's story, it would implicate Mr. Bellew in a number of serious violations of his professional obligations.*** According to Mr. Norman, while Mr. Bellew was still working for Cozen O'Connor, Mr. Bellew encouraged Mr. Norman to falsely promise to pay hundreds of thousands of dollars in outstanding legal bills when he in fact intended to contest them. Relying on Mr. Bellew's encouragement, Mr. Norman then lied to Cozen O'Connor about his willingness to start paying his debts to the firm, and in reliance on Mr. Norman's promises, Cozen O'Connor continued to work on Mr. Norman's case for an additional year. Mr. Bellew then left Cozen O'Connor for a different law firm, and when Cozen O'Connor withdrew as Mr. Norman's counsel, Mr. Norman still refused to pay the bills from Cozen O'Connor and took his business to Mr. Bellew's new law firm. Having refused to pay bills from Cozen O'Connor as promised, Mr. Norman began paying bills from Mr. Bellew's new law firm.

*Id.* at *8 (emphasis added). Judge Kravitz concluded, "***Mr. Norman's explanation about why he sent those emails – he allegedly did so only because Mr. Bellew encouraged him to lie about his willingness to pay – is also not credible.***" *Id.* at *7 (emphasis added). In short, Judge Kravitz was in no way willing to "credit Mr. Norman's strange story." *Id.*

### 5. Delaware Action - Proceedings Relating to Second Trial

Here in the Delaware Action, the instant case was reassigned to the undersigned judge in August 2010, the same month that Norman filed a motion to alter judgment or for a new trial. (D.I. 159) In March 2012, the Court granted Norman's motion for a new trial, to be limited exclusively to the issue of appropriate damages for the breach of contract claim. (D.I. 166) ("March Order") Defendant Elkin then moved for reconsideration of the March Order, asking the Court to allow the jury's $1 award to stand, or, in the alternative: (i) issue a decision on Elkin's offset claim and (ii) order a new trial on Plaintiff's breach of contract claim in its entirety, not just limited to damages. (D.I. 172)

In October 2012, following full briefing and a hearing, the Court granted Elkin's request for reconsideration of the March Order. (D.I. 187) On October 31, 2012, the Court entered a Scheduling Order, scheduling a jury trial to commence on February 20, 2013 on Plaintiff's breach of contract claim – liability and damages – as well as Defendant's contention that he is entitled to an offset. (*See* D.I. 187, 190)

Following unsuccessful efforts to resolve their disputes through court-sponsored mediation, on January 30, 2013 Elkin filed the pending motion to disqualify counsel. (D.I. 192) The motion is based on Norman's testimony and Judge Kravitz's credibility findings in the Connecticut Action, about which Elkin had only "recently learned." (*Id.* at 1) The motion seeks to disqualify Bellew, Felice, and Ballard, because the circumstances and findings in the Connecticut Action relate to Norman's credibility, which will be in issue in the instant action, and it may become necessary to call Bellew as a witness at trial. (*See id.* at 2)

On January 31, in light of the imminence of the pretrial conference and trial, the Court

ordered Norman to provide an initial letter response by the next day to the motion to disqualify. (D.I. 194) Mr. Bellew, on behalf of Norman, did so, asking that the motion be stricken from the record and denied, which would allow the pretrial conference and trial to proceed as scheduled. (D.I. 195) The letter also argued that the motion lacked merit. (*Id.*)

On February 1, 2013, consistent with the scheduling order, the parties filed their proposed pretrial order. (D.I. 196) Among other things, the proposed pretrial order indicated that the parties disagreed as to the relevance and admissibility of the Connecticut Action. In particular, Norman moved *in limine* to preclude Elkin from introducing any evidence of, eliciting testimony regarding, or making any reference to the Connecticut Action. (D.I. 196 Ex. C) Norman also objected to Bellew being called as a witness at trial. (*See id.*)

On February 8, the Court held the scheduled pretrial conference, and heard argument on both the motion to disqualify and the motion *in limine* relating to the Connecticut Action. (*See* D.I. 215) ("Feb. Tr.") The Court decided that, in light of the motion to disqualify, the appropriate course of action was to cancel trial, provide an opportunity for full briefing and an evidentiary hearing on the motion to disqualify, and then resolve the motion to disqualify. (*Id.* at 36-37) Specifically, the Court stated:

> Well, here is where we are. The case was a mess and is now messier. I am not going to be able to undo the mess certainly before our scheduled trial. It's just not possible.
>
> I am, as I sit here, again, still open minded. We will read carefully whatever Mr. Bellew submits in response to the motion, and we will have some sort of hearing on it as well. But as I sit here, I'm certainly not prepared to say that there is no conflict. I'm also not prepared to say that if there is a conflict that it is waivable, or, if it is waivable, that it would be fair in context to allow Mr. Norman to control that waiver solely without any consideration of prejudice to Mr. Elkin and without any consideration the Court

> might give as to how the jury might respond to all of this.
>
> I was hoping maybe the motion in limine might take care of things and make the issue go away, but while I'm going to take that motion in limine under advisement, I can tell you I am far from convinced at the moment that that motion has merit. Believe me, if I were persuaded, I could grant that motion and, again, maybe make this issue go away and stick to our trial schedule which would be a good thing. But we have looked. We have not found authority on the plaintiff's side. The plaintiff doesn't cite any authority. Defendants' authorities are persuasive and I think relevant. And I think plaintiff's position comes down to asking me to exercise my discretion and keep all of this out at trial. And at least as I sit here now, I'm far from persuaded that that would be an appropriate exercise of my discretion. So that motion is under advisement, but that is just yet another reason why I can't have this case tried two weeks from now.
>
> So we're going to finish the briefing on the motion to disqualify. We're going to cancel the trial date. After the briefing is completed, I'll set a hearing of some sort on the motion to disqualify, and we'll figure out first whether or not I need to disqualify Mr. Bellew and his firm, and then we will take it from there.

(*Id.*)

### 6. Motion Hearing

On June 17, 2013, the Court held an evidentiary hearing on the motion to disqualify. (*See* June Tr.*) The Court heard argument on the motion and also heard testimony from Messrs. Norman, Elkin, and Bellew. (*See id.*)

## III. DISCUSSION

### A. Motion *In Limine*

By his motion *in limine*, Norman seeks to exclude from trial any reference to the Connecticut Action. He seeks such relief pursuant to Federal Rules of Evidence 401 and 403, contending the evidence at issue is not relevant to any issue in the case and, even if relevant, its

7

probative value would be substantially outweighed by the risk of unfair prejudice and confusion. Were the Court to grant the motion *in limine*, the motion to disqualify would likely become largely, if not entirely, moot. However, the Court has decided it must deny the motion *in limine*.

The evidence Elkin seeks to present relating to the Connecticut Action is relevant, as it relates to Norman's credibility, particularly Elkin's contention that Norman is willing to make misrepresentations – including under oath – concerning an oral agreement. Judge Kravitz in the Connecticut Action expressly found that Norman lacked credibility in his sworn testimony relating to the purported existence of an oral contingency fee agreement between Norman and Cozen. Norman's testimony, and Judge Kravitz's extensive findings, are probative of Norman's credibility, an issue at the center of the matters to be decided by the jury at the second trial here in the Delaware Action.[2]

The Court disagrees with Norman's contention that the considerations of Rule 403 substantially outweigh the probative value of the Connecticut Action evidence. As explained, the probative value of the Connecticut Action evidence is very high. The risk of undue prejudice and

---

[2] As Defendant points out, Federal Rule of Evidence ("FRE") 607 specifically states that "the credibility of a witness may be attacked by any party, including the party calling the witness." "Similarly, FRE 608 permits parties to attack the credibility of a witness in the form of opinion or reputation and to attack a witness' character for truthfulness through specific instances of conduct. FRE 613 authorizes the examination of a witness regarding the witness' prior statements, both those that are consistent and inconsistent. FRE 801 excludes from the definition of hearsay, prior statements by witnesses and party opponents." (D.I. 192 at 8) *See also United States v. White*, 692 F.3d 235, 248 (2nd Cir. 2012) ("We have long held that a witness can be cross-examined based on prior occasions when his testimony in other cases had been criticized by [a] court as unworthy of belief.") (internal quotation marks omitted); *Ashford v. Bartz*, 2009 WL 2356666, at *2 (M.D. Pa. July 30, 2009) (finding that recent false statement on official police report and on internal police department document regarding officer's daily work projects would provide evidence into defendant's character for untruthfulness, an issue "integral to the case");; *see generally United States v. Cedeno*, 644 F.3d 79 (2d Cir. 2011).

confusion – while also substantial – does not substantially outweigh this probative value, and can be ameliorated to some extent through careful jury instructions. Additionally, some portion of the problems associated with admission of the Connecticut Action evidence will be eliminated by granting the motion to disqualify Mr. Bellew and Ballard, which the Court has determined it must also do.

### B. Motion to Disqualify

The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007) (internal quotation marks and citations omitted); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006) (same). Because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," however, a court may disqualify an attorney "for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992).

Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct of the American Bar Association ("M.R.P.C."). *See* D. Del. LR 83.6(d).

Resolving the question of whether to disqualify counsel requires the Court to "carefully

sift all the facts and circumstances." *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 428 (D. Del. 1986) (internal quotation marks omitted). Indeed, "whether disqualification is appropriate depends on the facts of the case and is never automatic." *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F. Supp. 2d 369, 374 n.7 (D. Del. 2009). The required inquiry necessarily involves "a painstaking analysis of the facts." *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987) (internal quotation marks omitted); *see also Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) ("Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts.") (internal quotation marks omitted). Furthermore, the Court approaches motions to disqualify counsel with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27–28 (D.D.C. 1984).

The Court has engaged in painstaking analysis, including by carefully reviewing the record of the Connecticut Action, and having heard testimony in the June 2013 hearing from Messrs. Norman, Elkin, and Bellew. The Court heard argument relating to the motion to disqualify in February and June 2013. Having considered all of the facts and circumstances, as well as the applicable law, the Court concludes that it would be inappropriate for Bellew and Ballard to represent Norman at the new trial in the instant action. Therefore, the Court will grant the motion to disqualify.

Elkin accurately summarizes the situation before the Court:

> Elkin intends to examine Norman's character and
> truthfulness by exploring the substance of Norman's testimony in

10

> the Connecticut Proceeding. This will include testimony regarding the validity of his allegations involving Mr. Bellew. Norman will be forced to either (a) admit he testified untruthfully in the Connecticut Proceeding, or (b) confirm his prior testimony regarding the fraud against Cozen O'Connor. Either way, the jury in this action will hear in Norman's own words that he is untrustworthy and not a credible witness. Because Norman implicated Mr. Bellew as an alleged party to Norman's fraud, Elkin may be forced to call Mr. Bellew as a witness to either confirm or contradict Norman's sworn testimony in the Connecticut Proceeding and his testimony before this Court.

(D.I. 192 at 2)

Mr. Bellew is identified as a potential witness in the proposed pretrial order and, for the reasons already explained, the Court will permit him to be called to testify at the request of either party. (*See* D.I. 196 at 18-19) MRPC 3.7 provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," except in limited circumstances which are not present here.[3] While Rule 3.7 would permit other attorneys at Ballard to represent Norman even while presenting the testimony of their partner, Mr. Bellew, and the conflict arising from Bellew's likely appearance as a trial witness is not imputable to Ballard pursuant to MRPC 1.10(a), the Court concludes, pursuant to its inherent authority, that it would be inappropriate for the parties' disputes to be tried before a jury that would hear about the Connecticut Action and see Bellew's Ballard colleagues at counsel table.

---

[3]Bellew's likely testimony relates to Norman's credibility, which is a hotly contested issue; does not relate to the nature and value of legal services rendered in the instant case; and, while disqualification will undoubtedly impose a hardship on Norman, it is not so substantial a hardship, under the circumstances, as to render it appropriate to permit Bellew and Ballard to remain on the case. (*See* M.R.C.P. 3.7(a)(1)-(3)) (last accessed Feb. 7, 2014 at www.americanbar.org) There is no evidence that Norman could not find other counsel to prepare for the forthcoming, short trial on the narrow matters remaining in dispute. (*See generally* D.I. 206 at 14) (Plaintiff's counsel arguing merely that "it *might* be possible that Norman will be unable to find replacement counsel given Cozen O'Connor's judgment") (emphasis added)

11

At bottom, weighing the competing equities, the Court is convinced that the appropriate exercise of discretion,[4] under all the circumstances, is to prohibit Norman from being represented at the new trial by lawyers at Ballard. *See generally Corn Derivatives*, 748 F.2d at 162 ("This court has often employed a balancing test in determining the appropriateness of the disqualification of an attorney.") (internal citations omitted); *Carlyle Towers*, 944 F. Supp. at 345 ("The ethical rules should not be blindly applied without consideration of relative hardships."). Mr. Norman's choice of counsel is entitled to substantial weight, and the Court appreciates client affinity and Norman's willingness to waive (assuming it is waivable) the conflict. However, the overall balance strongly favors disqualification.

Avoiding the appearance of impropriety is an important consideration for the Court, as it relates to protecting the integrity of the judicial system. The Court has a paramount interest in orderly judicial proceedings, not impacted by conflicts of interest and other adverse consequences of counsel being advocate as well as witness. *See, e.g., Webb v. E. I. Du Pont de Nemours & Co., Inc.*, 811 F. Supp. 158, 160 (D. Del. 1992) ("Whenever an allegation is made that an attorney has violated his moral and ethical responsibility . . . it is the duty of the district court to examine the charge. Furthermore, a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety because the courts have a responsibility to maintain confidence in the legal profession.") (internal quotation marks and citations omitted).

Accordingly, the Court will exercise its discretion and disqualify Mr. Bellew & Ballard

---

[4]Both sides agree that the decision the Court must make is committed to the Court's sound discretion. (*See* Feb. Tr. at 24-25; June Tr. at 126-27)

from representing Mr. Norman in this litigation.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion *in limine* and grant Defendant's motion to disqualify Mr. Bellew and Ballard. An appropriate Order follows.