# EXHIBIT A



*Phone:*       *(302) 425-6418*

*Fax:*          *(302) 425-6464*

*Email:*       *Dorey@BlankRome.com*

September 18, 2017

**VIA EMAIL AND FEDERAL EXPRESS OVERNIGHT DELIVERY**

David A. Felice
Bailey Glasser LLP
Red Clay Center at Little Falls
2961 Centerville Road, Suite 302
Wilmington, DE  19808

Brian A. Glasser, Esq.
Bailey Glasser LLP
1054 31st Street, NW, Suite 230
Washington, DC  20007

Thomas G. Wilkinson, Jr.
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103

William A. Slaughter
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599

Re:      Norman v. Elkin, Settlement Proposal

***PERSONAL AND CONFIDENTIAL:  SETTLEMENT COMMUNICATION PROTECTED
FROM DISCLOSURE BY FRE 408***

Dear Counsel:

We have encouraged Mr. Elkin to make an attempt to settle this litigation and put it behind him.
He has agreed, and this letter represents that effort.

***BACKGROUND OBSERVATIONS AND PROPOSAL***

As background, we observe that this litigation has continued for more than 13 years, and has
involved two judges, two trials, two plaintiff's litigation verdicts, two decisions vacating those

1201 Market Street Suite 800 Wilmington, DE 19801

www.BlankRome.com

Cincinnati • Fort Lauderdale • Houston • Los Angeles • New York • Philadelphia • Pittsburgh • Princeton • San Francisco • Shanghai • Tampa • Washington • Wilmington

Settlement Proposal
Page 2

verdicts, an appeal, and now remand with no fraud claim. There have even been disqualifications of counsel, numerous sanctions motions, a fee motion seeking more than $800,000 against Norman *and* his lawyers, and undoubtedly, thousands of dollars of counsel fees. There's a Cozen judgment for more than $200,000 against Norman. The time and expenses involved put in some question the merits of and results sought by either side. Further, there is no reason to believe, unless the parties resolve this matter and agree to walk away now, that this case will not continue for another three years and involve another appeal, with further attendant expense.

In January 2007, Elkin's counsel advised Norman's that Norman's claims would likely be ruled time-barred. A walk away was proposed at that time, but rejected. Ten years later, we propose again a complete walk away with full reciprocal releases, with any and all judgments vacated (to the extent not already done).

## *MERITS AND ECONOMICS*

For Norman, the fraud claim and punitive damages are gone. He has verdicts of $73,000 (breach of contract) and $38,000 (conversion) that he seeks to reinstate, perhaps with interest. He can potentially resurrect breach of fiduciary duty and other claims that were not previously tried, but they would have to be *tried* now. It seems apparent that the fees, contingent or hourly, would not be worth pursuing these other possible claims through a trial and further appeals.

Moreover, initially, Norman must overcome the statute of limitations defense in order to reach the merits of any and all possible claims. Clearly, no matter how that analysis or the possible subsequent pursuit of these other claims is resolved, direct and cross appeals are likely. A walk away makes eminent sense under these circumstances.

From Elkin's perspective, in addition to ending the payment of counsel fees moving forward, a walk away ends the personal, emotional toll that 2-3 years of further drawn out proceedings may have upon him.

Further, you are aware of what Elkin is giving up to terminate these proceedings. Allegations in this litigation have impugned his name and reputation. If a resolution does not happen now, his effort to vindicate his name will proceed undeterred. As you know, on March 28, 2016 Mr. Elkin filed a Motion for Attorneys' Fees ("Fees Motion") with the District Court in Delaware, seeking $830,182.50, jointly and severally, from Cozen O'Connor, Ballard Spahr, Bailey Glasser, Sean Bellew, David Felice and Jeffrey Norman (collectively "Opponents").[1]

---

[1] For reference, I have enclosed a copy of that motion and exhibits.

Settlement Proposal
Page 3

Earlier this year, Mr. Elkin engaged a reputable law firm to commence a malicious prosecution case against Opponents in Pennsylvania under Pennsylvania's Dragonetti Act (42 Pa. C.S. Sec. 8351 (2006).  Securing dismissal on statute of limitations grounds would renew that pursuit.

Norman's burden on these issues: to proceed in light of the comparatively small rewards Norman can achieve Norman must prove that the information covering the USM and TEG licenses published by the FCC from 1998 – 2001, as well as Norman's 2000 K-1 did not put him on notice of his claims.  That information existed *more than 3 years* before the November 2004 filing of the 220 Action.

Exhibit C to the enclosed Fees Motion includes a bulleted, succinct 14-entry sample of FCC information published from 1998 – 2001 pertaining to the USM and TEG license transactions underlying the litigation.  As the Delaware Supreme Court has said in *United States Cellular Inv. Co. v. Bell Atl. Mobile Sys.*, 677 A.2d 497, 504 (Del. 1996), mere publication of those notices *is* notice sufficient to prompt inquiry *as a matter of law*.

While well-established *U.S. Cellular* and related law on inquiry notice should serve to time-bar the remaining claims without the benefit of prior testimony, Mr. Norman's prior testimony creates a significant concern for a court to rule in Mr. Elkin's favor.  In that event, that evidence would also firmly support a subsequent Fees Motion (as it previously did) and a Dragonetti case.  As set forth in our Fees Motion and other briefing, Norman testified under oath that:

- he followed Auction 18 (in 1998) on the FCC website, tracking auction bidders and winners (JA0014, D.I. 129, Tr. 121:2-122:7);
- "all information from the FCC is public information." (JA0014, D.I. 129, 179:9-11);
- the status of any FCC license could be learned through the [FCC] website by, among other things, using the license call sign (JA0014, D.I. 129, 202:3-13);
- he or someone at his lawyer's office actually called the FCC to inquire about the status of USM/TEG licenses (JA0014, D.I. 129, 180:8-17)(I believe [I or someone from Sama's office] did [call the FCC]. I don't know if I did it or someone from Mr. Sama's office. That's when we got that information."); and
- as Judge Farnan noted, Norman "testified [at trial] that in November 1998, he tracked the results of Auction 18 - 32 - on the FCC website" and that "public notices were available on the FCC website which listed the same licenses won by USM in Auction Number 18 as being owned by The Elkin Group." (compare JA0238, JA0259, on the one hand, with JA0170-175, on the other (TEG listed as the license owner on FCC forms since no later than March 1999). (JA0054).

As to the notice provided by the K-1s, we recount the Fees Motion explanation, and simply request that you look at it objectively and consider its conclusive point.  Norman testified that by

Settlement Proposal
Page 4

the time of the FCC Phase II auction in 1998, the licenses were the only thing of value held by USM and that upon receipt of the K-1s, allocating to him long term capital gains, he knew, without a doubt, that licenses were sold.  In other words, his own sworn testimony confirmed his knowledge that those gains came from the sale of licenses.  Fees Motion at 18.  See Also Norman 2006 deposition, at 77 (lines 23-25) and at 78 (lines 2-8).

The other part of the enclosed Fees Motion that merits consideration in this context are the detailed assertions that Norman's counsel in 2007, and at many points thereafter, consciously argued points that contradicted the evidence adduced from their own client.  Although some of you may suggest the contrary, anyone looking at the undisputed record as objectively as a court might cannot possibly have a secure and comfortable feeling that Elkin's Fees Motion's argument on these asserted misrepresentations will not be embraced by a reviewing court.

## *CONCLUSION*

Our objective is simply to present facts that will facilitate a settlement, and demonstrate that the economics of moving forward against what might be gained by either party points unmistakably to the conclusion that continuing this litigation may no longer be worth the effort.  Each side's potential gains pale in comparison to the cost, risk, exposure, time, toil and emotion necessary to secure them.

As we will have to proceed with briefing, this offer expires on Friday, September 22, 2017.  I look forward to hearing from you.

Very truly yours,

*David A. Dorey*

David A. Dorey

DAD
Enclosure